UNITED STATE DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------------X
ERIC K. MERRING,

                                    Plaintiff,                              Docket No.:
                                                                           **07 civ 10381 (CLB)**
        - against –
                                                                           NOTICE OF MOTION
THE TOWN OF TUXEDO, NEW YORK, THE TOWN OF
TUXEDO POLICE DEPARTMENT, TOWN OF TUXEDO
POLICE OFFICER ANTHONY DELIA, SHIELD NUMBER        RETURN DATE:
24, TOWN OF TUXEDO POLICE SERGEANT PATRICK
WELSH, SHIELD NUMBER 17,                           MAY 16, 2008

                                    Defendants.
---------------------------------------------------------------------------X

        **PLEASE TAKE NOTICE**, that upon the annexed Affirmation of John J. Walsh, Esq.,

and upon all pleadings and proceedings had heretofore herein, the undersigned will move this

Court on May 16, 2008 at 9:00 a.m., or as soon thereafter as movant will be heard, before the

Hon. Charles L. Brieant at the United States District Court, 300 Quarropas Street, White Plains,

New York, for an order pursuant to Fed. R. Civ. P. 56 (c) granting defendants, TOWN OF

TUXEDO POLICE OFFICER ANTHONY DELIA, SHIELD NUMBER 24, and TOWN OF

TUXEDO POLICE SERGEANT PATRICK WELSH, SHIELD NUMBER 17, (hereinafter

"Defendants"), judgment on the affirmative defense of qualified immunity dismissing plaintiff's

Complaint against these defendants, together with such further and other relief as the Court may

deem just and fair under the circumstances herein.

Dated: White Plains, New York
        April 15, 2008

                                    Yours, etc.,
                                    Hodges, Walsh & Slater, LLP

                                    _____
                                    John J. Walsh, Esq. (JW4092)

Attorneys for Defendants
55 Church Street, Suite 211
White Plains, New York 10601
Tel: (914) 385-6000
Fax: (914) 385-6060
E-mail: jwalsh@hwslaw.com

TO:   Lee David Klein, Esq.
      Attorney for Plaintiff
      11 Market Street, Suite 204
      Poughkeepsie, New York 12601
      (845) 454-9200

UNITED STATE DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
ERIC K. MERRING,

                               Plaintiff,                  Docket No.:
                                               **07 civ 10381 (CLB)**

   - against –                                **AFFIRMATION IN**

THE TOWN OF TUXEDO, NEW YORK, THE TOWN OF   **SUPPORT**
TUXEDO POLICE DEPARTMENT, TOWN OF TUXEDO
POLICE OFFICER ANTHONY DELIA, SHIELD NUMBER
24, TOWN OF TUXEDO POLICE SERGEANT PATRICK
WELSH, SHIELD NUMBER 17,

                              Defendants.
------------------------------------------------------------------------X

     John J. Walsh, being an attorney duly admitted to practice law before the United States

District Court, Southern District of New York, affirms the following under the penalties of

perjury:

     1.    I am a member of the law firm of HODGES, WALSH & SLATER, LLP,

attorneys for the defendants, THE TOWN OF TUXEDO, NEW YORK, THE TOWN OF

TUXEDO POLICE DEPARTMENT, TOWN OF TUXEDO POLICE OFFICER ANTHONY

DELIA, SHIELD NUMBER 24, and TOWN OF TUXEDO POLICE SERGEANT PATRICK

WELSH, SHIELD NUMBER 17, and am familiar with the facts and pleadings herein from my

review of the file maintained by our office.

     2.    This Affirmation is submitted in support of the defendants', TOWN OF

TUXEDO POLICE OFFICER ANTHONY DELIA, SHIELD NUMBER 24, and TOWN OF

TUXEDO POLICE SERGEANT PATRICK WELSH, SHIELD NUMBER 17, motion for

judgment pursuant to Fed. R. Civ. P. 56 (c) on the affirmative defense of qualified immunity.

3.      The plaintiff, ERIC K. MERRING, commenced this action by service of a Complaint With Jury Demand, annexed hereto as **EXHIBIT A**, alleging a violation of federal and state constitutional rights and seeking compensatory and punitive damages.  However, it is difficult to parse out which federal and/or state constitutional rights the plaintiff alleges were violated.  We are assuming the plaintiff alleges the following violations in his complaint: unlawful search and seizure of the plaintiff's person and vehicle (Exhibit A, pars. 63 and 70); violation of his right to be free from unlawful detention and false arrest (Exhibit A, pars.70 and 81; and malicious prosecution (Exhibit A, par. 81).

4.      Defendants, TOWN OF TUXEDO POLICE OFFICER ANTHONY DELIA, SHIELD NUMBER 24, and TOWN OF TUXEDO POLICE SERGEANT PATRICK WELSH, SHIELD NUMBER 17, joined by an Answer, annexed hereto as **EXHIBIT B**, and set forth the affirmative defense of qualified immunity.  (Exhibit B, par. 32).

5.      Plaintiff, ERIC K. MERRING, was presented for a 50-H hearing on June 6, 2007 and for deposition testimony on March 7, 2008. A copy of the referenced portions of the deposition transcripts are annexed hereto as **EXHIBITS C and D**.

6.      A video from the dash mounted camera of Officer Delia's patrol car of the December 4, 2006 incident at issue is attached hereto as **EXHIBIT E**.

7.      Photos of the gravity knife and the bill club are attached hereto as **EXHIBIT F.**

8.      Pursuant to Local Rule 56.1, the Court is respectfully referred to defendants' Statement of Facts.

9.      The Court is also respectfully referred to defendants' Memorandum of Law for the application of the facts on the well-established legal foundations for an affirmative defense of qualified immunity.

WHEREFORE, it is respectfully requested that the defendants', TOWN OF TUXEDO POLICE OFFICER ANTHONY DELIA, SHIELD NUMBER 24, and TOWN OF TUXEDO POLICE SERGEANT PATRICK WELSH, SHIELD NUMBER 17, motion for judgment, pursuant to Rule 56(c), on the affirmative defense of qualified immunity be granted in its entirety and plaintiff's Complaint dismissed with prejudice, together with such further and other relief as this Court may deem just.

Dated: White Plains, New York
       April 15, 2008

                         Respectfully submitted,
                         HODGES WALSH & SLATER, LLP


                         John J. Walsh, Esq. (JW4092)

UNITED STATE DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X
ERIC K. MERRING,

                              Plaintiff,                    Docket No.:
                                                            **07 civ 10381 (CLB)**

        - against –
                                                            **LOCAL RULE 56.1**
THE TOWN OF TUXEDO, NEW YORK, THE TOWN OF                   **STATEMENT OF**
TUXEDO POLICE DEPARTMENT, TOWN OF TUXEDO                    **FACTS**
POLICE OFFICER ANTHONY DELIA, SHIELD NUMBER
24, TOWN OF TUXEDO POLICE SERGEANT PATRICK
WELSH, SHIELD NUMBER 17,

                              Defendants.
-------------------------------------------------------------------------X

        Defendants, TOWN OF TUXEDO POLICE OFFICER ANTHONY DELIA, SHIELD

NUMBER 24, and TOWN OF TUXEDO POLICE SERGEANT PATRICK WELSH, SHIELD

NUMBER 17, by their attorneys, HODGES, WALSH & SLATER, LLP hereby sets forth their

Rule 56.1 Statement of Facts.

        This motion for qualified immunity is made in accordance with the Scheduling Orders

issued by this Court on January 25, 2008 and March 18, 2008.  Under the Court's January 25,

2008 Order, plaintiff's version of the facts is assumed true for the purposes of the qualified

immunity motion.

        1.      On December 4, 2006, around 9:00 a.m., plaintiff was driving his motor vehicle

southbound on Route 17, in the Town of Tuxedo, en route to Davis Sport Shop in Sloatsburg,

New York, where he was employed.  (Exhibit A, par. 20; Exhibit C, p. 21, 8-9; Exhibit D, pp.14-

15).

2.     Town of Tuxedo Police Officer Anthony Delia, in a marked vehicle, undertook a vehicle and traffic stop of the plaintiff. (Exhibit A, par. 20; Exhibit C, p. 21, 19-21; Exhibit D, p. 14, 17-19).

3.     Plaintiff pulled his vehicle over on to a side street, Stone Ridge Road, in the Town of Tuxedo. (Exhibit A, par.20; Exhibit C, p.23, 14-21; Exhibit D, p.18, 17-18).

4.     Officer Delia exited his vehicle and approached the plaintiff and told the plaintiff he was speeding. (Exhibit C, p.25, 6-13)  Per the plaintiff:

Q: And when he got to your window, who spoke, you or the officer first?
A: He did.
Q: And what did he initially say?
A: I don't know the exact words, but it was --- not verbatim --- you were speeding, I need to see your driver's license, registration, and insurance cards.

5.     The plaintiff provided Officer Delia with his driver's license, registration and insurance cards. (Exhibit A, par. 20; Exhibit C, p.25, 16; Exhibit D, p.27, 2-6).

6.     Plaintiff then informed Officer Delia that he was carrying a licensed handgun. (Exhibit A, par. 20; Exhibit C, p.27, 6-8; Exhibit D, p.25, 17-18).

7.     After Officer Delia became aware of the plaintiff's handgun, he made a cellular telephone call to Sergeant Welsh. (Exhibit C, p. 26, 20-25; Exhibit D, p. 29)

8.     Officer Delia then asked for plaintiff's pistol permit. (Exhibit C, p. 27, 5-7).

9.     Plaintiff's pistol permit was issued by Delaware County in April 1988. (Exhibit C, p.14, 16-21, p.15, 7-9; Exhibit D, p.57, 12-17).

10.     Plaintiff never applied for a license in any other county in New York. (Exhibit C, p.18, 2-6).

11.     Plaintiff never notified Delaware County that he had moved. (Exhibit D, p.59, 11-18).

12.    At the time of the incident, the plaintiff was sleeping and collecting his mail at his girlfriend's apartment, located at 504 Old Mills Road, Southfields, New York, in Orange County (Exhibit C, p.4, 7-17; Exhibit D, pp.59-60), and working in Sloatsburg, New York, in Rockland County. (Exhibit C, p.5, 13-16; Exhibit D, p.9, 14-18).

13.    A few minutes later, Sergeant Welsh pulled his police vehicle behind plaintiff's vehicle. (Exhibit A, par. 20; Exhibit C, p.31, 8-11; Exhibit D, p.32, 12-25).

14.    Sergeant Welsh exited the police vehicle and approached plaintiff's vehicle. (Exhibit A, par. 21; Exhibit C, pp.32-33).

15.    After questioning the plaintiff about his gun, Sergeant Welsh directed plaintiff to step out of his vehicle. (Exhibit A, par. 22; Exhibit C, p.34, 21-25; Exhibit D, p.33, 22-25).

16.    Plaintiff testified in his 50-h Hearing that as he was exiting his vehicle, Sergeant Welsh pulled him the rest of the way out. (Exhibit A, par. 22, Exhibit C, p.35, 2-6).

17.    However, Officer Delia's patrol car had a video camera mounted to the dashboard, which filmed the December 4, 2006 incident, and which showed otherwise. (Exhibit D, p.26, 4-11; Exhibit E).

18.    Plaintiff viewed the video tape approximately a month prior to his deposition on March 7, 2008. (Exhibit D, pp.8-9).

19.    In his March 7, 2008 deposition, plaintiff changed his testimony to say that Sergeant Welsh did not pull him out of his vehicle. (Exhibit D, pp.34-38).

20.    After plaintiff exited his vehicle, Sergeant Welsh told the plaintiff to put his hands up. (Exhibit A, par. 22; Exhibit C, p.36, 6-10).

21.    Sergeant Welsh removed the handgun from its holster. (Exhibit A, par. 22; Exhibit C, p.36, 6-10).

22.    Plaintiff carried on his person a loaded Kimber, semi-automatic handgun. (Exhibit C, p.57, 5-12).

23.    Plaintiff was also carrying on his person three magazines: one magazine in the gun and two magazines on his belt.  (Exhibit C, p.56, 23-25).

24.    Plaintiff was carrying a total of 24 rounds or eight rounds in each magazine. (Exhibit C, pp.56-57)

25.    Sergeant Welsh then began to pat down the plaintiff and found an illegal, gravity knife in his pants pocket. (Exhibit C, pp.37, 18-23, p.41, 21-24; Exhibit D, p.44, 14-16).

26.    The knife was approximately three-and-a-half to four inches long.  (Exhibit C, p.38, 22-24).

27.    Plaintiff, at his 50-h Hearing, testified that Sergeant Welsh attempted to open the knife by gravity force but he could not open it.  (Exhibit C, p.39, 2-8).

28.    However, the video of the incident shows Sergeant Welsh opening the knife by gravity force.  (Exhibit E).

29.    During his March 7, 2008 deposition, the plaintiff again changed his testimony to say that Sergeant Welsh was able to open the knife.  (Exhibit D, pp. 42-43).

30.    Sergeant Welsh then directed plaintiff to put his hands behind his back and advised him that he was under arrest.  (Exhibit C, p.37, 20-23).

31.    Plaintiff inquired as to why he was under arrest, and Sergeant Welsh advised him that he was in possession of a gravity knife, which is illegal in the State of New York. (Exhibit A, par. 22; Exhibit C, p.38, 3-8, p. 41, 21-24; Exhibit D, p. 44, 14-16).

32.    The plaintiff was then placed in handcuffs behind his back and placed in the back of Officer Delia's police vehicle. (Exhibit A, par. 22; Exhibit C, p.42).

33.     Sergeant Welsh and Officer Delia then conducted a search of the plaintiff's motor vehicle and found a billy club under the front passenger's seat. (Exhibit A, par. 23; Exhibit C, pp.44-45; Exhibit D, pp. 46-47).

34.     Photos were taken of the gravity knife and billy club. (Exhibit F).

35.     Officer Delia escorted the plaintiff back to the Town of Tuxedo Police Department Headquarters. (Exhibit C, p.50, 2-13)

36.     During the ride to the Town of Tuxedo Police Department Headquarters Officer Delia advised the plaintiff that he was being charged with criminal possession of a knife. (Exhibit C, p.50, 13-25).

37.     Officer Delia also indicated he was going to call the sheriff to confirm that the pistol license was valid. (Exhibit C, pp.50-51).

38.     The plaintiff was at the Tuxedo Police Department for about an hour-and-a-half. (Exhibit C, p.52, 7-12).

39.     Plaintiff was allowed to make phone calls. (Exhibit C, p.52, 13-19).

40.     Eventually bail was set for $100. (Exhibit C, p.65, 14-15).

41.     Plaintiff was charged with speeding and criminal possession of a weapon, a gravity knife and a billy club. (Exhibit C, p.64, 16-18; See **EXHIBIT G**).

42.     Plaintiff eventually pled guilty to a stop/park violation. (Exhibit C, p.75, 11-22; Exhibit F).

43.     The bail money plaintiff previously paid was applied to the $100.00 fine for the stop/park violation. (See Exhibit F).

Dated: White Plains, New York
       April 15, 2008

                    Respectfully submitted,
                    HODGES WALSH & SLATER, LLP

                    _____
                    John J. Walsh, Esq. (JW4092)

UNITED STATE DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X
ERIC K. MERRING,

                                    Plaintiff,                           Docket No.:
                                                                         **07 civ 10381 (CLB)**

          - against –

THE TOWN OF TUXEDO, NEW YORK, THE TOWN OF
TUXEDO POLICE DEPARTMENT, TOWN OF TUXEDO
POLICE OFFICER ANTHONY DELIA, SHIELD NUMBER
24, TOWN OF TUXEDO POLICE SERGEANT PATRICK
WELSH, SHIELD NUMBER 17,

                                    Defendants.
-------------------------------------------------------------------------X

# MEMORANDUM OF LAW

**Submitted on behalf of the Defendants**
**POLICE OFFICER ANTHONY DELIA and SERGEANT PATRICK WELSH**
**By their attorneys**

**HODGES WALSH & SLATER, LLP**
**55 Church Street, Suite 211**
**White Plains, New York 10601**

**Preliminary Statement**

Assuming plaintiff has pled a cognizable claim, qualified immunity shields government officials performing discretionary functions from liability under 42 U.S.C. § 1983 for civil damages insofar as (1) their conduct does not violate clearly established constitutional rights, or (2) it was objectively reasonable for them to believe their acts did not violate those rights. Weyant v. Okst, 101 F.3d 845, 857 (2d Cir. 1996).

In his complaint, plaintiff, ERIC K. MERRING, alleges violations of his federal and state constitutional rights. However, it is difficult to parse out which federal and/or state constitutional rights the plaintiff alleges were violated. We are assuming the plaintiff alleges the following violations in his complaint: unlawful search and seizure of the plaintiff's person and vehicle (Exhibit A, pars. 63 and 70); violation of his right to be free from unlawful detention and false arrest (Exhibit A, pars.70 and 81); and malicious prosecution (Exhibit A, par. 81).

Based upon the facts and circumstances known to Police Officer Delia and Sergeant Welsh, it was objectively reasonable for Officer Delia to undertake a vehicle traffic stop; for Officer Delia and Sergeant Welsh to inquire as to the reason why the plaintiff was carrying on his person a semi-automatic handgun; for Sergeant Welsh to pat down the plaintiff's person for other weapons; for the officers to place the plaintiff under arrest after finding a gravity knife on the plaintiff's person; for the officers to subsequently search the plaintiff's car incident to the arrest; and for the plaintiff to detained for a short period of time at the police station.

**DEFENDANTS ARE ENTITLED**
**TO A QUALIFIED IMMUNITY DEFENSE**
**ON PLAINTIFF'S CLAIMS OF UNLAWFUL SEARCH AND SEIZURE**

Claims for unlawful search and seizure are analyzed under federal law. "Whether a search and seizure is constitutional under the circumstances of a particular case, however, is

determined by applying federal law." *United States v. Scopo*, 19 F.3d 777 (2d Cir.1994).  See also *United States v. Pforzheimer*, 826 F.2d 200 (2d Cir.1987) (even when a state crime was investigated solely by state officers, a federal court must apply federal law to evaluate search and seizure issues.)

Determining whether a search and/or seizure is reasonable "depends on all of the circumstances surrounding the search or seizure and the nature of the search or seizure itself," and the permissibility of the search is "judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests." *Skinner v. Railway Labor Execs. Ass'n,* 489 U.S. 602, 616, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989) (quoting *Schmerber v. California,* 384 U.S. 757, 767-68, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). (internal quotation marks and citations omitted).

Here, on December 4, 2006, around 9 a.m., Police Officer Anthony Delia undertook a valid vehicle traffic stop of Plaintiff for speeding on Route 17 in Tuxedo, New York.  Plaintiff pulled his vehicle onto a side street, Stone Ridge Road.  Officer Delia asked the plaintiff for his license, registration and insurance cards.  Plaintiff, then, informed Officer Delia that he was carrying a handgun.  Officer Delia asked for the handgun permit and called Sergeant Welsh for backup.  Sergeant Welsh arrived a few minutes later and asked the plaintiff to step out of the car.

Passengers and drivers, once lawfully stopped, have no Fourth Amendment interest in not being ordered out of the stopped vehicle. *Pennsylvania v. Mimms*, 434 U.S. 106, 98 S.Ct. 330, (1977).

Officers believing a driver has committed a traffic violation have probable cause to stop the driver and conduct a limited search of the person for discovery of weapons. See *Whren v.*

*United States*, 517 U.S. 806, 116 S.Ct. 1769 (1996); See also *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868 (1968).

In this case, Officer Delia had conducted a lawful traffic stop of the plaintiff for speeding. Plaintiff informed Officer Delia and Sergeant Welsh that he was carrying a handgun. Plaintiff's handgun was licensed in Delaware County, and Sergeant Welsh and Officer Delia could not verify whether the handgun permit was valid. After the plaintiff exited his vehicle, Sergeant Welsh removed the handgun from the plaintiff's person, patted down the plaintiff and found an illegal knife in his pants pocket.

Sergeant Welsh arrested the plaintiff for criminal possession of a weapon in the fourth degree. The plaintiff was handcuffed and placed in the back seat of Officer Delia's patrol car.

The Supreme Court has held "that a lawful custodial arrest creates a situation justifying the contemporaneous warrantless search of the arrestee and of the immediately surrounding area. Not only may the police search the passenger compartment of the car in such circumstances, they may also examine the contents of any containers found in the passenger compartment." *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860 (1981) citing *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034 (1969).

In *Chambers v. Maroney*, the Supreme Court further held that "[f]or constitutional purposes, we see no difference between on the one hand seizing and holding the car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment." *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975 (1970).

The Supreme Court further held that "[t]he scope of a warrantless search of an automobile thus is … defined by the object of the search and the places in which there is

probable cause to believe that it may be found." *United States v. Ross*, 456 U.S. 798, 824, 102 S.Ct. 2157, 2172 (1982).

Here, incidental to the plaintiff's arrest for criminal possession of a weapon, Officer Delia and Sergeant Welsh searched the compartment of plaintiff's car for additional illegal weapons.  They found a billy club or night stick, the possession of which is also illegal in the State of New York.  Upon finding another illegal weapon in the plaintiff's car, Officer Delia and Sergeant Welsh had probable cause to search the entirety of the plaintiff's car, including any containers and the trunk, for additional illegal weapons.

Based upon the facts and circumstances known to Sergeant Welsh and Officer Delia, it is respectfully submitted that it was objectively reasonable for them to request the plaintiff to exit the car after being informed he was carrying a handgun.

.  It was objectively reasonable for Sergeant Welsh to remove the handgun from the plaintiff instead of allowing the plaintiff to hand him a loaded gun.

It was objectively reasonable for the officers to search the plaintiff's person for other weapons.

It was also objectively reasonable for them to search the plaintiff's car for weapons after finding a gravity knife in the plaintiff's pocket.

As such, it is respectfully submitted that the search of plaintiff's person and automobile was objectively reasonable in its entirety.

### DEFENDANTS ARE ENTITLED
### TO A QUALIFIED IMMUNITY DEFENSE
### ON PLAINTIFF'S CLAIM OF FALSE ARREST

Under New York law, the elements of a false arrest claim are: (1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did

not consent to the confinement, and (4) the confinement was not otherwise privileged. Singer v. Fulton County Sheriff, 63 F.3d 110 (2d Cir. 1995).

Assuming for the purpose of this motion that plaintiff has properly pled his claim, "[t]he existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest whether that action is brought under state law or § 1983." Weyant, 101 F.3d 845, 852 (quotation omitted); Singer v. Fulton County Sheriff, 63 F.3d 110 (2d Cir. 1995)("There can be no federal civil rights claim for false arrest where the arresting officer had probable cause."); Jaegly v. Couch, 439 F.3d 149, 154 (2d Cir. 2006).

The probable cause inquiry is objective rather than subjective. Devenpeck v. Alford, 543 U.S. 146, 152-3 (2004).

Probable cause to arrest exists when the officers, based upon the facts available to the officer at the time, have reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime. Jenkins v. City of New York, 478 F.3d 76, 85 (2d Cir. 2007); Lowth v. Town of Cheektowoga, 82 F.3d 563, 569 (2d Cir. 1996).

As the Supreme Court held in _Devenpeck_, a claim for false arrest turns only on whether probable cause existed to arrest a defendant, and it is not relevant whether probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of arrest. Stated differently, when faced with a claim for false arrest, the Court's focus is on the validity of the arrest, and not on the validity of each charge. _Jaegly_, 439 F.3d at 154.

Examining the totality of the circumstances, it is respectfully submitted that probable cause existed to arrest plaintiff for speeding and criminal possession of a weapon in the fourth

degree.

New York Vehicle and Traffic Law (VTL) § 1180(a) provides that [n]o person shall drive a vehicle at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing.  VTL § 155 states that "[f]or purposes of arrest without a warrant, pursuant to article one hundred forty of the criminal procedure law, a traffic infraction shall be deemed an offense."  New York Criminal Procedure Law § 140.10((1)(a) provides that a police officer may arrest a person for any offense when he has reasonable cause to believe that such person has committed such offense in his presence.

The New York statute for criminal possession of a weapon in the fourth degree provides:

> A person is guilty of criminal possession of a weapon
> in the fourth degree when he possesses any firearm,
> electronic dart gun, electronic stun gun, gravity knife,
> switchblade knife, pilum ballistic knife, metal knuckle
> knife, cane sword, billy, blackjack, bludgeon, metal
> knuckles, chuka stick, sand bag, sandclub, wrist-brace
> type slingshot or slungshot, shirken or "Kung Fu star"

NY Penal Law §265.01(1).

As discussed above, the Supreme Court has held that when an officer believes a driver has committed a traffic violation, that officer then has probable cause to stop the driver and conduct a limited search of the person for discovery of weapons.  See *Whren v. United States*, 517 U.S. 806, 116 S.Ct. 1769 (1996); See also *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868 (1968).

Here, the police conducted a lawful traffic stop of the plaintiff for speeding on Route 17. Upon being informed that the plaintiff was carrying a handgun, Sergeant Welsh asked the plaintiff to exit the vehicle so he could remove the handgun from the plaintiff's person.  It is absolutely reasonable for a police officer to remove a handgun from a person instead of having that person hand the gun directly to the officer.

Sergeant Welsh patted down the plaintiff to search for other weapons on plaintiff's person and found a gravity knife in the plaintiff's pocket. After finding the gravity knife, Sergeant Welsh arrested the plaintiff for speeding and criminal possession in the fourth degree.

Based upon the facts and circumstances known to the police officers, it is respectfully submitted that it was objectively reasonable for them to seize the plaintiff for speeding and, after finding a gravity knife in the plaintiff's pocket, for criminal possession of a weapon.

As such, the arrest of the plaintiff was objectively reasonable.

### DEFENDANTS ARE ENTITLED
### TO A QUALIFIED IMMUNITY DEFENSE
### ON PLAINTIFF'S CLAIM OF MALICIOUS PROSECUTION

To state a cause of action for malicious prosecution under Section 1983 appellant must prove "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." Jocks v. Tavernier, 316 F.3d 128, 136 (2d Cir, 2003)(internal quotation omitted).

Assuming for the purpose of this motion that plaintiff has properly pled his claim, and as discussed above relative to plaintiff's false arrest claim, the existence of probable cause is an absolute defense to a cause of action for malicious prosecution. Raymond v. Bunch, 136 F.Supp.2d 71, 80 (N.D.N.Y. 2001); Weyant, 101 F.3d at 857-8 (existence of probable cause establishes an absence of malice).

Here, there is evidence that the plaintiff had been stopped previously for traffic violations by Tuxedo police officers, but the plaintiff has not provided any evidence that the actions of Officer Delia and Sergeant Welsh were motivated by actual malice.

The officers arrested the plaintiff for speeding and criminal possession of a gravity knife

and billy club.

Furthermore, though the Orange County District Attorney's Office chose not to prosecute the plaintiff on the charges at issue, plaintiff pled guilty to a lesser traffic offense. As such, there was no prosecution and said prosecution did not terminate in plaintiff's favor.

As such, the officers' actions and the failure to prosecute did not constitute malicious prosecution.

Dated: White Plains, New York
       April 15, 2008

                        Respectfully submitted,
                        HODGES WALSH & SLATER, LLP


                        John J. Walsh, Esq. (JW4092)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

ERIC K. MERRING,

                Plaintiff,

    - against -

THE TOWN OF TUXEDO, NEW YORK, THE TOWN OF
TUXEDO POLICE DEPARTMENT, TOWN OF TUXEDO
POLICE OFFICER ANTHONY DELIA, SHIELD NUMBER
24, TOWN OF TUXEDO POLICE SERGEANT PATRICK
WELSH, SHIELD NUMBER 17,

                Defendants.

-------------------------------------------------------------------X

CV NO.:

**COMPLAINT
WITH JURY
DEMAND**

**'07 CIV 10381**

**BRIEANT**

        Plaintiff, ERIC K. MERRING (hereinafter "plaintiff" or

"MERRING"), in the above-captioned action, by his attorney, LEE DAVID KLEIN,

ESQ., complaining of the defendants herein, does hereby complain and sets forth and

alleges as follows:

### JURISDICTION AND VENUE:

        1.    This is a civil action brought pursuant to Title 42 of the United

State Code, Sections 1983 and 1985, seeking relief and/or damages to defend and protect

the rights guaranteed to the plaintiff by the Constitution and laws of the United States.

Accordingly, the jurisdiction of this Court is invoked by plaintiff pursuant to Title 28 of

the United States Code, Sections 1331 and 1343, federal common law and the Court's

pendent jurisdiction.




LEE DAVID KLEIN, ESQ
ATTORNEY AT LAW
11 MARKET STREET
SUITE 204
POUGHKEEPSIE
NEW YORK 12601

TEL: (845) 454-9200



2.     This Court has supplemental jurisdiction over claims relating to violations of the Constitution and laws of the State of New York, pursuant to Title 28 of the United States Code, Section 1367.

3.     The controversies in this case are justiciable, capable of disposition, and plaintiff has a personal stake in the outcome.

4.     The amount in controversy exceeds $75,000.00, exclusive of interest and costs.



5.     Venue is placed in this district, pursuant to 28 U.S.C. 1391, because it is where the defendants reside and where all the events complained of occurred.

## JURY DEMAND:

6.     Plaintiff demands a trial by jury on all issues, pursuant to the Seventh Amendment to the United States Constitution and Federal Rule of Civil Procedure 38.



## NATURE OF THE PROCEEDINGS:

7.     This is an action for compensatory and punitive damages owing to the plaintiff as a result of the acts and/or omissions of the defendants.

LEE DAVID KLEIN, ESQ
ATTORNEY AT LAW
11 MARKET STREET
SUITE 204
POUGHKEEPSIE
NEW YORK 12601

TEL: (845) 454-9200

2

## PARTIES:

8.     At all times hereinafter mentioned, MERRING was and remains

a citizen of the United States of America, and a resident of the County of Delaware, State

of New York, residing at 343 Bob Holloway Road, Delancey, New York 13752.



9.     Upon information and belief, at all times hereinafter mentioned,

defendant THE TOWN OF TUXEDO ("TOWN") was and remains a municipal



corporation, incorporated and operating under the laws of the State of New York and

located in the County of Orange, State of New York.

10.     Upon information and belief, at all times hereinafter mentioned,

defendant THE TOWN OF TUXEDO POLICE DEPARTMENT ("POLICE

DEPARTMENT") was and remains a municipal agency operating under the laws of the



State of New York, under the supervision and control of the defendant TOWN, and

located in the Town of Tuxedo, County of Orange, State of New York, at 1075 State

Route 17, Tuxedo, New York 10987.  Upon information and belief, the POLICE

DEPARTMENT was and is the principal law enforcement agency for the TOWN.

11.     Upon information and belief, and at all times relevant herein,

defendant TOWN OF TUXEDO POLICE OFFICER ANTHONY DELIA, SHIELD

NUMBER 24 (hereinafter referred to as "OFFICER DELIA" or "DELIA"), was and is a

citizen of the United States, and currently resides in the State of New York, with a last

known business address at TOWN OF TUXEDO POLICE DEPARTMENT, located at

1075 State Route 17, Tuxedo, New York 10987.  OFFICER DELIA is a party to this

action individually and in his capacity as an agent of the TOWN and/or the POLICE

LEE DAVID KLEIN, ESQ
ATTORNEY AT LAW
11 MARKET STREET
SUITE 204
POUGHKEEPSIE
NEW YORK 12601
—
TEL: (845) 454-9200

3

DEPARTMENT. At all times relevant to this action, OFFICER DELIA, was, upon information and belief, a Police Officer duly employed by the TOWN and/or the POLICE DEPARTMENT. Additionally, at all times relevant to this action, OFFICER DELIA was acting and/or holding himself out as acting within the scope of his employment with the TOWN and/or the POLICE DEPARTMENT. OFFICER DELIA is being sued individually and in his official capacity.

12. Upon information and belief, and at all times relevant herein, defendant TOWN OF TUXEDO SERGEANT PATRICK WELSH, SHIELD NUMBER 17, (hereinafter referred to as "SERGEANT WELSH" or "WELSH"), was and is a citizen of the United States, and currently resides in the State of New York, with a last known business address at TOWN OF TUXEDO POLICE DEPARTMENT, located at 1075 State Route 17, Tuxedo, New York 10987. SERGEANT WELSH is a party to this action individually and in his capacity as an agent of the TOWN and/or the POLICE DEPARTMENT. At all times relevant to this action, SERGEANT WELSH, was, upon information and belief, a Police Sergeant duly employed by the TOWN and/or the POLICE DEPARTMENT. Additionally, at all times relevant to this action, SERGEANT WELSH was acting and/or holding himself out as acting within the scope of his employment with the TOWN and/or the POLICE DEPARTMENT. SERGEANT WELSH is being sued individually and in his official capacity.

LEE DAVID KLEIN, ESQ
ATTORNEY AT LAW
11 MARKET STREET
SUITE 204
POUGHKEEPSIE
NEW YORK 12601

TEL: (845) 454-9200

4

## RIGHTS:

13.    Plaintiff has a right to be free from illegal searches and seizures of his person; a right to be free from unlawful arrest, detention, and imprisonment; a right to be free of any conspiracy to deprive him of those rights; and a right to equal protection of the laws; civil rights secured to plaintiff by the Second, Fourth, Fifth and Fourteenth Amendments of the Constitution of the United States and by Title 42 of the United States, 42 Code, Sections 1983 and 1985, as well as the Constitution and laws of the State of New York.

## DUTIES:

14.    Upon information and belief, at all times hereinafter mentioned, defendant POLICE DEPARTMENT had and still has full power and authority to provide initial and ongoing training, and to supervise and control the conduct and action of police officers employed by it and/or defendant TOWN, in the exercise of police functions.

15.    Upon information and belief, at all times hereinafter mentioned, it was and remains the duty and special duty of the defendant POLICE DEPARTMENT, owed to plaintiff, to monitor, supervise, and control the conduct and actions of the aforesaid police officers employed by it and/or defendant TOWN, in the exercise of police functions.

16.    Upon information and belief, at all times hereinafter mentioned, defendant TOWN had and still has full power and authority to provide initial and ongoing

LEE DAVID KLEIN, ESQ
ATTORNEY AT LAW
11 MARKET STREET
SUITE 204
POUGHKEEPSIE
NEW YORK 12601

TEL: (845) 454-9200

5

training and to supervise and control the conduct and action of police officers employed

by it and/or defendant POLICE DEPARTMENT, in the exercise of police functions.

17.     Upon information and belief, at all times hereinafter mentioned,

it was and remains the duty and special duty of the defendant TOWN, owed to plaintiff,

to monitor, supervise and control the conduct and actions of the aforesaid police officers



employed by it and/or defendant POLICE DEPARTMENT, in the exercise of police

functions.

18.     Upon information and belief, at all times hereinafter mentioned,



it was and remains the duty of defendants OFFICER DELIA and SERGEANT WELSH,

owed to plaintiff, to carry out their official police duties in a manner that is consistent

with the Constitution and laws of New York State and the United States of America.

19.     At all times relevant herein, it is alleged that all defendants



breached these duties owed to plaintiff.


**ALLEGATIONS:**

20.     On December 4, 2006, at approximately 9:00 a.m., MERRING was

operating his motor vehicle south bound on Route 17, in the Town of Tuxedo, County of

Orange, State of New York. Defendant DELIA, undertook a vehicle and traffic stop, in

a marked police vehicle. MERRING complied by pulling over on Stone Ridge Road in

the Town of Tuxedo. OFFICER DELIA pulled in behind MERRING. OFFICER DELIA,

in an angry manner, asked for the plaintiff's driver's license, registration, and insurance

card. Plaintiff complied and provided the same. Plaintiff volunteered the information to

LEE DAVID KLEIN, ESQ
ATTORNEY AT LAW
11 MARKET STREET
SUITE 204
POUGHKEEPSIE
NEW YORK 12601
—
TEL: (845) 454-9200

6

OFFICER DELIA that he was carrying on his person a handgun duly licensed and

permitted in New York State. OFFICER DELIA inquired as to the reason for his being

armed. Plaintiff advised that he had a valid full-carry permit and that he was on his way

to his employment at a sporting good store. OFFICER DELIA advised that this was not

a valid reason. OFFICER DELIA made a cellular telephone call, and thereafter another

TOWN OF TUXEDO marked police vehicle pulled in behind the plaintiff's vehicle, with

emergency lights flashing.

21.    SERGEANT WELSH exited this latter vehicle and approached

plaintiff's vehicle and inquired as to the reason that the plaintiff was carrying his duly

licensed handgun. The plaintiff responded that he has a full, unrestricted license to carry

a handgun in New York State issued by Delaware County, and that he was on his way to

his employment at a sporting good store, at which his employment duties included selling

firearms. SERGEANT WELSH replied that this is not a valid reason.

22.    SERGEANT WELSH directed the plaintiff to step out of his

vehicle. The plaintiff asked why and began to exit his vehicle. SERGEANT WELSH

grabbed plaintiff and pulled him the rest of the way out of his vehicle and told him to put

his hands up. SERGEANT WELSH then conducted a search of the plaintiff's person.

SERGEANT WELSH removed the handgun from its holster on the person of the plaintiff.

SERGEANT WELSH then began to search the plaintiff and seized a legal folding knife

from his pants pocket, claimed it was an illegal knife, a gravity knife in violation of New

York State Penal Law. SERGEANT WELSH then advised the plaintiff to put his hands

behind his back and advised him that he was under arrest. The plaintiff inquired as to





LEE DAVID KLEIN, ESQ
ATTORNEY AT LAW
11 MARKET STREET
SUITE 204
POUGHKEEPSIE
NEW YORK 12601

TEL: (845) 454-9200

7

what charge, and SERGEANT WELSH advised him that he was in possession of a gravity knife, which, according to SERGEANT WELSH, was illegal to possess in New York State. The plaintiff was then placed in handcuffs behind his back and placed in the back OFFICER DELIA's patrol car.

       23.     Without any consent from the plaintiff, SERGEANT WELSH and OFFICER DELIA conducted an illegal search of plaintiff's motor vehicle, retrieving an old stick. SERGEANT WELSH advised plaintiff that he was going to be charged as well for that.

       24.     SERGEANT WELSH inquired repeatedly thereafter as to the plaintiff's valid reason for having a firearm on his person, to which plaintiff responded repeatedly, while he remained in handcuffs in the back of OFFICER DELIA's marked police vehicle, that he had a full unrestricted license to carry a handgun, in response to which SERGEANT WELSH claimed that that was not a reason for being armed. SERGEANT WELSH inquired as to whether the plaintiff had any weapons at his girlfriend's house and asked if there were any automatic weapons there, to which the plaintiff responded in the negative. SERGEANT WELSH inquired as to the licensing process for handguns in New York State, to which the plaintiff responded, advising SERGEANT WELSH of the process by which a permit is applied for. Plaintiff's vehicle, although at a safe location, was towed at the direction of SERGEANT WELSH and/or OFFICER DELIA without plaintiff's permission.

LEE DAVID KLEIN, ESQ
ATTORNEY AT LAW
11 MARKET STREET
SUITE 204
POUGHKEEPSIE
NEW YORK 12601

TEL: (845) 454-9200

8

25.    Plaintiff was taken in OFFICER DELIA's marked police vehicle to the POLICE DEPARTMENT headquarters, located at 1075 State Route 17, Tuxedo, New York 10987.

26.    OFFICER DELIA directed the plaintiff to sit down at a desk. SERGEANT WELSH then presented the plaintiff with a copy of the New York State Penal Law and directed the plaintiff to read it. The plaintiff read and advised that the portion referred to did not apply to him. SERGEANT WELSH became angry and raised his voice and told the plaintiff in sum and substance: "Yes, it fucking does. I've been doing this for eleven (11) years. I know what I'm doing. Eight (8) of those years as Sergeant." Plaintiff was required to remove his belt, empty his pockets, and then SERGEANT WELSH directed plaintiff to a holding cell. Plaintiff was then held in a holding cell.

27.    SERGEANT WELSH repeatedly came to the plaintiff inquiring as to the licensing system for handguns in New York State. SERGEANT WELSH repeatedly advised that he did not like guns, that he hated guns, that he hated that plaintiff had a gun and that the plaintiff was "with the NRA." Plaintiff responded that the SERGEANT had a gun. The SERGEANT responded, in sum and substance: "I am a good shot."

28.    Some time thereafter, the plaintiff was subjected to the booking process, including fingerprinting and photographing, and was seated with the SERGEANT for further paperwork regarding arrest processing to be finalized. The SERGEANT required the plaintiff to post $100.00 bail in order to be released. It was



LEE DAVID KLEIN, ESQ
ATTORNEY AT LAW
11 MARKET STREET
SUITE 204
POUGHKEEPSIE
NEW YORK 12601
TEL: (845) 454-9200

9

only at that time that OFFICER DELIA advised plaintiff that a Uniform Traffic Ticket was being issued, claiming that the plaintiff was traveling at 69 mph in a zone in which the speed limit was 55 mph, and then OFFICER DELIA yelled loudly at the plaintiff, in sum and substance: "Get out of my office." Plaintiff was permitted to leave the police station after he had been charged with a violation of Penal Law Section 265.01, criminal possession of a weapon in the fourth degree, a Class A misdemeanor under New York State Penal Law, and given an appearance ticket for the same, directing him to appear in the Town of Tuxedo Justice Court on December 28, 2006, at 4:30 p.m. Copies of the Information and Appearance Ticket are annexed hereto as Exhibit A. Plaintiff was also issued a Uniform Traffic Ticket Number MDT200533K, charging him with Vehicle and Traffic Law Section 1180(b), speeding in a 55 mph zone, going 72 mph in a 55 mph zone, a traffic infraction. A copy of said Uniform Traffic Ticket is annexed hereto as Exhibit B.

29.    Plaintiff was made to retrieve his vehicle, which had been towed at the direction of defendants, and was made to incur a monetary expense in doing so, reflected in a receipt from "Tuxedo Auto Body, Inc., dated December 4, 2006," a copy of which is annexed hereto as Exhibit C.

30.    Upon information and belief, said defendants POLICE OFFICER DELIA and/or SERGEANT WELSH, notified the Delaware County Sheriff regarding such arrest, resulting in an Order being issued by a Delaware County Judge, a copy of which is annexed hereto as Exhibit D, suspending plaintiff's pistol permit, reflecting a conspiracy on the part of said defendants to deprive plaintiff of his civil rights.

LEE DAVID KLEIN, ESQ
ATTORNEY AT LAW
11 MARKET STREET
SUITE 204
POUGHKEEPSIE
NEW YORK 12601

TEL: (845) 454-9200

10

31.    On January 25, 2007, before the Hon. Hume Styer, Town of Tuxedo Justice Court Judge, the aforesaid charges were resolved as follows: the claimant pleaded guilty to a violation of Vehicle and Traffic Law Section 1201(a), stopping or parking on the pavement, a traffic infraction, in satisfaction of the speeding ticket, and a fine of $100.00 was imposed, which was paid by the claimant at Court.    The charge of criminal possession of a weapon in the fourth degree, the Class A misdemeanor, under Vehicle and Traffic Law Section 265.01, was dismissed.    A copy of the Certificate of Disposition is annexed hereto as Exhibit E.

32.    At all times mentioned in this Complaint, defendants SERGEANT WELSH and OFFICER DELIA were acting under color of law, that is, under color of the Constitution, statutes, laws, charter, ordinances, rules, regulations, customers and usages of the United States, the State of New York, and the TOWN OF TUXEDO.

33.    Plaintiff was humiliated and embarrassed in front of his father and publicly.

34.    Plaintiff was arrested without probable cause.

35.    Plaintiff was arrested in the absence of a warrant.

36.    Plaintiff's person and car were illegally searched.

37.    Plaintiff's personal property was illegal seized, and has not yet been returned to him.

38.    Plaintiff was held in custody with his hands in handcuffs behind his back in the back seat of a marked police vehicle and detained in a holding cell at the POLICE DEPARTMENT prior to be allowed to return to his home.

LEE DAVID KLEIN, ESQ
ATTORNEY AT LAW
11 MARKET STREET
SUITE 204
POUGHKEEPSIE
NEW YORK 12601

TEL: (845) 454-9200

11

39. Plaintiff was subjected to verbal abuse and intimidation from defendants OFFICER DELIA and SERGEANT WELSH.

40. Due to the actions of one or more of the defendants, plaintiff suffered physical, emotional, and financial injury.

41. As a result of the acts of one or more of the defendants, and the breaches of the duties owed to the plaintiff by the defendants, plaintiff was subjected to unlawful harassment and intimidation; unlawful detention and false and unlawful arrest; illegal search; unlawful and false placement in handcuffs in the back seat of a marked police patrol vehicle; false imprisonment; embarrassment and humiliation before his father; public humiliation; and plaintiff suffered violations of his civil rights under New York State and Federal Law and the New York State and United States Constitutions.

42. Plaintiff was required to incur legal expenses in order to properly and adequately defend against these false charges, and lost time from his employment.

43. Notice of plaintiff's claims against defendants TOWN and POLICE DEPARTMENT, setting forth the nature of the claims, the description of the time, place and manner in which the injuries were sustained by the plaintiff and the name and post office address of the plaintiff and of his attorneys, was presented to the governing body of said defendants on or about March 1, 2007.

44. The Notice of Claim was filed within the statutory time period for the filing of said Notice of Claim, provided by New York State General Municipal Law.

LEE DAVID KLEIN, ESQ
ATTORNEY AT LAW
11 MARKET STREET
SUITE 204
POUGHKEEPSIE
NEW YORK 12601
—
TEL: (845) 454-9200

12

45.    At least thirty (30) days have elapsed since service of such Notice of Claim without payment or adjustment of such claim and adjustment or payment thereof has been rejected or refused.

## CAUSES OF ACTION:

### AS AND FOR A FIRST CAUSE OF ACTION AGAINST ALL DEFENDANTS:

46.    Plaintiff repeats, reiterates and realleges each and every allegation set forth herein above in paragraphs 1 through 45, as if set forth at length herein.

47.    The acts of defendants described above were all performed with malice and premeditation under color of state law with willful and wanton disregard of plaintiff's civil rights under the Second, Fourth, Fifth and Fourteenth Amendments of the Constitution and in contravention of the letter and spirit of 42 U.S.C. Sections 1983 and 1985, and defendant POLICE OFFICERS conspired to deprive plaintiff of such rights.

48.    As a result of these acts, plaintiff has suffered great emotional trauma, physical discomfort, embarrassment; was deprived of his liberty; his personal reputation was impaired; was forced to retain counsel at monetary expense to represent him in criminal proceedings stemming from his illegal arrest; and was required to employ and did employ the undersigned attorney to prosecute this action, thereby becoming obligated to pay said attorney a reasonable fee for their services in connection with and in furtherance of this action arising out of the conduct of the defendants.

49.    By reason of the foregoing, plaintiff has been damaged in the sum of ONE MILLION DOLLARS ($1,000,000.00).



LEE DAVID KLEIN, ESQ
ATTORNEY AT LAW
11 MARKET STREET
SUITE 204
POUGHKEEPSIE
NEW YORK 12601

TEL: (845) 454-9200

13

## AS AND FOR A SECOND CAUSE OF
## ACTION AGAINST ALL DEFENDANTS:



50.     Plaintiff repeats, reiterates and realleges each and every allegation set forth herein above in paragraphs 1 through 49, as if set forth at length herein.

51.     In doing the acts and things complained of, defendants were conspirators engaged in a scheme and conspiracy designed and intended to deny and deprive plaintiff of civil rights guaranteed to him under the Second, Fourth, Fifth and Fourteenth Amendments of the Constitution and in contravention of the letter and spirit of 42 U.S.C. Sections 1983 and 1985.

52.     As a direct consequence and result of the acts of defendants hereinabove complained of, plaintiff was deprived of his liberty; denied due process of law; and denied equal protection of the law; suffered much anxiety and distress, discomfort, embarrassment and humiliation; was required to spend substantial sums of money for legal representation and other expenses, such as towing expenses, associated with legal proceedings defending himself against criminal charges arising from defendants' illegal acts against him; and was required to divert substantial time, effort and resources from employment and employment opportunities.

53.     By reason of the foregoing, plaintiff has been damaged in the sum of ONE MILLION DOLLARS ($1,000,000.00).

LEE DAVID KLEIN, ESQ
ATTORNEY AT LAW
11 MARKET STREET
SUITE 204
POUGHKEEPSIE
NEW YORK 12601
___
TEL: (845) 454-9200

14

## AS AND FOR A THIRD CAUSE OF ACTION
## AGAINST THE DEFENDANTS TOWN AND POLICE DEPARTMENT:



54.    Plaintiff repeats, reiterates and realleges each and every allegation set forth herein above in paragraphs 1 through 53, as if set forth at length herein.

55.    Upon information and belief, at all relevant times, the TOWN and/or the POLICE DEPARTMENT, negligently and/or intentionally acted under color of state law, engaged in a pattern and practice of acts and omissions and/or sanctioned a pattern and practice of actions and/or conduct and/or omissions by its officers designed to and/or which had the effect of depriving individuals of their clear rights under the Second, Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States.



56.    Upon information and belief, at all relevant times, the TOWN and/or the POLICE DEPARTMENT, negligently and/or intentionally failed to properly train and/or supervise their law enforcement agents as to the appropriate and reasonable methods for identifying the commissions of acts sufficient to justify legal arrest and/or effectuation of legal and reasonable arrests.



57.    Upon information and belief, at all relevant times, the TOWN and/or the POLICE DEPARTMENT, negligently and/or intentionally acted under color of state law, engaged in a pattern and practice and/or sanctioned a pattern and practice of actions and/or conduct by its officers designed to and/or which had the effect of depriving individuals of their clear rights under the Second, Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States.



LEE DAVID KLEIN, ESQ
ATTORNEY AT LAW
11 MARKET STREET
SUITE 204
POUGHKEEPSIE
NEW YORK 12601

TEL: (845) 454-9200

15



58.     Upon information and belief, at all relevant times, the TOWN and/or the POLICE DEPARTMENT, negligently and/or intentionally failed to properly train and/or supervise their law enforcement agents as to the appropriate and reasonable methods for identifying the commissions of acts sufficient to justify legal arrests and/or effectuation of legal and reasonable arrests.



59.     Based upon the foregoing, one and/or more of the above municipalities are vicariously liable for the violations of plaintiff's constitutional rights by one and/or more of its/their respective employees.



60.     Based upon the foregoing, one or more of the above-named defendants violated 42 U.S.C. Section 1983, given that these actions were undertaken under color of state law.



61.     That as a direct and proximate result of the unconstitutional acts described above, the plaintiff has been injured, and hereby demands the sum of ONE MILLION DOLLARS ($1,000,000.00).

**AS AND FOR A FOURTH CAUSE OF ACTION,
AGAINST DEFENDANTS DELIA and WELSH FOR
INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS:**



62.     Plaintiff repeats, reiterates and realleges each and every allegation set forth herein above in paragraphs 1 through 61, as if set forth at length herein.

63.     Defendants DELIA and WELSH intentionally engaged in behavior that harassed and intimidated the plaintiff and falsely detained, arrested, and charged the



LEE DAVID KLEIN, ESQ
ATTORNEY AT LAW
11 MARKET STREET
SUITE 204
POUGHKEEPSIE
NEW YORK 12601

TEL: (845) 454-9200

16

plaintiff maliciously and in a manner that was extreme, outrageous, unjustified, and done

with actual malice and wanton indifference to and deliberate disregard for the civil rights

of plaintiff, causing plaintiff to suffer physical and emotional distress for which said

defendants are individually liable.

64.    By reason of the foregoing, plaintiff has been damaged in the sum

of ONE MILLION DOLLARS ($1,000,000.00).


## AS AND FOR A FIFTH CAUSE OF ACTION,
## AGAINST DEFENDANTS TOWN AND POLICE DEPARTMENT:

65.    Plaintiff repeats, reiterates and realleges each and every allegation

set forth herein above in paragraphs 1 through 64, as if set forth at length herein.

66.    At all times relevant hereto, defendants DELIA and WELSH were

acting within the scope of their employment as officers of POLICE DEPARTMENT and

TOWN.

67.    The defendants TOWN and POLICE DEPARTMENT are liable

for compensatory damages under the doctrine of respondeat superior for the intentional

torts of defendants DELIA and WELSH committed within the scope of their employment.


68.    By reason of the foregoing, plaintiff has been damaged in the sum

of ONE MILLION DOLLARS ($1,000,000.00).

LEE DAVID KLEIN, ESQ
ATTORNEY AT LAW
11 MARKET STREET
SUITE 204
POUGHKEEPSIE
NEW YORK 12601
—
TEL: (845) 454-9200

17

## AS AND FOR A SIXTH CAUSE OF ACTION,
## AGAINST ALL DEFENDANTS FOR NEGLIGENT
## INFLICTION OF EMOTIONAL DISTRESS:

69.     Plaintiff repeats, reiterates and realleges each and every allegation set forth herein above in paragraphs 1 through 68, as if set forth at length herein.

70.     One and/or more of the above named defendants, through gross negligence, negligence and carelessness, caused plaintiff to be wrongfully detained, arrested, searched, and interrogated. This conduct resulted in unreasonable physical and emotional harm to the plaintiff.

71.     Upon information and belief, the defendants, TOWN and/or the POLICE DEPARTMENT knew or should have known that the defendants, OFFICER DELIA and/or SERGEANT WELSH were wrongfully detaining and/or interrogating the plaintiff, yet they failed to act.

72.     This conduct on the part of the defendants constitutes negligent infliction of emotional distress.

73.     That as a direct and proximate result of the acts described above, the plaintiff has been irreparably injured, and hereby demands the sum of ONE MILLION DOLLARS ($1,000,000.00).

LEE DAVID KLEIN, ESQ
ATTORNEY AT LAW
11 MARKET STREET
SUITE 204
POUGHKEEPSIE
NEW YORK 12601

TEL: (845) 454-9200

18

## AS AND FOR A SEVENTH CAUSE OF ACTION, AGAINST
## DEFENDANTS TOWN AND POLICE DEPARTMENT FOR NEGLIGENCE:

74.    Plaintiff repeats, reiterates and realleges each and every allegation set forth herein above in paragraphs 1 through 73, as if set forth at length herein.

75.    Defendant TOWN and POLICE DEPARTMENT owed plaintiff a duty to properly and adequately train, monitor, supervisor and otherwise control their police officers in the exercise of police functions.

76.    Defendants TOWN and POLICE DEPARTMENT failed to provide proper and adequate training, supervision, and control of defendants DELIA and WELSH, which failure constitutes negligence.

77.    As a proximate course of the said negligence of TOWN and POLICE DEPARTMENT, plaintiff sustained the injuries and violations of his rights as aforesaid.

78.    Said negligence constituted a wilful and wanton indifference and deliberate disregard for the rights of private citizens, including plaintiff.

79.    By reason of the foregoing, plaintiff has been damaged in the sum of ONE MILLION DOLLARS ($1,000,000.00).

## AS AND FOR A EIGHTH CAUSE OF ACTION,
## AGAINST DELIA AND WELSH:

80.    Plaintiff repeats, reiterates and realleges each and every allegation set forth herein above in paragraphs 1 through 79, as if set forth at length herein.

LEE DAVID KLEIN, ESQ
ATTORNEY AT LAW
11 MARKET STREET
SUITE 204
POUGHKEEPSIE
NEW YORK 12601
—
TEL: (845) 454-9200

19





81.    Defendants DELIA and WELSH used criminal process against plaintiff in order to harass him and in order to cover up their own wrongdoing and to avoid civil liability for their own acts relating to intimidating the plaintiff, and wrongfully taking him into custody by force without warrant or probable cause that any crime had been committed.

82.    Said defendants falsely arrested and falsely imprisoned plaintiff.

83.    As a proximate result of this malicious abuse of process, false arrest, and false imprisonment, plaintiff suffered the damages as aforesaid.



84.    By reason of the foregoing, plaintiff seeks an award of ONE MILLION DOLLARS ($1,000,000.00).

## AS AND FOR A NINTH CAUSE OF ACTION FOR
## PUNITIVE DAMAGES AGAINST ALL DEFENDANTS:

85.    Plaintiff repeats, reiterates and realleges each and every allegation set forth herein above in paragraphs 1 through 84, as if set forth at length herein.



86.    The acts, conduct and behavior of the defendants, and each of them, were performed knowingly, intentionally, maliciously, and conspiratorially, and were so egregious as to shock the conscience.

87.    By reason of the foregoing, plaintiff is entitled to an award of punitive damages in the sum of FIVE MILLION DOLLARS ($5,000,000.00).

LEE DAVID KLEIN, ESQ
ATTORNEY AT LAW
11 MARKET STREET
SUITE 204
POUGHKEEPSIE
NEW YORK 12601

TEL: (845) 454-9200

20

## AS AND FOR A NINTH CAUSE OF ACTION FOR
## ATTORNEYS' FEES AGAINST ALL DEFENDANTS:

88.    Plaintiff repeats, reiterates and realleges each and every allegation set forth herein above in paragraphs 1 through 87, as if set forth at length herein.

89.    By reason of the foregoing, plaintiff is entitled to an award of reasonable attorneys' fees, pursuant to 42 U.S.C. Section 1988.

WHEREFORE, plaintiffs demand judgment against the defendants as follows:

a.    On the First Cause of Action, the sum of ONE MILLION DOLLARS ($1,000,000.00); and,

b.    On the Second Cause of Action, the sum of ONE MILLION DOLLARS ($1,000,000.00); and,

c.    On the Third Cause of Action, the sum of ONE MILLION DOLLARS ($1,000,000.00); and,

d.    On the Fourth Cause of Action, the sum of ONE MILLION DOLLARS ($1,000,000.00); and,

e.    On the Fifth Cause of Action, the sum of ONE MILLION DOLLARS ($1,000,000.00); and,

f.    On the Sixth Cause of Action, the sum of ONE MILLION DOLLARS ($1,000,000.00); and,

LEE DAVID KLEIN, ESQ
ATTORNEY AT LAW
11 MARKET STREET
SUITE 204
POUGHKEEPSIE
NEW YORK 12601
—
TEL: (845) 454-9200

21

g.    On the Seventh Cause of Action, the sum of ONE MILLION DOLLARS ($1,000,000.00);

h.    On the Eighth Cause of Action, the sum of FIVE MILLION DOLLARS ($5,000,000.00);

i.    On the Ninth Cause of Action, reasonable attorneys' fees;

j.    Costs and disbursements; and,

k.    Such other and further relief as to this Court seems just and proper in the premises.

Dated: Poughkeepsie, New York
      November 5, 2007

                                        Lee David Klein, Esq. (LDK 2270)
                                        Attorneys for Plaintiff
                                        11 Market Street, Suite 204
                                        Poughkeepsie, NY 12601
                                        845-454-9200

LEE DAVID KLEIN, ESQ
ATTORNEY AT LAW
11 MARKET STREET
SUITE 204
POUGHKEEPSIE
NEW YORK 12601
———
TEL: (845) 454-9200

STATE OF NEW YORK

COUNTY OF *ORANGE*

*TOWN* _____ COURT

*TOWN* _____ of *TUXEDO*

Defendant: *NA* _____  ____

Alleged Victim: *NA* ____

(Relationship to alleged victim)

(Relationship to defendant)

THE PEOPLE OF THE STATE OF NEW YORK

-- vs.--

*ERIC K MERRING*

Date of Birth

*12/03/1969*

Defendant(s)

# INFORMATION

**A**
**C**
**C**
**U**
**S**
**A**
**T**
**I**
**O**
**N**

BE IT KNOWN THAT, by this *INFORMATION* , *A DELIA*

as the Complainant herein, *STATIONED* at *TUXEDO TOWN POLICE DEPT.*

accuses the above mentioned Defendant(s), with having committed the *MISDEMEANOR*

of *CRIM POSS WEAP - 4TH DEG* in violation of Section *265.01*

Subdivision _____ of the *PENAL* Law of the State of New York.

That on or about *12/04/2006* at about *09:08 AM*

in the *TOWN* of *TUXEDO* , County of *ORANGE* , the defendant(s)

*A PERSON IS GUILTY OF CRIMINAL POSSESSION OF A WEAPON IN THE FOURTH DEGREE WHEN: (1) HE POSSESSES ANY FIREARM, ELECTRONIC DART GUN, ELECTRONIC STUN GUN, GRAVITY KNIFE, SWITCHBLADE KNIFE, PILUM BALLISTIC KNIFE, METAL KNUCKLE KNIFE, CANE SWORD, BILLY, BLACKJACK, BLUDGEON, METAL KNUCKLES, CHUKA STICK, SAND BAG, SANDCLUB, WRIST-BRACE TYPE SLINGSHOT OR SLUNGSHOT, SHIRKEN OR "KUNG FU" STAR.*

**F**
**A**
**C**
**T**
**S**

*AT THE AFOREMENTIONED DATE AND PLACE THE DEFENDANT DID IN FACT POSSESS A GRAVITY KNIFE IN HIS LEFT FRONT POCKET OF HIS JEANS, AS WELL AS A BILLY CLUB UNDER THE FRONT PASSENGER SEAT OF HIS VEHICLE. ALL CONTRARY TO THE PROVISIONS OF THE STATUTE IN SUCH CASE MADE AND PROVIDED.*

The above allegations of fact are made by the Complainant herein on direct knowledge and/or upon information and belief, with the sources of Complainant's information and the grounds for belief being the facts contained in the attached SUPPORTING DEPOSITION(s) of:

WHEREFORE, Complainant prays that a Warrant be issued for the arrest of the said Defendant(s).

--OR--

WHEREAS, an Appearance Ticket was issued to the said Defendant, directing him to appear before this court at *04:30 PM* on *DECEMBER 28, 2006*

**N**
**O**
**T**
**I**
**C**
**E**

In a written instrument, any person who knowingly makes a false statement which such person does not believe to be true has committed a crime under the laws of the State of New York punishable as a Class A Misdemeanor. **(PL 210.45)**

Affirmed under penalty of perjury

this _4_ th day of _DECEMBER_ _2006_

_Anthony D'Elia_ (signature)

--OR--

COMPLAINANT -

Subscribes and sworn to before me this _____ day of

_____, 20 _____

# APPEARANCE TICKET*

Issued To: **ERIC K MERRING**                                      **12/03/1969**
           NAME OF DEFENDANT                                        DATE OF BIRTH

**343 BOB HOLLOWAY RD**        **DELANCEY**          **NY**          **13752**
STREET AND NUMBER             CITY OR TOWN           STATE           ZIP CODE

---

You are hereby directed to appear in the court described below on

**12/28/2006**   at   **04:30 PM**                            in connection with your alleged

commission of the offense of   **CRIM POSS WEAP - 4TH DEG**                    contrary to the

provisions of section   **265.01**   of the   **PENAL**                        law.

Name of court   **TUXEDO TOWN COURT**

Location of court   **1 TEMPLE DRIVE BOX 605**    **TUXEDO**      **NY**      **10987**

---

* NOTE - If you fail to appear on the date and at the time indicated, the court may issue a summons or warrant for your arrest (Criminal Procedure Law Section 150.60).

If you have posted bail, the bail will become forfeit upon your failure to comply with the directions of this ticket (Criminal Procedure Law Section 150.30).

Issued and subscribed by:

*[signature]*                          **0024**
SIGNATURE OF MEMBER                    SHIELD

TZS / DIVISION/PRECINCT

**12/04/2006**
DATE ISSUED

New York State - Department of Motor Vehicles
UNIFORM TRAFFIC TICKET

**MDT200533K**

To be completed by Police Officer
and given to Motorist

| POLICE AGENCY |
|---|
| TOWN OF TUXEDO POLICE |
| Local Police Code 03565 |

| Last Name(Defendant) | First Name | M.I. |
|---|---|---|
| MERRING | ERIC | K |

| Number and Street | Apt. No. | Photo Lic Shown |
|---|---|---|
| 343 BOB HOLLOWAY RD | | ● |

| City | State | Zip Code | Owner Oper. | Lic. Class |
|---|---|---|---|---|
| DELANCEY | NY | 13752 | ● | D |

| Client ID Number | | Sex | Date Expires |
|---|---|---|---|
| 703839998 | | M | 12/03/2011 |

| Lic. State | Date of Birth | Veh. Type | Year | Make | Color |
|---|---|---|---|---|---|
| NY | 12/03/1969 | 1 | 1987 | CADI | MR |

| Plate Number | Reg. State | Registration Expires |
|---|---|---|
| CSE5066 | NY | 01/19/2008 |

**THE PERSON DESCRIBED ABOVE IS CHARGED AS FOLLOWS**

| Time | Date of Offense | IN VIOLATION OF |
|---|---|---|
| 9:03 AM | 12/04/2006 | NYS V AND T LAW |

| Section Sub Section | Traf Inf | Misd | MPH | MPH Zone |
|---|---|---|---|---|
| 1180B | ● | ○ | 72 | 55 |

| Description of Violation | US DOT# |
|---|---|
| SPEED OVER 55 ZONE | |

| | Com Veh | Bus | Haz Mat |
|---|---|---|---|
| | ○ | ○ | ○ |

| Place of Occurrence | Hwy No | Loc Code |
|---|---|---|
| RT 17 S/B | 17 | 3665 |

| C/T/V Name | County | Hwy Type | NCIC/ORI |
|---|---|---|---|
| TUXEDO, TOWN OF - 3665 | ORANGE | 2 | 03565 |

| AFFIRMED UNDER PENALTY OF PERJURY | Date Affirmed | Off Assign |
|---|---|---|
| *Andrey Delia* | 12/04/2006 | 1 |

| (Officer's Signature) | Arrest Type |
|---|---|
| | 1 - PATROL |

| | Badge/Shield |
|---|---|
| | 0024 |

| Officer's Last Name | First Name | M.I. |
|---|---|---|
| DELIA | A | |

Radar Officer's Signature

*THIS MATTER IS SCHEDULED TO BE HANDLED ON THE APPEARANCE DATE BELOW*

| TUXEDO TOWN COURT |
|---|
| Address |
| 1 TEMPLE DRIVE BOX 605 |

| City | State | Zip |
|---|---|---|
| TUXEDO | NY | 10987 |

| ● RETURN BY MAIL BEFORE OR IN PERSON ON: | Date | Time |
|---|---|---|
| ○ MUST APPEAR IN PERSON | 01/11/2007 | 4:30 PM |

**A PLEA OF GUILTY TO THIS CHARGE IS EQUIVALENT TO A CONVICTION AFTER TRIAL. IF YOU ARE CONVICTED, NOT ONLY WILL YOU BE LIABLE TO A PENALTY, BUT IN ADDITION YOUR LICENSE TO DRIVE A MOTOR VEHICLE OR MOTORCYCLE, AND YOUR CERTIFICATE OF REGISTRATION, IF ANY, ARE SUBJECT TO SUSPENSION AND REVOCATION AS PRESCRIBED BY LAW.**

Upon conviction you may be subject to a mandatory surcharge in the amount prescribed by law.

Your failure to respond may result in a warrant for your arrest or suspension of your driver's license and/or a default judgement against you.

---

**TO PLEAD BY MAIL (NOT TO BE USED FOR MISDEMEANORS)**

- If you are pleading "GUILTY" by mail, place an "X" through SECTION B, then complete and sign SECTION A.

- If you are pleading "NOT GUILTY" by mail, place an "X" through SECTION A, then complete and sign SECTION B.

- Mail this form to the Court noted on this ticket by Registered, Certified, or First Class Mail, with Return Receipt Requested.

- DO NOT use this form for Misdemeanors or for a third or subsequent speeding violation in an 18 month period, instead you must appear in the Court noted on this ticket in person.

- If the Court denies your plea, you will be notified by mail to appear in the Court noted on the front of this ticket.

**SECTION A - PLEA OF GUILTY**

To the Court listed on the other side of this ticket:

I, _____

residing at _____

have been charged with the violation as specified on the other side of this ticket. I acknowledge receipt of the warning printed in bold type on the other side of this ticket, and I waive arraignment in open court and the aid of an Attorney. I plead GUILTY to the offense as charged and request that this charge be disposed of and a fine or penalty fixed by the court.

Additionally, I make the following statement of explanation (optional):

_____

_____

All statements are made under penalty of perjury.

Date: _____   Signed: _____

**SECTION B - PLEA OF NOT GUILTY**

The following notice applies to you if the officer did not issue you a supporting deposition with your ticket.

NOTICE: YOU ARE ENTITLED TO RECEIVE A SUPPORTING DEPOSITION FURTHER EXPLAINING THE CHARGES PROVIDED YOU REQUEST SUCH SUPPORTING DEPOSITION WITHIN THIRTY (30) DAYS FROM THE DATE YOU ARE DIRECTED TO RESPOND TO THE COURT NOTED ON THE OTHER SIDE OF THIS APPEARANCE TICKET. DO YOU REQUEST A SUPPORTING DEPOSITION?

Yes ○   No ○

SUPPORTING DEPOSITION PROVIDED WHEN THIS TICKET WAS ISSUED?   NO ○

SPEEDING (Gen 101) ○
GENERAL (Gen 101A) ○

Signature _____

Address _____

_____

City _____ State _____ Zip Code _____

NOTE: Mail this NOT GUILTY Plea within 48 hours. The court will notify you by First Class Mail of your trial date.

**APPLICANTS UNDER 18 YEARS OF AGE MUST SUBMIT NAME AND ADDRESS OF PARENT OR GUARDIAN BELOW.**

Name of Parent or Guardian _____

Address _____

City _____ State _____ Zip Code _____

FAILURE TO ANSWER THIS TICKET WILL RESULT IN THE SUSPENSION OF YOUR LICENSE AND A DEFAULT JUDGEMENT AGAINST YOU.



# TUXEDO AUTO BODY, INC.
### COMPLETE COLLISION REPAIR
Route 17   P.O. Box 155
SOUTHFIELDS, NEW YORK 10975
**(914) 351-5261**

| DATE 12/4/06 | TIME | A.M. P.M. | REQUESTED BY |

LOCATION OF VEHICLE

NAME *MARRIN*     PHONE

ESS     ZIP

| MILEAGE | SERVICE TIME | EXTRA PERSON |
|---|---|---|
| NISH _____ | FINISH _____ | FINISH _____ |
| TART _____ | START _____ | START _____ |
| OTAL _____ | TOTAL _____ | TOTAL _____ |

| YEAR 87 | MAKE / MODEL / COLOR  CAD Wht | DRIVER |
| STATE | LIC. NO. | VEHICLE I.D. NO. |

- [ ] SLING/HOIST TOW
- [ ] WHEEL LIFT
- [ ] FLAT BED/RAMP
- [ ] START
- [ ] LOCK OUT

- [ ] FLAT TIRE
- [ ] OUT OF GAS
- [ ] WRECK
- [ ] RECOVERY
- [ ]

**SPECIAL EQUIPMENT**
- [ ] SINGLE LINE WINCHING
- [ ] DUAL LINE WINCHING
- [ ] SNATCH BLOCKS
- [ ] SCOTCH BLOCKS
- [ ] DOLLY
- [ ]

VEHICLE TOWED TO

**REMARKS**

| | |
|---|---|
| MILEAGE CHARGE | |
| TOWING CHARGE | 100 00 |
| LABOR CHARGE | |
| STORAGE CHARGE | |
| TX | 8 13 |
| **TOTAL** | 108 13 |

OPERATOR'S SIGNATURE

AUTHORIZED SIGNATURE

# Road Service

1862     NEBS  To Reorder Call 1-800-225-6380     PRODUCT 613     F

2007 JAN 16 PM 1:41

DELAWARE COUNTY CLERK

At a Special Term of the County Court
of the State of New York held in and
for the County of Delaware at Delhi,
NY, on January *16*, 2007.

PRESENT:  Hon. Carl F. Becker

~~In the Matter of the License to Carry~~
or Possess Pistols and Revolvers of

ERIC K. MERRING

ORDER SUSPENDING LICENSE

INDEX NO. 2007 · 065

A License pursuant to Section 400.00 of the Penal Law having heretofore been issued by the Court on April 12, 1988, bearing No. 9413, and it appearing that there is good cause to suspend such License because Eric K. Merring was arrested on December 4, 2006, and arraigned in the Town Court of the Town of Tuxedo, New York, on the charge of Criminal Possession of a Weapon in the 4th Degree, in violation of Section 265.01(01) of the Penal Law of the State of New York;

NOW, THEREFORE, it is

ORDERED, that the License of Eric K. Merring to possess or carry a pistol or revolver is hereby SUSPENDED, effective immediately, pending disposition of the above charge and further Order of this Court; and it is further

ORDERED, that the said Eric K. Merring is hereby DIRECTED to deliver into the possession of the Delaware County Sheriff, or the New York State Police, immediately upon request of a Police Officer, or if no such request is made, then at or before 5:00 o'clock P.M. on the third day following the date of delivery to him of a copy of this Order, the following:

01/31/2007

1. His License to carry or possess a pistol or revolver; and

2. Any and all pistols or revolvers which are currently in the possession or control of the said Eric K. Merring and which are not antique firearms as defined in the Penal Law of the State of New York.

ENTER

*Carl F. Becker, JCC*

DATED: Delhi, New York
January _16_, 2007

| | | |
|---|---|---|
| Kimber | 45 ACP | Serial No. K062146 |
| H&R | 22/22MA | Serial No. AY049407 |
| S&W | 9mm | Serial No. TDH9044 |
| Ruger | 22/22MA | Serial No. 261-80682 |
| Ruger | 357 MAG | Serial No. 172-69114 |
| Ruger | 44 | Serial No. 500-88105 |
| S&W | 45 ACP | Serial No. VBS7971 |
| Davis | 38 SPL | Serial No. D112514 |
| Beretta | 22LR | Serial No. BES21780U |
| Ruger | 22 | Serial No. 263-36434 |
| Walther | 380 | Serial No. S037498 |
| Colt | 357 MAG | Serial No. T69718 |
| S&W | 357 MAG | Serial No. 143K800 |
| S&W | 44 MAG | Serial No. N311202 |
| Interarms | 22LR | Serial No. HOO1515 |
| Colt | 357 MAG | Serial No. K40292 |
| Ruger | 357 MAG | Serial No. 173-64507 |

01/31/2007

# CERTIFICATE OF DISPOSITION

STATE OF NEW YORK
ORANGE COUNTY

TUXEDO TOWN COURT
CRIMINAL PART

PEOPLE OF THE STATE OF NEW YORK
        VS.

ERIC K. MERRING;  Defendant

CASE NO: 06120065

Date of Birth:   12/03/1969
Date of Arrest:  12/04/2006
Disposition Date: 01/26/2007

JC501 no: 31980927L
NYSID no: 6057113Q

| Section Charged | Section Disposed | Ticket No & Description | Disposition | Fine | Civil-Fee | Surchg |
|---|---|---|---|---|---|---|
| PL 265.01 | PL 265.01 | APPEARANCE CRIM POS WEAP-4 | Dismissed | 0.00 | 0.00 | 0.00 |
| VTL 1180 0B | VTL 1201 0A | MDT200533K STOP/PARK VIOL | FINE | 100.00 | 0.00 | 0.00 |

Upon a proper request for an official statement of disposition,
I certify that the above named defendant having appeared before
this court was charged as shown above.  Each of the charges was
disposed of as indicated.


Dated: The 5th day of February 2007


COURT CLERK

NOTE: A copy of the request will be filed with this certificate
in the case records.

CAUTION: This information must not be divulged if the case is
sealed or where the defendant has been adjudicated a youthful
offender.


Copies: ____ Court, ____ Defendant, ____ Agency, ____ DA

UNITED STATES DISTRICT COURT                          Rev. May 2007
SOUTHERN DISTRICT OF NEW YORK
--------------------------------X
ERIC K. MERRING,

                    Plaintiff(s),     **ORDER FOR COURT CONFERENCE**

          -against-                   07 Cv. 10381(CLB)(LMS)

THE TOWN OF TUXEDO, NEW YORK,
et al.,

          Defendant(s).
--------------------------------X

To:  The Attorney(s) for Plaintiff(s)


     Sufficient cause appearing, counsel for all parties herein
shall attend a conference at the time and place fixed below, for
the purpose of Case Management and scheduling pursuant to Rule
16, F.R. Civ. P.


## <u>YOU</u> ARE DIRECTED TO NOTIFY ALL ATTORNEYS IN THIS ACTION IN WRITING.

<u>DATE AND PLACE OF CONFERENCE</u>:

**FRIDAY, JANUARY 18, 2008,** AT THE UNITED STATES COURTHOUSE,
WHITE PLAINS, NEW YORK, IN COURTROOM 218 AT **9:00 A.M.**


<u>SUBJECTS FOR CONSIDERATION AT THE CONFERENCE</u>:

1.   The Court will request from each attorney, beginning with
Plaintiff's counsel, a brief oral statement reporting the status
of the case, setting forth the factual and legal basis for the
claims or defenses and outlining the nature of the dispute(s) to
be adjudicated.  Subject matter jurisdiction will be considered,
as well as any other issue which may be relevant to case
management.

2.   The Court will inquire whether the defense of qualified
immunity from suit has been or will be asserted by any
defendant(s) with respect to any claims(s)in the case.

3.    In cases where Rule 26(f) F.R.Civ.P. applies, counsel for the parties shall confer in compliance therewith at least twenty-one (21) days prior to the scheduled conference to agree upon a proposed discovery plan which shall assure trial readiness within six (6) months of the date of the conference.  If so advised, a written report generated pursuant to Rule 26(f) may be attached to and incorporated in the Court's Civil Case Discovery Plan and Scheduling Order.  A longer period than six months to become ready for trial will be granted by the Court only after hearing counsel, and where the interests of Justice require.  Please fill out the Court's form of Civil Case Discovery Plan and Scheduling Order by agreement of counsel and bring it with you to the Courthouse.  Use of the official form is preferred.  In the absence of an agreement, the Court will impose its own Civil Case Discovery Plan and Scheduling Order at the conference after hearing counsel.

4.    Where there is written consent to trial before the Magistrate Judge, trial will be held on an agreed date certain, and the Magistrate Judge will prepare or amend the Civil Case Discovery Plan and Scheduling Order consistently with such date.


SO ORDERED.

Dated:      White Plains, New York
            November 21, 2007


                        _____Charles L. Brieant_____
                        Charles L. Brieant, U.S.D.J.

UNITED STATES DISTRICT COURT                          Rev. January 2006
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
ERIC K. MERRING,

                                    Plaintiff(s),        CIVIL CASE DISCOVERY PLAN
                                                         AND SCHEDULING ORDER
            - against -
                                                         07 Civ. 10381 (CLB) (LMS)
THE TOWN OF TUXEDO, NEW YORK, et al.,

                                    Defendant(s).
-------------------------------------------------------------x

**This Court requires that this case shall be <u>ready for trial</u> on or after July 18, 2008.**


        The following Civil Case Discovery Plan and Scheduling Order is adopted, after consultation
with counsel for the parties, pursuant to Rules 26(f) and 16 of the Federal Rules of Civil Procedure.

The case (is) (is not) to be tried to a jury.

Joinder of additional parties must be accomplished by _____.

Amended pleadings may be filed until _____.

**Discovery:**

1.  Interrogatories are to be served by all counsel no later than _____, and
responses to such interrogatories shall be served within thirty (30) days thereafter.  The provisions of
Local Civil Rule 33.3 (shall) (shall not) apply to this case.

2.  First request for production of documents, if any, to be served no later than_____.

3.  Depositions to be completed by _____.

        a.      Unless counsel agree otherwise or the Court so orders, depositions are not to be held
                until all parties have responded to any first requests for production of documents.
        b.      Depositions shall proceed concurrently.
        c.      Whenever possible, unless counsel agree otherwise or the Court so orders, non-party
                depositions shall follow party depositions.
        d.      If the defense of qualified immunity from suit as a matter of law has been or will
                be asserted by any defendant(s) with respect to any claim(s) in the case, counsel
                for any such defendant(s) shall, within thirty (30) days of this order depose
                plaintiff(s) at least concerning all facts relevant to the issue of qualified immunity.
                Within thirty (30) days thereafter defendant(s) shall serve consistent with Local
                Rule 6.1 and file a motion under Rule 12(c) or Rule 56, returnable on a date posted in
                the New York Law Journal by Judge Brieant for hearing motions.  The motion shall,

in the absence of agreement of counsel, be limited to the issue of qualified immunity, and plaintiff(s) version of the events shall be assumed true for purposes of the motion. **Failure to comply with this provision of this Order shall operate as a waiver of the opportunity to resolve the issue of qualified immunity by motion prior to trial.**

4.    Any further interrogatories, including expert interrogatories, to be served no later than
_____.

5.    Requests to Admit, if any to be served no later than _____.

6.    Additional provisions relating to discovery agreed upon by counsel for the parties (are) (are not) attached and made a part hereof.

7.    All discovery is to be complete by _____.

Dispositive motions, if any, must be served on notice as required by Local Civil Rule 6.1, and must be returnable before the Court on a published motion day, no later than three weeks before the ready for trial date.

Next Case Management Conference _____.
(This date will be set by the Court at the first conference)

Joint Pretrial Order is required only if counsel for all parties agree that it is desirable, or the Court so orders.

This case has been designated to the Hon. Lisa Margaret Smith, United States Magistrate Judge at White Plains for discovery disputes if the Court is "unavailable" and for trial under 28 U.S.C. § 636(c) if counsel execute their consent in writing.

Strict compliance with the trial readiness date will be required. This Plan and Order may not be changed without leave of the Court or the assigned Magistrate Judge acting under a specific reference order.

Upon signing a Consent for Trial Before a United States Magistrate Judge, the Magistrate Judge will establish an agreed date certain for trial and will amend this Plan and Order to provide for trial readiness consistent with that agreed date.

SO ORDERED.

Dated:  White Plains, New York

_____
Charles L. Brieant, U.S.D.J.

LEE DAVID KLEIN, ESQ
ATTORNEY AT LAW
11 MARKET STREET, SUITE 204
POUGHKEEPSIE, NEW YORK 12601

TEL: (845) 454-9200
FAX: (845) 454-6612
EMAIL: LKLEIN@LKLEIN-LAW.COM

MEMBER NY AND CT BAR

THIS FIRM DOES NOT ACCEPT
SERVICE BY FACSIMILE TRANSMISSION

RECEIVED
DEC 0 7 2007
BY: 053-143 PES

SUSAN SAMMUT, LEGAL ASSISTANT

November 20, 2007

John J. Walsh, Esq.
Hodges, Walsh & Slater, LLP
11 Martine Avenue
White Plains, NY 10606

Re:    **Eric K. Merring v. the Town of Tuxedo, New York, the Town of Tuxedo
Police Department, Town of Tuxedo Police Officer Anthony Delia,
Shield Number 24, Town of Tuxedo Police Sergeant Patrick Welsh,
Shield Number 17**
**United States District Court, Southern District of New York**
**Index Number: 07CV10381**

Dear Mr. Walsh:

Please advise if you will accept service on behalf of all defendants of the enclosed
COMPLAINT, in connection with the above-referenced matter, and execute the enclosed WAIVER
OF SERVICE OF SUMMONS on behalf of all defendants.

Please advise.

Thank you for your continued courtesies.

Yours truly,

Lee David Klein

LDK:ss
Enclosures
cc:    Client (w/ enclosures)

April 7, 2004

## INDIVIDUAL PRACTICES
### OF
### JUDGE CHARLES L. BRIEANT

Unless otherwise ordered by Judge Brieant, matters on his calendar shall be conducted in accordance with the following practices:

1.  **Communications with Chambers**

    A.    **Letters**.  Copies of letters to chambers shall be delivered simultaneously to all counsel.  Copies of correspondence between counsel need not be sent to the Court **unless doing so will advance the resolution of the litigation.**

    B.    **Telephone calls**.    Telephone calls to chambers are permitted **for any legitimate purpose.  The Judge does not ordinarily make telephone rulings**.  Telephone number is (914) 390-4077.  **Call between 8:30 a.m. and 4:30 p.m.**

    C.    **Faxes**.    Faxes to chambers are permitted only if copies are also simultaneously faxed or delivered to all counsel.  **Usage of the mails is preferred**.  No document longer than ten pages may be faxed without prior authorization.  **Documents other than letters should be followed with hard copy containing proof of service.**  The fax number is (914) 390-4085.

    D.    **Docketing, Scheduling and Calendar Matters**.  For docketing, scheduling and calendar matters, call Mrs. Alice Cama at (914) 390-4077 between 8:30a.m. and 4:30 p.m.

    E.    **Requests for Adjournments or Extensions of Time.  Such requests are not favored .  The Court should be informed of the reasons and whether or not the adversary consents.**

2.  **Motions**

    A.    **Pre-Motion Conferences in Civil Cases.**    For discovery motions follow Local Civil Rule 37.2.  For motions other than discovery motions, pre-motion conferences are not required.

    B.    **Courtesy Copies of Motion papers in ECF cases should be submitted.**

    C.    **Memoranda of Law.**    Memoranda of law in support of and in opposition to motions should be limited to 25 pages, and reply memoranda should be limited to 10 pages.  Memoranda of 10 pages or more shall contain a table of contents.

     **D.**    <u>Motion papers shall be filed consistently with Rule 5(d) F.R.Civ.P., together with proof of service.</u>

     **E.**    <u>Oral Argument on Motions.</u>  Oral argument will be held on all motions except motions for reargument, unless excused. **Motions should be made returnable either on a date agreed to with the Court, or an available motion date listed in the *New York Law Journal*.**

**3.**    <u>Pretrial Procedures</u>

     **A.**    <u>Pretrial orders</u> **are not required unless specifically directed by the court in a particular case.**

     **B.**    <u>Filings Prior to Trial in Civil Cases.</u>   Unless otherwise ordered by the Court, each party shall file, as soon as conveniently possible before the **trial readiness date as set in the Case Management Plan:**

           i.    In jury cases, requests to charge and proposed voir dire questions. When feasible, proposed jury charges should also be submitted on a 3.5" diskette in WordPerfect version 5.1 or higher format;

           ii    Witness List and Exhibit List;

           iii    *Reserved*

           iv    In any case where such party believes it would be useful, a pretrial memorandum.

**4.**    <u>Post Trial Procedures</u>

     **A.**    <u>Accuracy of Transcripts.</u>  Counsel are responsible to raise promptly any issue concerning accuracy of transcripts certified by the official Court Reporter to be used for purposes of appeal.  Judge Brieant does not proof read transcripts of jury charges.  Counsel perceiving errata that is material shall stipulate to appropriate corrections, or proceed by motion on notice before the Court.  Non-material defects in syntax, grammar, spelling or punctuation should be ignored.

## WAIVER OF SERVICE OF SUMMONS

TO:   Lee David Klein, Esq.
      Attorney for Plaintiff
      11 Market Street, Suite 204
      Poughkeepsie, NY 12601

     I acknowledge receipt of your request that I waive service of a summons in the action of **Eric K. Merring v. the Town of Tuxedo, New York, the Town of Tuxedo Police Department, Town of Tuxedo Police Officer Anthony Delia, Shield Number 24, Town of Tuxedo Police Sergeant Patrick Welsh, Shield Number 17**, which is case number **07 CV. 10381** in the United States District Court for the Southern District of New York. I have also received a copy of the complaint in the action, two copies of this instrument, **, along with a copy of the Hon. Charles L. Brieant's Individual Rules,** and a means by which I can return the signed waiver to you without cost to me.

     I agree to save the cost of service of a summons and an additional copy of the complaint in this lawsuit by not requiring that I (or the entity on whose behalf I am acting) be served with judicial process in the manner provided by Rule 4.

     I (or the entity on whose behalf I am acting) will retain all defenses or objections to the lawsuit or to the jurisdiction or venue of the court except for objections based on a defect in the summons or in the service of the summons.

     I understand that a judgment may be entered against me (or the party on whose behalf I am acting) if an answer or motion under Rule 12 is not served upon you within 60 days after November 20, 2007, or within 90 days after that date if the request was sent outside the United States.

Date: _____, 2007          Signature : 
                                   Printed/typed name: _____
                                       {as_____}
                                       {of_____}

### Duty to Avoid Unnecessary Costs of Service of Summons

Rule 4 of the Federal Rules of Civil Procedure requires certain parties to cooperate in saving unnecessary costs of service of the summons and complaint. A defendant who, after being notified of an action and asked to waive service of a summons, fails to do so will be required to bear the cost of such service unless good cause be shown for its failure to sign and return the waiver.

It is not good cause for a failure to waive service that a party believes that the complaint is unfounded, or that the action has been brought in an improper place or in a court that lacks jurisdiction over the subject matter of the action or even its person or property. A party who waives service of the summons retains all defenses and objections (except any relating to the summons or to the service of the summons), and may later object to the jurisdiction of the court or to the place where the action has been brought.

A defendant who waives service must within the time specified on the waiver form serve on the plaintiff's attorney (or unrepresented plaintiff) a response to the complaint and must also file a signed copy of the response with the court. If the answer or motion is not served within this time, a default judgment may be taken against the defendant. By waiving service, a defendant is allowed more time to answer than if the summons has been actually served when the request for waiver of service was received.

Effective A/o 12/1/93 in compliance with
Federal Rules of Civil Procedure 4
SDNY Web 4/99

## WAIVER OF SERVICE OF SUMMONS

TO:    Lee David Klein, Esq.
       Attorney for Plaintiff
       11 Market Street, Suite 204
       Poughkeepsie, NY 12601

I acknowledge receipt of your request that I waive service of a summons in the action of **Eric K. Merring v. the Town of Tuxedo, New York, the Town of Tuxedo Police Department, Town of Tuxedo Police Officer Anthony Delia, Shield Number 24,  Town of Tuxedo Police Sergeant Patrick Welsh, Shield Number 17**, which is case number  **07 CV. 10381** in the United States District Court for the Southern District of New York.  I have also received a copy of the complaint in the action, two copies of this instrument, **, along with a copy of the Hon. Charles L. Brieant's Individual Rules,** and a means by which I can return the signed waiver to you without cost to me.

I agree to save the cost of service of a summons and an additional copy of the complaint in this lawsuit by not requiring that I (or the entity on whose behalf I am acting) be served with judicial process in the manner provided by Rule 4.

I (or the entity on whose behalf I am acting) will retain all defenses or objections to the lawsuit or to the jurisdiction or venue of the court except for objections based on a defect in the summons or in the service of the summons.

I understand that a judgment may be entered against me (or the party on whose behalf I am acting) if an answer or motion under Rule 12 is not served upon you within 60 days after November 20, 2007, or within 90 days after that date if the request was sent outside the United States.

Date: _____, 2007         Signature : _____
                                       Printed/typed name: _____
                                              {as _____}
                                              {of _____}

Duty to Avoid Unnecessary Costs of Service of Summons

Rule 4 of the Federal Rules of Civil Procedure requires certain parties to cooperate in saving unnecessary costs of service of the summons and complaint. A defendant who, after being notified of an action and asked to waive service of a summons, fails to do so will be required to bear the cost of such service unless good cause be shown for its failure to sign and return the waiver.

It is not good cause for a failure to waive service that a party believes that the complaint is unfounded, or that the action  has been brought in an improper place or in a court that lacks jurisdiction over the subject matter of the action or even its person or property. A party who waives service of the summons retains all defenses and objections (except any relating to the summons or to the service of the summons), and may later object to the jurisdiction of the court or to the place where the action has been brought.

A defendant who waives service must within the time specified on the waiver form serve on the plaintiff's attorney (or  unrepresented plaintiff) a response to the complaint and must also file a signed copy of the response with the court.  If the answer or motion is not served within this time, a default judgment may be taken against the defendant. By waiving service, a defendant is allowed more time to answer than if the summons has been actually served when the request for waiver of service was received.

Effective A/o 12/1/93 in compliance with
Federal Rules of Civil Procedure 4
SDNY Web 4/99

## WAIVER OF SERVICE OF SUMMONS

TO:  Lee David Klein, Esq.
     Attorney for Plaintiff
     11 Market Street, Suite 204
     Poughkeepsie, NY 12601

     I acknowledge receipt of your request that I waive service of a summons in the action of **Eric K. Merring v. the Town of Tuxedo, New York, the Town of Tuxedo Police Department, Town of Tuxedo Police Officer Anthony Delia, Shield Number 24, Town of Tuxedo Police Sergeant Patrick Welsh, Shield Number 17**, which is case number **07 CV. 10381** in the United States District Court for the Southern District of New York. I have also received a copy of the complaint in the action, two copies of this instrument, **, along with a copy of the Hon. Charles L. Brieant's Individual Rules,** and a means by which I can return the signed waiver to you without cost to me.

     I agree to save the cost of service of a summons and an additional copy of the complaint in this lawsuit by not requiring that I (or the entity on whose behalf I am acting) be served with judicial process in the manner provided by Rule 4.

     I (or the entity on whose behalf I am acting) will retain all defenses or objections to the lawsuit or to the jurisdiction or venue of the court except for objections based on a defect in the summons or in the service of the summons.

     I understand that a judgment may be entered against me (or the party on whose behalf I am acting) if an answer or motion under Rule 12 is not served upon you within 60 days after November 20, 2007, or within 90 days after that date if the request was sent outside the United States.

Date: _____, 2007     Signature : 
                                 Printed/typed name: _____
                                           {as_____}
                                           {of_____}

### Duty to Avoid Unnecessary Costs of Service of Summons

Rule 4 of the Federal Rules of Civil Procedure requires certain parties to cooperate in saving unnecessary costs of service of the summons and complaint. A defendant who, after being notified of an action and asked to waive service of a summons, fails to do so will be required to bear the cost of such service unless good cause be shown for its failure to sign and return the waiver.

It is not good cause for a failure to waive service that a party believes that the complaint is unfounded, or that the action has been brought in an improper place or in a court that lacks jurisdiction over the subject matter of the action or even its person or property. A party who waives service of the summons retains all defenses and objections (except any relating to the summons or to the service of the summons), and may later object to the jurisdiction of the court or to the place where the action has been brought.

A defendant who waives service must within the time specified on the waiver form serve on the plaintiff's attorney (or  unrepresented plaintiff) a response to the complaint and must also file a signed copy of the response with the court.  If the answer or motion is not served within this time, a default judgment may be taken against the defendant. By waiving service, a defendant is allowed more time to answer than if the summons has been actually served when the request for waiver of service was received.

Effective A/o 12/1/93 in compliance with
Federal Rules of Civil Procedure 4
SDNY Web 4/99

## WAIVER OF SERVICE OF SUMMONS

TO:    Lee David Klein, Esq.
       Attorney for Plaintiff
       11 Market Street, Suite 204
       Poughkeepsie, NY 12601

I acknowledge receipt of your request that I waive service of a summons in the action of **Eric K. Merring v. the Town of Tuxedo, New York, the Town of Tuxedo Police Department, Town of Tuxedo Police Officer Anthony Delia, Shield Number 24,  Town of Tuxedo Police Sergeant Patrick Welsh, Shield Number 17**, which is case number  **07 CV. 10381**  in the United States District Court for the Southern District of New York.  I have also received a copy of the complaint in the action, two copies of this instrument,  **, along with a copy of the Hon. Charles L. Brieant's Individual Rules,** and a means by which I can return the signed waiver to you without cost to me.

I agree to save the cost of service of a summons and an additional copy of the complaint in this lawsuit by not requiring that I (or the entity on whose behalf I am acting) be served with judicial process in the manner provided by Rule 4.

I (or the entity on whose behalf I am acting) will retain all defenses or objections to the lawsuit or to the jurisdiction or venue of the court except for objections based on a defect in the summons or in the service of the summons.

I understand that a judgment may be entered against me (or the party on whose behalf I am acting) if an answer or motion under Rule 12 is not served upon you within 60 days after November 20, 2007, or within 90 days after that date if the request was sent outside the United States.

Date: _____, 2007          Signature : _____
                                        Printed/typed name: _____
                                                   {as_____}
                                                   {of_____}

Duty to Avoid Unnecessary Costs of Service of Summons

Rule 4 of the Federal Rules of Civil Procedure requires certain parties to cooperate in saving unnecessary costs of the service of the summons and complaint. A defendant who, after being notified of an action and asked to waive service of a summons, fails to do so will be required to bear the cost of such service unless good cause be shown for its failure to sign and return the waiver.

It is not good cause for a failure to waive service that a party believes that the complaint is unfounded, or that the action  has been brought in an improper place or in a court that lacks jurisdiction over the subject matter of the action or even its person or property. A party who waives service of the summons retains all defenses and objections (except any relating to the summons or to the service of the summons), and may later object to the jurisdiction of the court or to the place where the action has been brought.

A defendant who waives service must within the time specified on the waiver form serve on the plaintiff's attorney (or  unrepresented plaintiff) a response to the complaint and must also file a signed copy of the response with the court.   If the answer or motion is not served within this time, a default judgment may be taken against the defendant. By waiving service, a defendant is allowed more time to answer than if the summons has been actually served when the
request for waiver of service was received.

Effective A/o 12/1/93 in compliance with
Federal Rules of Civil Procedure 4
SDNY Web 4/99

**Notice of Lawsuit and Request for Waiver of Service of Summons**

TO:    The Town of Tuxedo Police Department
       c/o Hodges, Walsh & Slater, LLP
       11 Martine Avenue
       White Plains, NY 10606


A lawsuit has been commenced against you (or the entity on whose behalf you are addressed). A copy of the complaint is attached to this notice. It has been filed in the United States District Court for the Southern District of New York and has been assigned docket number **06 CIV. 7751, along with a copy of the Hon. Charles L. Brieant's Individual Rules.**

This is not a formal summons or notification from the court, but rather my request that you sign and return the enclosed waiver of service in order to save the costs of serving you with a judicial summons and an additional copy of the complaint. The cost of service will be avoided if I receive a signed copy of the waiver within thirty (30) days after the date designated below as the date on which this Notice and Request is sent. I enclose a stamped and addressed envelope (or other means of cost-free return) for your use. An extra copy of the waiver is also attached for your records.

If you comply with this request and return the signed waiver, it will be filed with the court and no summons will be served on you. The action will then proceed as if you had been served on the date the waiver is filed, except that you will not be obligated to answer the complaint before 60 days from the date designated below as the date on which this notice is sent (or before 90 days from that date if your address is not in any judicial district of the United States).

If you do not return the signed waiver within the time indicated, I will take appropriate steps to effect formal service in a manner authorized by the Federal Rules of Civil Procedure and will then, as authorized by those Rules, ask the court to require you (or the party on whose behalf you are addressed) to pay the full costs of such service. In that connection, please read the statement concerning the duty of parties to waive the service of the summons, which is set forth at the foot of the waiver form.

I affirm that this request is being sent to you on behalf of the plaintiff, this 20th day of November, 2006.

Lee David Klein, Esq.
Attorney for Plaintiff
11 Market Street, Suite 204
Poughkeepsie, NY 12601
845-454-9200

Effective A/O 12/1/93 in compliance with
Federal Rules of Civil Procedure 4
SDNY Web 4/99

**Notice of Lawsuit and Request for Waiver of Service of Summons**

TO:    The Town of Tuxedo
       c/o Hodges, Walsh & Slater, LLP
       11 Martine Avenue
       White Plains, NY 10606

     A lawsuit has been commenced against you (or the entity on whose behalf you are addressed). A copy of the complaint is attached to this notice. It has been filed in the United States District Court for the Southern District of New York and has been assigned docket number **06 CIV. 7751, along with a copy of the Hon. Charles L. Brieant's Individual Rules.**

     This is not a formal summons or notification from the court, but rather my request that you sign and return the enclosed waiver of service in order to save the costs of serving you with a judicial summons and an additional copy of the complaint. The cost of service will be avoided if I receive a signed copy of the waiver within thirty (30) days after the date designated below as the date on which this Notice and Request is sent. I enclose a stamped and addressed envelope (or other means of cost-free return) for your use. An extra copy of the waiver is also attached for your records.

     If you comply with this request and return the signed waiver, it will be filed with the court and no summons will be served on you. The action will then proceed as if you had been served on the date the waiver is filed, except that you will not be obligated to answer the complaint before 60 days from the date designated below as the date on which this notice is sent (or before 90 days from that date if your address is not in any judicial district of the United States).

     If you do not return the signed waiver within the time indicated, I will take appropriate steps to effect formal service in a manner authorized by the Federal Rules of Civil Procedure and will then, as authorized by those Rules, ask the court to require you (or the party on whose behalf you are addressed) to pay the full costs of such service. In that connection, please read the statement concerning the duty of parties to waive the service of the summons, which is set forth at the foot of the waiver form.

     I affirm that this request is being sent to you on behalf of the plaintiff, this 20th day of November, 2006.

                             Lee David Klein, Esq.
                             Attorney for Plaintiff
                             11 Market Street, Suite 204
                             Poughkeepsie, NY 12601
                             845-454-9200

Effective A/O 12/1/93 in compliance with
Federal Rules of Civil Procedure 4
SDNY Web 4/99

## Notice of Lawsuit and Request for Waiver of Service of Summons

TO:     Police Officer Anthony Delia, Shield Number 24
        The Town of Tuxedo Police Department
        c/o Hodges, Walsh & Slater, LLP
        11 Martine Avenue
        White Plains, NY 10606


A lawsuit has been commenced against you (or the entity on whose behalf you are addressed). A copy of the complaint is attached to this notice. It has been filed in the United States District Court for the Southern District of New York and has been assigned docket number **06 CIV. 7751, along with a copy of the Hon. Charles L. Brieant's Individual Rules.**

This is not a formal summons or notification from the court, but rather my request that you sign and return the enclosed waiver of service in order to save the costs of serving you with a judicial summons and an additional copy of the complaint. The cost of service will be avoided if I receive a signed copy of the waiver within thirty (30) days after the date designated below as the date on which this Notice and Request is sent. I enclose a stamped and addressed envelope (or other means of cost-free return) for your use. An extra copy of the waiver is also attached for your records.

If you comply with this request and return the signed waiver, it will be filed with the court and no summons will be served on you. The action will then proceed as if you had been served on the date the waiver is filed, except that you will not be obligated to answer the complaint before 60 days from the date designated below as the date on which this notice is sent (or before 90 days from that date if your address is not in any judicial district of the United States).

If you do not return the signed waiver within the time indicated, I will take appropriate steps to effect formal service in a manner authorized by the Federal Rules of Civil Procedure and will then, as authorized by those Rules, ask the court to require you (or the party on whose behalf you are addressed) to pay the full costs of such service. In that connection, please read the statement concerning the duty of parties to waive the service of the summons, which is set forth at the foot of the waiver form.

I affirm that this request is being sent to you on behalf of the plaintiff, this 20ᵗʰ day of November, 2006.

                                        Lee David Klein, Esq.
                                        Attorney for Plaintiff
                                        11 Market Street, Suite 204
                                        Poughkeepsie, NY 12601
                                        845-454-9200

Effective A/O 12/1/93 in compliance with
Federal Rules of Civil Procedure 4
SDNY Web 4/99

## Notice of Lawsuit and Request for Waiver of Service of Summons

TO: Police Sergeant Patrick Welsh, Shield Number 17
   The Town of Tuxedo Police Department
   c/o Hodges, Walsh & Slater, LLP
   11 Martine Avenue
   White Plains, NY 10606

A lawsuit has been commenced against you (or the entity on whose behalf you are addressed). A copy of the complaint is attached to this notice. It has been filed in the United States District Court for the Southern District of New York and has been assigned docket number **06 CIV. 7751, along with a copy of the Hon. Charles L. Brieant's Individual Rules.**

This is not a formal summons or notification from the court, but rather my request that you sign and return the enclosed waiver of service in order to save the costs of serving you with a judicial summons and an additional copy of the complaint. The cost of service will be avoided if I receive a signed copy of the waiver within thirty (30) days after the date designated below as the date on which this Notice and Request is sent. I enclose a stamped and addressed envelope (or other means of cost-free return) for your use. An extra copy of the waiver is also attached for your records.

If you comply with this request and return the signed waiver, it will be filed with the court and no summons will be served on you. The action will then proceed as if you had been served on the date the waiver is filed, except that you will not be obligated to answer the complaint before 60 days from the date designated below as the date on which this notice is sent (or before 90 days from that date if your address is not in any judicial district of the United States).

If you do not return the signed waiver within the time indicated, I will take appropriate steps to effect formal service in a manner authorized by the Federal Rules of Civil Procedure and will then, as authorized by those Rules, ask the court to require you (or the party on whose behalf you are addressed) to pay the full costs of such service. In that connection, please read the statement concerning the duty of parties to waive the service of the summons, which is set forth at the foot of the waiver form.

I affirm that this request is being sent to you on behalf of the plaintiff, this 20th day of November, 2006.

          Lee David Klein, Esq.
          Attorney for Plaintiff
          11 Market Street, Suite 204
          Poughkeepsie, NY 12601
          845-454-9200

Effective A/O 12/1/93 in compliance with
Federal Rules of Civil Procedure 4
SDNY Web 4/99

AO 440 (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

| Southern | District of | New York |

ERIC K. MERRING,

V.                                        **SUMMONS IN A CIVIL ACTION**

THE TOWN OF TUXEDO, NEW YORK, THE TOWN OF TUXEDO
POLICE DEPARTMENT, TOWN OF TUXEDO POLICE OFFICER
ANTHONY DELIA, SHIELD NUMBER 24, TOWN OF TUXEDO       CASE NUMBER:
POLICE SERGEANT PATRICK WELSH, SHIELD NUMBER 17,

'07 CIV 10381
BRIEANT

TO: (Name and address of Defendant)
THE TOWN OF TUXEDO, NEW YORK, TOWN HALL, 1 TEMPLE ROAD, TUXEDO PARK, NY 10987
THE TOWN OF TUXEDO POLICE DEPARTMENT, 1075 State Route 17, Tuxedo, NY 10987
Town of Tuxedo Police Officer Anthony Delia, Shield No.: 24, Town of Tuxedo Police Department
1075 State Route 17, Tuxedo, NY 10987
Town of Tuxedo Police Sergeant Patrick Welsh, Shield No.: 17, Town of Tuxedo Police Department,
1075 State Route 17, Tuxedo, NY 10987

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

Lee David Klein, Esq.
11 Market Street, Suite 204
Poughkeepsie, NY 12601
845-454-9200

an answer to the complaint which is served on you with this summons, within ___twenty (20)___ days after service
of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you
for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the
Clerk of this Court within a reasonable period of time after service.

J. Michael McMahon

CLERK                                        NOV 1 6 2007

CLERK                                        DATE

(By) DEPUTY CLERK

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
==========================================X
ERIC K. MERRING,                                                07 CV 10381 CLB

                     Plaintiffs,                          **ANSWER**

     - against –

THE TOWN OF TUXEDO, NEW YORK, THE TOWN
OF TUXEDO POLICE DEPARTMENT, TOWN OF
TUXEDO POLICE OFFICER ANTHONY DELIA,
SHIELD NUMBER 24, TOWN OF TUXEDO POLICE
SERGEANT PATRICK WELSH, SHIELD NUMBER 17,

                   Defendants.
==========================================X

Defendants named herein as THE TOWN OF TUXEDO, NEW YORK, THE

TOWN OF TUXEDO POLICE DEPARTMENT, TOWN OF TUXEDO POLICE OFFICER

ANTHONY DELIA, SHIELD NUMBER 24, TOWN OF TUXEDO POLICE SERGEANT

PATRICK WELSH, SHIELD NUMBER 17, by its attorneys, **HODGES, WALSH &**

**SLATER, LLP,** as and for an Answer to plaintiffs' Complaint dated November 15, 2007,

allege upon information and belief as follows:

### JURISDICTION AND VENUE

     FIRST:     Denies each and every allegation contained in paragraphs "1", "3"

and "4" of the Plaintiff's Complaint.

### NATURE OF THE PROCEEDINGS

     SECOND:   Denies each and every allegation contained in paragraph "7" of the

Plaintiff's Complaint.

### PARTIES

     THIRD:     Denies each and every allegation contained in paragraph "8" of

the Plaintiff's Complaint.

FOURTH:  Denies knowledge or information sufficient to form a belief

as to the allegations contained in paragraphs "10" of the Plaintiff's Complaint and refers

all questions of law to this Court.

## DUTIES

FIFTH:        Denies each and every allegation contained in paragraphs

"15" and "17' of the Plaintiff's Complaint and refers all questions of law to this Court.

SIXTH:        Denies each and every allegation contained in paragraphs "16" and

"19" of the Plaintiff's Complaint.

## ALLEGATIONS:

SEVENTH:   Denies each and every allegation contained in paragraphs "20",

"21", "22", "23", "24", "26", "27", "28", "29", "30", "33", "34", "36", "37", "39", "40", "41" and

"42" of the Plaintiff's Complaint.

EIGHTH:       Denies knowledge or information sufficient to form a belief as to the

allegations contained in paragraph "31" of the Plaintiff's Complaint.

## ANSWERING THE ALLEGED FIRST CAUSE OF ACTION AGAINST ALL DEFENDANTS

NINTH:        Defendants  repeats and realleges each and every denial set forth

in paragraphs "1" through "45" of plaintiff's Complaint with the same force and effect as

if fully set forth at length herein.

TENTH:        Denies each and every allegation contained in paragraphs "47",

"48" and "49" of the Plaintiff's Complaint.

## ANSWERING THE ALLEGED SECOND CAUSE OF ACTION AGAINST ALL DEFENDANTS:

ELEVENTH:  Defendants repeats and realleges each and every

denial set forth in paragraphs "1" through "49" of plaintiff's Complaint with the same

force and effect as if fully set forth at length herein.

TWELFTH:  Denies each and every allegation contained in paragraphs "51", "52"

and "53" of the Plaintiff's Complaint.

## ANSWERING THE ALLEGED THIRD CAUSE OF ACTION
## AGAINST THE DEFENDANTS TOWN AND POLICE DEPARTMENT:

THIRTEENTH:  Defendants repeats and realleges each and every denial set

forth in paragraphs "1" through "53" of plaintiff's Complaint with the same force and

effect as if fully set forth at length herein.

FOURTEENTH:  Denies each and every allegation contained in paragraphs "55",

"56", "57", "58", "59", "60" and "61" of the Plaintiff's Complaint.

## ANSWERING THE ALLEGED FOURTH CAUSE OF ACTION,
## AGAINST DEFENDANTS DELIA and WELSH FOR
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS:

FIFTEENTH: Defendants repeats and realleges each and every

denial set forth in paragraphs "1 " through "61" of plaintiff's Complaint with the same

force and effect as if fully set forth at length herein.

SIXTEENTH: Denies each and every allegation contained in paragraphs "63" and

"64" of the Plaintiff's Complaint.

## ANSWERING THE ALLEGED FIFTH CAUSE OF ACTION,
## AGAINST DEFENDANTS TOWN AND POLICE DEPARTMENT:

SEVENTEENTH:  Defendants repeats and realleges each and

every denial set forth in paragraphs "1" through "64 " of plaintiff's Complaint with the same force and effect as if fully set forth at length herein.

EIGHTEENTH:  Denies each and every allegation contained in paragraphs "67" and "68" of the Plaintiff's Complaint.

## ANSWERING THE ALLEGED SIXTH CAUSE OF ACTION, AGAINST ALL DEFENDANTS FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

NINETEENTH:  Defendants repeats and realleges each and every denial set forth in paragraphs "1" through "68" of plaintiff's Complaint with the same force and effect as if fully set forth at length herein.

TWENTIETH:  Denies each and every allegation contained in paragraphs "70", "71", "72" and "73" of the Plaintiff's Complaint.

## ANSWERING THE ALLEGED SEVENTH CAUSE OF ACTION, AGAINST DEFENDANTS TOWN AND POLICE DEPARTMENT FOR NEGLIGENCE:

TWENTY-FIRST:  Defendants repeats and realleges each and every denial set forth in paragraphs "1" through "73" of plaintiff's Complaint with the same force and effect as if fully set forth at length herein.

TWENTY-SECOND: Denies each and every allegation contained in paragraphs "75", "76", "77", "78" and "79" of the Plaintiff's Complaint.

## ANSWERING THE ALLEGED EIGHTH CAUSE OF ACTION, AGAINST DELIA AND WELSH;

TWENTY-THIRD: Defendants repeats and realleges each and every denial set forth in paragraphs "1" through "79" of plaintiff's Complaint with the same force and effect as if fully set forth at length herein.

TWENTY-FOURTH: Denies each and every allegation contained in paragraphs "81", "82", "83" and "84" of the Plaintiff's Complaint.

## ANSWERING THE ALLEGED NINTH CAUSE OF ACTION FOR PUNITIVE DAMAGES AGAINST ALL DEFENDANTS:

TWENTY-FIFTH: Defendants repeats and realleges each and every denial set forth in paragraphs "1" through "84" of plaintiff's Complaint with the same force and effect as if fully set forth at length herein.

TWENTY-SIXTH: Denies each and every allegation contained in paragraphs "86" and "87" of the Plaintiff's Complaint.

## ANSWERING THE ALLEGED NINTH CAUSE OF ACTION FOR ATTORNEYS' FEES AGAINST ALL DEFENDANTS:

TWENTY-SEVENTH: Defendants repeats and realleges each and every denial set forth in paragraphs "1" through "87" of plaintiff's Complaint with the same force and effect as if fully set forth at length herein.

TWENTY-EIGHTH: Denies each and every allegation contained in paragraphs "89" of the Plaintiff's Complaint.

## AS AND FOR A FIRST AFFIRMATIVE DEFENSE

TWENTY-NINTH:    The plaintiff's claims are barred by the doctrine of collateral estoppel.

## AS AND FOR A SECOND AFFIRMATIVE DEFENSE

THIRTIETH: The plaintiff's claims are barred by the doctrine of *res judicata*.

## AS AND FOR A THIRD AFFIRMATIVE DEFENSE

THIRTY-FIRST:    This court does not have subject matter jurisdiction over the plaintiff's claims by reason of the Younger and Rooker-Feldman abstention doctrines.

## AS AND FOR A FOURTH AFFIRMATIVE DEFENSE

THIRTY-SECOND:  The defendants are entitled to qualified immunity.

## AS AND FOR A FIFTH AFFIRMATIVE DEFENSE

THIRTY-THIRD:    The defendants are entitled to absolute immunity.

## AS AND FOR A SIXTH AFFIRMATIVE DEFENSE

THIRTY-FOURTH:  The defendants' conduct was based upon probable cause.

## AS AND FOR A SEVENTH AFFIRMATIVE DEFENSE

THIRTY-FIFTH:    The plaintiff's claim for punitive damages is barred by public policy and the laws of the State of New York.

## AS AND FOR AN EIGHTH AFFIRMATIVE DEFENSE

THIRTY-SIXTH:    The defendants acted in good faith and without malice.

## AS AND FOR A NINTH AFFIRMATIVE DEFENSE

THIRTY-SEVENTH:   The plaintiff's damages, if any, were caused and/or contributed to by reason of the culpable conduct of the plaintiff.

## AS AND FOR A TENTH AFFIRMATIVE DEFENSE

THIRTY-EIGHTH:  The plaintiff's damages, if any, were caused and/or contributed to by reason of the culpable conduct of the plaintiff.

## AS AND FOR AN ELEVENTH AFFIRMATIVE DEFENSE

THIRTY-NINTH:    The plaintiff's damages, if any, were caused and/or contributed to by reason of the improper and unlawful acts of the plaintiff.

WHEREFORE, the defendants, THE TOWN OF TUXEDO, NEW YORK, THE TOWN OF TUXEDO POLICE DEPARTMENT, TOWN OF TUXEDO POLICE OFFICER ANTHONY DELIA, SHIELD NUMBER 24, TOWN OF TUXEDO POLICE SARGEANT

PATRICK WELSH, SHIELD NUMBER 17, demands judgment against the plaintiff

dismissing the Complaint.

Dated: White Plains, NY
      December 26, 2007

                              Yours, etc.

                              JOHN J. WALSH
                              **HODGES, WALSH & SLATER, LLP**
                              Attorneys for Defendants
                              55 Church Street, Suite 211
                              White Plains, NY  10601
                              Tel:   (914) 385-6000
                              Fax:  (914) 385-6060

TO:   Lee David Klein, Esq. (LDK 2270)
       Attorneys for Plaintiff
       11 Market Street, Suite 204
       Poughkeepsie, NY  12601

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
==========================================X
ERIC K. MERRING,                                        07 CV 10381 CLB

                  Plaintiffs,                   **NOTICE TO TAKE
DEPOSITION UPON
ORAL EXAMINATION**

   - against –

THE TOWN OF TUXEDO, NEW YORK, THE TOWN
OF TUXEDO POLICE DEPARTMENT, TOWN OF
TUXEDO POLICE OFFICER ANTHONY DELIA,
SHIELD NUMBER 24, TOWN OF TUXEDO POLICE
SERGEANT PATRICK WELSH, SHIELD NUMBER 17,

                  Defendants.
==========================================X

**COUNSELORS:**

    **PLEASE TAKE NOTICE,**  that pursuant to Article 31 of the Civil Practice Law and

Rules the testimony, upon oral examination, of the plaintiff, **ERIK K. MERRING,**  as

adverse parties, will be taken before a Notary Public who is not an attorney, or employee

of an attorney, for any party or prospective party herein and is not a person who would be

disqualified to act as a juror because of interest or because of consanguinity or affinity to

any party herein, at the law office of HODGES, WALSH & SLATER, LLP on the **28th day

of February, 2008,** at **10:00 a.m.** in the forenoon of that day with respect to evidence

material and necessary in the defense of this action.

Dated: White Plains, NY
      December 26, 2007

                        Yours, etc.

                        JOHN J. WALSH
                        **HODGES, WALSH & SLATER, LLP**
                        Attorneys for Defendants
                        55 Church Street, Suite 211
                        White Plains, NY  10601
                        Tel:    (914) 385-6000
                        Fax:    (914) 385-6060

TO:   Lee David Klein, Esq.
      Attorney for Plaintiff
      11 Market Street, Suite 204
      Poughkeepsie, NY  12601

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
=======================================X

ERIC K. MERRING,                                                07 CV 10381 CLB

                        Plaintiffs,

        - against –

THE TOWN OF TUXEDO, NEW YORK, THE TOWN
OF TUXEDO POLICE DEPARTMENT, TOWN OF
TUXEDO POLICE OFFICER ANTHONY DELIA,
SHIELD NUMBER 24, TOWN OF TUXEDO POLICE
SERGEANT PATRICK WELSH, SHIELD NUMBER 17,

                        Defendants.
=======================================X
==============================================================
                            ANSWER
==============================================================

HODGES, WALSH & SLATER LLP
Attorneys for Defendants
55 Church Street, Suite 211
White Plains, New York  10601
(914) 385-6000

# ORIGINAL

STATE OF NEW YORK
COUNTY OF ORANGE

053-14

------------------------------------------------------------

ERIC K. MERRING,

                              Claimant,

        -against-

THE TOWN OF TUXEDO POLICE DEPARTMENT
And the TOWN OF TUXEDO,

                              Respondents.

------------------------------------------------------------

DATED:    June 6, 2007
          Poughkeepsie, New York
          10:15 a.m. - 12:01 p.m.


          Jennifer Cea, Reporter


          EXAMINATION OF ERIC K. MERRING
            HELD PURSUANT TO SECTION
               50-H OF THE GENERAL
                 MUNICIPAL LAW





        Mary T. Babiarz Court Reporting Service, Inc.
                  (845) 471-2511

1                                                                2

2        APPEARANCES:

3

4

5        LEE DAVID KLEIN
         Attorney for Claimant
6        11 Market Street, Suite 204
         Poughkeepsie, New York   12601
7

8

         HODGES, WALSH & SLATER, LLP
9        Attorneys for Respondent
         75 S. Broadway, Suite 415
10       White Plains, New York   10601
         BY: JOHN J. WALSH II, ESQ.
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                            MERRING                          3

 2        ERIC K. MERRING, the Claimant herein, having been

 3               first duly sworn by a Notary Public within and

 4               for the State of New York, was examined and

 5               testified as follows:

 6

 7                         _____

 8

 9        BY MR. WALSH:

10    Q   Would you please state your full name for the

11        record.

12    A   Eric K. Merring.

13    Q   Where do you reside?

14    A   343 Bob Holloway Road, Delancey, New York  13752.

15    Q   Good morning, Mr. Merring.  John Walsh is my name.

16        I'm representing the Town of Tuxedo in this matter.

17        I'm going to be asking you some questions about a

18        Notice of Claim you filed.  If I ask you any

19        questions you don't understand, please let me know

20        and I will attempt to rephrase the question so that

21        you do understand.  Do you understand that?

22    A   Sure.  Absolutely.

23    Q   How long have you lived in Delancey, New York?

24    A   A significant amount of time, over 20 years.

25    Q   And have you always resided at 343 Bob Holloway
```

```
 1                          MERRING                        4

 2          Road?

 3   A      Yes.

 4   Q      Have you had any interim addresses over the 20 years

 5          where you lived elsewhere?

 6   A      Yes.

 7   Q      Where was the last place you lived?

 8   A      The most recent?

 9   Q      Yes.

10   A      504 Old Mill Road.

11   Q      Where is that?

12   A      Southfields, New York.

13   Q      And do you presently reside at 504 Old Mills Road in

14          Southfields?

15   A      I do not have a lease, if that's what you mean.

16          It's my girlfriend's apartment.  That's my

17          girlfriend's apartment.

18   Q      What is your girlfriend's name?

19   A      Regina Blecher, B-L-E-C-H-E-R.

20   Q      So how long have you been staying with Regina?

21   A      A little more so now, because I have a newborn son,

22          but roughly --- it's hard to say --- roughly, I

23          don't know, a half year, I guess, I don't know.

24   Q      How about before you moved in with Regina, where

25          were you living?
```

1                                MERRING                              5

2    A    My father's address, 1 Amherst Road.

3    Q    Is that also in Delancey?

4    A    No, that is in New City, New York  10956.

5    Q    That is your father's house, you said?

6    A    Yes.

7    Q    What is your father's first name?

8    A    Kenneth.

9    Q    Can I have your date of birth, please?

10   A    December 3, 1969.

11   Q    Your Social Security number?

12   A    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.

13   Q    Are you presently employed?

14   A    Yes.

15   Q    By whom are you employed?

16   A    Davis Sports Shop, Sloatsburg, New York.

17   Q    Do you have an immediate supervisor there at the

18        sports shop?

19   A    No, just the owner, Wayne Davis.

20   Q    What do you do for Davis Sport Shop?

21   A    I'm a gun sales associate.

22   Q    How long have you worked there?

23   A    Since last September of '06.

24   Q    Did you have another job before going to Davis

25        Sports Shop?

                  Mary T. Babiarz Court Reporting Service, Inc.
                              (845) 471-2511

1                                    MERRING                          14

2    A    Yes, for cell phone.

3    Q    And were you using a cell phone at the time?

4    A    No, I was not.

5    Q    Did you plead guilty to anything as a result of the

6         mid-spring time that Officer Delio pulled you over?

7    A    I went before the judge --- well, I was at the

8         judge, and at the last moment then Officer Delio

9         offered the lowest he could go was parking on

10        pavement or something to that effect.

11   Q    Did you plead guilty to that?

12   A    I did.  I did.

13   Q    So we have then three times you have been stopped by

14        the Tuxedo police officers; is that correct, total?

15   A    Correct.

16   Q    And are you presently licensed to carry a firearm?

17   A    I am.

18   Q    When did you get your license to carry a ---

19        withdrawn.  When was the first time you became

20        licensed to carry a firearm?

21   A    It was April 1988.

22   Q    And what was your occupation at that time?

23   A    Student.

24   Q    At Binghamton?

25   A    No, at SUNY Delhi.  SUNY University of New York at

```
 1                              MERRING                          15
 2          Delhi.
 3     Q    Is there a reason why you felt it was necessary to
 4          become licensed to carry a firearm?
 5     A    I enjoy shooting sports.  I enjoy hunting.  It's a
 6          great pastime.
 7     Q    And was that out of Delaware County you received
 8          that gun license?
 9     A    Correct.
10          BY MR. KLEIN:
11              Let him finish the question.
12          BY MR. WALSH:
13     Q    Excuse my ignorance, do gun licenses require
14          renewals?
15     A    Not in Delaware County.  Some counties do.
16          Westchester County is one example.
17     Q    Were you living in Delaware County as a result of
18          going to Delhi at the time you got that license?
19     A    I was living --- Delancey, it's really Delancey.
20          Delhi prior to that.
21     Q    Is Delancey in Delaware County?
22     A    Yes.
23     Q    Was there a form you had to fill out when you
24          applied for the gun license?
25     A    Yes.
```

```
 1                              MERRING                          18
 2   Q    Have you ever applied for a gun license in Orange
 3        County?
 4   A    No.
 5   Q    Or in any other county other than Delaware County?
 6   A    No.
 7   Q    I understand as part of your claim that as a result
 8        of the arrest of December 4, 2006, your pistol
 9        permit was suspended; is that correct?
10   A    Correct.
11        BY MR. WALSH:
12             Mark that.
13
14             (ORDER SUSPENDING LICENSE RECEIVED
15             AND MARKED AS RESPONDENT'S EXHIBIT
16               A FOR IDENTIFICATION)
17
18   Q    I show you what we have marked as Respondent's A for
19        Identification for today's date and ask that you
20        take a look at that.  Is that the order suspending
21        your pistol permit served upon you following your
22        arrest on December 4, 2006?
23   A    That is such.  This is a copy of it, yes.
24   Q    Was that ever served upon you?
25   A    By mail, not in person.
```

Mary T. Babiarz Court Reporting Service, Inc.
(845) 471-2511

1

2   Q   Is it on the left side or the right side as you head

3      north?

4   A   Left.

5   Q   And where were you going to at the time you were

6      first pulled over on December 4?

7   A   I was driving to work at that --- it was a Monday.

8   Q   So you were heading south?

9   A   Yes, on 17.

10   Q   And where were you on Route 17 when you first became

11      aware that Officer Delio was trying to pull you

12      over?

13   BY MR. KLEIN:

14         Objection to the form.  He wouldn't know at

15         that instant it was Officer Delio.  You're

16         referring to knowing that a police officer was

17         behind him?

18   BY MR. WALSH:

19   Q   It was Officer Delio who eventually pulled you over;

20      is that right?

21   A   Correct.

22   Q   When was it that you first became aware that a

23      police officer was pulling you over?

24   A   At what area?

25   Q   Yes.

```
 1                          MERRING                    23

 2   A    When he was directly behind me, yes.

 3   Q    Did you glance at your speedometer when you first

 4        saw Officer Delio pull out?

 5   A    No.

 6   Q    Were you in the right lane or the left lane when you

 7        first saw Officer Delio pull out?

 8   A    Left.

 9   Q    And from the time he put his lights on until the

10        time you pulled over, how much distance do you

11        figure you were traveling?

12   A    Roughly between a quarter of a mile to a half mile.

13        There was no real place to pull over safely.

14   Q    Where did you pull over?

15   A    Stoneridge Road.

16   Q    Was that on the right side or left side as you

17        headed south on 17?

18   A    Right side.

19   Q    So you didn't pull over onto the shoulder of 17, you

20        pulled into a side street; is that right?

21   A    I had to, there was no safe road room.

22   Q    About what time of day was it?

23   A    9:00 a.m.

24   Q    After you pulled over, you eventually brought your

25        vehicle to a stop, is that right?
```

MERRING                                    25

2    that.

3  Q   And when Officer Delio approached your car, did you

4      roll down your window?

5  A   It was already down.

6  Q   And when he got to your window, who spoke, you or

7      the officer first?

8  A   He did.

9  Q   And what did he initially say?

10  A   I don't know the exact words, but it was --- not

11      verbatim --- You were speeding, I need to see your

12      driver's license, registration, and insurance

13      cards.

14  Q   Did you say anything to him in that initial

15      conversation?

16  A   I complied.  As I was reaching for my insurance

17      cards in my glove box, I immediately stated that I

18      was carrying my license and handgun on my right hip.

19  Q   So were you the first person to bring up the fact

20      you were carrying a weapon at the time?

21  A   Yes, I offered that information.

22  Q   Did he respond when you told him that?

23  A   Yes.

24  Q   What did he say?

25  A   "What valid reason do you have for carrying your

1                              MERRING                        26

2          handgun on you right now?"

3    Q     And did you respond to that?

4    A     I did.

5    Q     And what did you say?

6    A     I said, "I have an unrestricted New York State

7          pistol license.  I don't necessarily have to have a

8          reason to have it on me, but I happen to be going to

9          work behind the sales counter at Davis Sports shop."

10   Q     Did he respond to that?

11   A     Yes.

12   Q     What did he say?

13   A     "That's not a valid reason."

14   Q     Did you respond to him telling you he did not

15         believe your reasons were valid?

16   A     He repeated it.

17   Q     Did you say anything back to him in that regard?

18   A     I stated, again, that it is an unrestricted license

19         handgun, I'm allowed to have it on my person at any

20         time.  At which time he made a cell phone call.

21   Q     So when he made the cell phone call, did he walk

22         away from the car?

23   A     He was right next to the car.

24   Q     Did he have your insurance, license and registration

25         when he made the cell phone call?

                Mary T. Babiarz Court Reporting Service, Inc.
                             (845) 471-2511

MERRING                               27

1

2   A    He had at least my driver's license and

3        registration.  I don't know if I even made it to my

4        insurance cards at that point.

5   Q    Did he ask you at any time for a copy of your pistol

6        permit?

7   A    Yes, at that point he did.

8   Q    Was that before he made the cell phone call?

9   A    After.

10  Q    First he made the cell phone call, then he asked for

11       the pistol permit?

12  A    In that sequence, probably.

13  Q    Were you carrying your pistol permit?

14  A    Of course.

15  Q    It was in your wallet?

16  A    Separate wallet.

17  Q    Did you hand it to him at that point?

18  A    The entire thing.  He had every piece of ID I had at

19       the time or just immediately after he was making

20       that cell phone call.

21  Q    I'm confused a little bit here.  It's probably me.

22       Did you give him the pistol permit before or after

23       he made the cell phone call, if you can recall?

24  A    I remember showing him, I don't know if he had it in

25       his physical hand at the time he was making the cell

Mary T. Babiarz Court Reporting Service, Inc.
(845) 471-2511

MERRING                                      31

2  A    Not specifically Officer Delio.  I have spoken to

3       state troopers about Tuxedo police officers, not

4       specifically him.

5  Q    Did you overhear the phone conversation Officer

6       Delio had while he was standing outside your car on

7       December 4, 2006?

8  A    It was inaudible.  I couldn't hear him, but took the

9       inference of who was called and what was said,

10      because about a minute later another police car

11      pulled up with his emergency lights flashing.

12 Q    Were you still in your vehicle when the other police

13      car pulled up?

14 A    The entire time.

15 Q    How long after you were initially stopped did the

16      second police car pull up, about?

17 A    Less than ten minutes.

18 Q    Did you have a cell phone with you when you were

19      pulled over?

20 A    No.

21 Q    No?

22 A    No.

23 Q    And did you speak to the second police officer when

24      the second police officer arrived?

25 A    It was a sergeant.

```
1                              MERRING                      32

2    Q    Do you know who it was?

3    A    I believe his name is Welch, Sergeant Welch.

4    Q    Patrick?

5    A    I don't know his first name.

6    Q    During the interim between the time the cell phone

7         call was made and Sergeant Welch appeared, what if

8         anything occurred at the scene?

9    A    As I remember, Officer Delio has all my ID and he

10        went back to his police car.

11   Q    When Sergeant Welch arrived, did he come directly to

12        you?

13   A    He went straight to the police car first, spoke to

14        Officer Delio in his patrol car, 15, 20 seconds, if

15        that, and then the sergeant approached my vehicle.

16   Q    Who spoke first, you or Sergeant Welch?

17   A    Sergeant Welch.

18   Q    What did he say initially?

19   A    "What valid reason do you have for having your

20        handgun on you right now?"

21   Q    And I assume you responded?

22   A    Same as I did to Officer Delio.  "I have an

23        unrestricted pistol license, New York State, and

24        don't have to have a specific reason for carrying as

25        some licensors do, restricted to hunting, camping
```

MERRING                                          33

2    fishing, hiking, informal target shooting.

3  Q    And how did Sergeant Welch respond to that?

4  A    I believe he asked again.  I believe he asked the

5       same question again.

6  Q    Did you give him the same response?

7  A    Same response.

8  Q    What was Sergeant Welch's tone in this initial

9       conversation?

10 A    Agitated.

11 Q    Did you know Sergeant Welch prior to December 4,

12      2006?

13 A    No, never saw him in my life, that I could recall.

14      Maybe I saw him in a bagel shop or something.

15 Q    You don't know him from Davis, for instance?

16 A    No, no never.  Nothing like that.

17 Q    Have you ever had any conversations with anyone

18      about Sergeant Welch?

19 A    Not specifically.  Like I said, prior to, I spoke to

20      a couple of state troopers about Tuxedo police

21      officers in general.

22 Q    After your initial conversation with Sergeant Welch,

23      what happened?

24 A    He did not ask anything about the initial stop, my

25      driver's license or anything else.  It was strictly

MERRING                                    34

1              about my handgun, back and forth several times, and

2              then he ultimately, after I would say between five

3              and ten minutes roughly, he asked me to step out of

4              the vehicle, and he opened the door.

6  Q      Was there any discussions apart from --- I mean ---

7              withdrawn. The two of you were there at your door

8              for five or ten minutes before he asked you to get

9              out of your car. Were there any other conversations

10             other than the conversation of him inquiring as to

11             your handgun with you?

12  A      Where is the handgun? You know, it's on my right

13             hip. I had explained that to Officer Delio. His

14             line of questioning was strictly, strictly channeled

15             into, you have a license, why did you have the

16             handgun on?

17  Q      It was limited to that?

18  A      He may have asked, you know, where you're going, you

19             know, what --- you know, and at that time ---

20             (interrupted)

21  Q      At some point it was Sergeant Welch who asked you to

22             get out of the car?

23  A      He told me to get out of the car.

24  Q      Did you get out of the car?

25  A      I opened the car door, he pulled the door open. As

MERRING                                      35

1

2          I stepped out, he grabbed my arm, Place your hands

3          on top of your --- or above you, which I did.   And

4          he proceeded to frisk me immediately.

5    Q     So did he actually take you by the arm and pull you

6          out of the car?

7    A     He didn't lift me out of the seat, but as I was

8          getting out, he helped me, I should say.

9    Q     Did he grab your arm?

10   A     Left arm.   I believe it was my left --- because my

11         right arm would have been blocked by the door, so he

12         sort of got me around my own door.

13   Q     I just want to know if there was physical contact

14         between the two of you as you were getting out of

15         the car?

16   A     Absolutely.

17   Q     Can you describe the physical contact between the

18         two of you as you were getting out of the car?

19   A     I just did.   As I was sitting up to get my leg out,

20         he grabbed me --- not bare arm, it was my leather

21         jacket.   He grabbed my arm as I was coming out.   I

22         don't even know if the door was closed at that

23         point.   The door may be open at that point.   He

24         asked me to raise my arms, which I did, and

25         immediately he was behind me starting to pat me down

1                                MERRING                              36

2              --- actually in front of me first, patting me down

3              through the inside of the jacket, down to my hips

4              all around.  He felt my handgun on my right hip and

5              proceeded to withdraw it from my holster.

6    Q    After you got out of car, he asked you to put your

7         hands over your head?

8    A    Immediately.

9    Q    And you complied?

10   A    Absolutely.

11   Q    And it was while your hands were over your head that

12        he patted you down?

13   A    Yes.

14   Q    Did he take your pistol from you at that time?

15   A    Once he felt the handgun, he removed it from my

16        holster.  At the time when he grabbed it, I said,

17        It's not loaded.  There is no bullet in the chamber,

18        just the magazine is full.  At that point he already

19        ejected the magazine and he held the slide back.

20   Q    So it was while your hands were up, he patted you

21        down, took your handgun, you tell him there is no

22        rounds in the chamber?

23   A    Correct.

24   Q    And at that point he's holding the gun; is that

25        right?

1                               MERRING                        37

2    A    At that point he's approximately behind my --- the

3         knee of my trunk.  I'm on the top of my car with my

4         hands on the roof of my car and he's in essence

5         emptying the gun.  It was not chambered, but the

6         magazine was full, and he held the slide open.

7    Q    So he ejected the magazine?

8    A    He ejected the magazine and then locked the handgun

9         in the open position.

10   Q    And your hands were, by that time, on the roof of

11        your car?

12   A    Yes, as I recall.

13   Q    Was there any other physical contact between you and

14        Officer Welch at the scene?

15   A    Yes, he then --- once he placed the handgun on my

16        trunk he proceeded to continue to pat me down,

17        frisked me, when he noticed in my right front pocket

18        a knife, and immediately upon grabbing the knife

19        pulled it out of my pocket.  He tried to open it by

20        shaking it, it did not open, and he said, Put your

21        hands behind your back, you're under arrest for

22        carrying a gravity knife, or a knife that could be

23        opened by centrifugal force.  And I complied.  My

24        hands were already behind my back.  He helped me,

25        quite physically, put my hands behind my back and

                Mary T. Babiarz Court Reporting Service, Inc.
                              (845) 471-2511

MERRING                                    38

proceeded to put handcuffs on me.

     I asked immediately, What am I being charged
with?  He rattled a sequence of numbers, I don't
remember the numbers, and he said, "Criminal
possession of a weapon, fourth degree," as he's
grabbing the chain of the handcuffs, pushing me
towards Officer Delio's patrol car.

Q   Let's step back so I can take it a little more step-
by-step here.  While he's patting you down, he feels
a knife in one of your pockets?

A   Correct.

Q   Which pocket?

A   My right front pocket.

Q   You were wearing jeans?

A   Yes, denim jeans.

Q   Did he take the knife out of your pocket?

A   Yes.

Q   How big a knife is it?

A   The length?

Q   Closed?

A   Maybe four inches, three-and-a-half, four inches.

Q   How long was the blade?

A   The blade is probably three-and-a-half, four inches.

Q   And why was it that you were carrying a knife?

Mary T. Babiarz Court Reporting Service, Inc.
(845) 471-2511

1                              MERRING                      39

2    A    It's my personal property.  I just had my knife with

3         me.  I always have my knife with me.  At Davis I

4         open boxes a lot.  I use it for that.

5    Q    You say he attempted to open the knife and it would

6         not open?

7    A    He attempted to open it by gravity or force, by

8         shaking it; it did not open as I recall.

9    Q    Was it a knife that you can flip open with a flip of

10        the hand?

11   A    No.

12   Q    Is there some kind of lock mechanism that keeps it

13        from opening that way?

14   A    It's not designed that way.  It is not a per se

15        centrifugal force or gravity mechanism.

16   Q    So to open the knife, it requires --- (interrupted)

17   A    Spring tension.

18   Q    To open the knife, it requires you use two hands?

19   A    If you trained yourself you could open it with one

20        hand if you chose to by sliding the blade with your

21        thumb.

22   Q    You would have to push it with your thumb to open

23        it?

24   A    I suppose you could use your index finger, it would

25        be clumsy, but the thumb would be the most common

                Mary T. Babiarz Court Reporting Service, Inc.
                              (845) 471-2511

MERRING                                          40

1

2          way to do it.

3    Q     Is there a button?

4    A     No button.

5    Q     Any kind of latch mechanism to keep it closed?

6    A     To keep it closed.  There is a mechanism, it is a

7          spring, in essence, it will lock open --- it locks

8          when it's completely opened.

9    Q     How about locked closed, is there anything that

10         locks it closed?

11   A     Other than spring tension, the force it takes to

12         actually --- for the spring to keep that blade down

13         into its handle, which is --- acts like a sheath.  I

14         don't know however many pounds of force it takes,

15         but it would keep it inside the handle.

16   Q     Let me ask you, is it a knife when you flip it you

17         can open it?

18   A     No.

19   Q     Did Officer Welch attempt to flip the knife open at

20         all at the scene?

21   A     As I remember, he did a few times.

22   Q     How many times?

23   A     At least twice, maybe three.

24         BY MR. KLEIN:

25              Sergeant Welch?

```
 1                              MERRING                          41

 2          BY THE WITNESS:

 3     A    Sergeant.

 4          BY MR. WALSH:

 5     Q    Sorry, just so we're clear.  Two or three times

 6          Officer Welch attempted to flip the knife open, he

 7          was unable to do so?

 8     A    As I can see.  You must understand, I'm facing this

 9          way and he's like right there (indicating).  This is

10          all a matter of seconds.  Out of my peripheral

11          vision, I could see him trying to attempt to open it

12          as soon as he had it in his possession.  Was it six

13          times, I doubt it.  It was between two and three, I

14          think so.

15     Q    Did he get the knife open that day in your presence?

16     A    I don't remember the blade actually being out in

17          front of me.  If he did, he did that when I was

18          already in the police car.

19     Q    Were the attempts to open the knife by Officer Welch

20          made before or after you were handcuffed?

21     A    Before, immediately before.  As I remember, he was

22          trying to open it while he's stating the words that

23          "This is an illegal knife.  Place your hands behind

24          your back."

25     Q    You say that Officer Welch helped you place your
```

Mary T. Babiarz Court Reporting Service, Inc.
(845) 471-2511

MERRING                                   42

2       hands behind your back?

3 A    No, he grabbed both my arms and pulled them down to

4       my lower back.

5 Q    How would you describe the force he used when doing

6       that?

7 A    Enough to get the job done, but I wasn't resisting

8       either, so my muscles and arms were already in that

9       motion anyway.

10 Q    You did not resist when he attempted to handcuff

11       you?

12 A    Not one ounce.

13 Q    Okay.  At this point you would be standing next to

14       the car with your hands handcuffed behind your back;

15       correct?

16 A    For a matter of seconds, because at that point he

17       was already whisking me away by grabbing the

18       handcuff chain.  I would say lifting it a little

19       bit, and his other arm was pushing my leather jacket

20       in my back, pushing me towards Officer Delio's

21       police car.

22 Q    So how long were you handcuffed for before you were

23       put in the police car?

24 A    From the time I was handcuffed until I was placed in

25       the police car, two or three minutes.

Mary T. Babiarz Court Reporting Service, Inc.
(845) 471-2511

1                                    MERRING                            44

2   Q    Who was it who searched your car?

3   A    Both men, both officers.

4   Q    Did they find anything during the search of your

5        car?

6   A    They found a bunch of stuff.  One, they found an old

7        stick.  Officer --- sorry, Sergeant Welch found that

8        --- found an old stick by my passenger's floor

9        board, just a stick.

10  Q    Can you describe it for me?

11  A    A stick about, I don't know, 18 inches, maybe two

12       feet long, rounded.

13  Q    It had bark on it?

14  A    No bark, but it was unstained.  It was wood.  It was

15       wood.  It was like pine or something.

16  Q    I mean, when you say a stick, I mean something you

17       break off a tree?

18  A    Hit my tires with, you know, just a stick.  I'm not

19       going to say a machine, but a fabricated stick.

20  Q    Did it have a handle of any kind?

21  A    Nothing, just wood.  Just a solid piece of wood.

22  Q    Was it carved in any way, anything like that?

23  A    I don't remember if it was smooth or if it had maybe

24       some fine groves, I don't remember.

25  Q    It was like a billy club-type stick?

                Mary T. Babiarz Court Reporting Service, Inc.
                            (845) 471-2511

MERRING                                          45

| 1  |   |                                                              |
|----|---|--------------------------------------------------------------|

2   A   What is a billy club?

3   Q   Something you would use to hit somebody with?

4   A   It was definitely not a legitimate police night-

5       stick, if that's what you mean.  This had absolutely

6       no weight.  It was realistically, it was --- I used

7       it for hitting my tires.

8   Q   You would hit your tires with this stick?

9   A   Yeah, see how, you know.

10  Q   Was that the only purpose you used this stick for,

11      was to hit your tires?

12  A   Yeah.

13  Q   I'm just a little confused.  Do you typically carry

14      a stick around your cars to hit your tires with?

15  A   Sometimes I carry rifles, shotguns, pistols.  A

16      stick is nothing.

17  Q   How long were you in Officer Delio's car before you

18      were driven from the scene?

19  A   There were other things that Sergeant Welch found

20      that he brought back to the police car.

21  Q   While you were in --- (interrupted)

22  A   Once he brought the stick back, he said, You're

23      being charged with this.  He threw it in the front

24      seat of the patrol car.  Then he came back again,

25      rifling through my stuff illegally, he went through

Mary T. Babiarz Court Reporting Service, Inc.
(845) 471-2511

MERRING                                    50

1

2    Q    And where did you go from the scene?

3    A    Officer Delio spun his vehicle around, and in a

4         matter of seconds as we're leaving, still in

5         complete shock, we were headed towards the police

6         department.  I was assuming, I didn't know, but I

7         was assuming we were going back to the Tuxedo Police

8         Department.

9    Q    Did you go back to the Tuxedo Police Department?

10   A    Yes.

11   Q    Directly from the scene you went to the Tuxedo

12        Police Department?

13   A    Yeah, I vaguely remember asking, What is going on

14        here; what am being charged with?  Officer Delio, I

15        believe, said --- reiterated, Criminal possession of

16        a knife, something like that.  He wasn't very

17        talkative.

18   Q    During the ride from the scene to the Tuxedo Police

19        Department, Officer Delio advised you you were being

20        charged with criminal possession of a knife?

21   A    Not in those words.  I may have said in --- not

22        verbatim, you know, What is going on here; what is

23        all this?  I believe he may have restated that it

24        was criminal possession of a knife.  I do remember

25        he did say --- I do remember he did say, I have your

1                              MERRING                        51

2          pistol license up here.  I said, It's real.  He

3          said, I'm going to call; I'm going to call the

4          sheriff.  I said, Fine, call him.

5     Q    Did he make any --- (interrupted)

6     A    Not verbatim, but words to that extent.

7     Q    Did he make any phone calls while you were being

8          transported?

9     A    In the vehicle, no.  No.  No, he was driving.

10    Q    Were there any other conversations on the ride to

11         the Tuxedo Police Department that you recall?

12    A    Not that I could recall.

13    Q    When you got to the Tuxedo Police Department, what

14         happened?

15    A    He opened the door, Officer Delio opened the door.

16         I stepped out.  I remember I stated, I'm terribly

17         embarrassed, to which he did not respond.  He just

18         opened the building door, and escorted me up to the

19         office area.

20    Q    Did you see anybody you knew while you were still at

21         the scene?

22    A    Back to the scene now?

23    Q    Let's go back to the scene for a moment.  While you

24         were at the scene, did you see anybody you knew

25         apart from Officer Delio or Sergeant Welch?

                Mary T. Babiarz Court Reporting Service, Inc.
                            (845) 471-2511

| | | |
|---|---|---|
| 1 | | |
| 2 | A | Knew as an acquaintence, or new as in --- |
| 3 | | (interrupted) |
| 4 | Q | Anybody at all? |
| 5 | A | There was no one else there, just me, the sergeant |
| 6 | | and officer. |
| 7 | Q | How long were you at the Tuxedo Police Department on |
| 8 | | December 4? |
| 9 | A | Total time? |
| 10 | Q | Yes. |
| 11 | A | Over an hour.  Over an hour.  Probably closer to an |
| 12 | | hour-and-a-half. |
| 13 | Q | Did you make any phone calls while you were at the |
| 14 | | Tuxedo Police Department? |
| 15 | A | Yes, I was allowed to make phone calls, to which I |
| 16 | | made the first two, and no one answered.  I called |
| 17 | | my girlfriend first.  I called my father second. |
| 18 | | There was no answer, so I hung up and I called my |
| 19 | | girlfriend again and she picked up. |
| 20 | Q | What if anything did you tell her? |
| 21 | A | I told her I was arrested for carrying a pocket |
| 22 | | knife, don't get upset.  Immediately she started to |
| 23 | | get upset. |
| 24 | Q | They can't help themselves. |
| 25 | A | I said I was in Tuxedo Police Department, I need |

MERRING                                            56

| | | |
|---|---|---|
| 1 | | |
| 2 | | No.  No.  There is no privacy here, talk in front of |
| 3 | | me. |
| 4 | Q | Were your handcuffs on at that point? |
| 5 | A | He removed them just prior to making the phone call. |
| 6 | Q | How long after you got to the police department did |
| 7 | | he remove the handcuffs? |
| 8 | A | Moments.  Less than five minutes. |
| 9 | Q | Okay.  Apart from him telling you that there is no |
| 10 | | privacy here, were there any other conversations |
| 11 | | between you and Officer Delio before Sergeant Welch |
| 12 | | arrived at the police department? |
| 13 | A | Other than after the phone call was made, I had |
| 14 | | asked him if he wanted my extra mags or my gun belt, |
| 15 | | he said, Yeah, I'll be taking those.  He didn't |
| 16 | | immediately take them at that point.  I remember he |
| 17 | | placed some stuff, whatever it was, on his desk or |
| 18 | | someone's desk in the other office room.  I watched |
| 19 | | him do that, probably my pistol license and maybe |
| 20 | | some other stuff.  And then I remember he asked me |
| 21 | | to sit down at the desk, and then probably at that |
| 22 | | time Sergeant Welch had arrived. |
| 23 | Q | How many magazines were you carrying with you? |
| 24 | A | One in the gun, two on my belt. |
| 25 | Q | And how many rounds in a magazine? |

Mary T. Babiarz Court Reporting Service, Inc.
(845) 471-2511

1                                    MERRING                                57

2    A    Eight.

3    Q    24 total rounds then you had with you?

4    A    Yes.

5    Q    And what type of weapon was it?

6    A    It was a Kimber.

7    Q    Spell that?

8    A    K-I-M-B-E-R, stainless gold watch match 191145ACP,

9         which stands for automatic colt pistol.

10   Q    It was an automatic?

11   A    It was a semi-automatic.  There are no automatics in

12        New York State.

13   Q    No legal ones?

14   A    That is, that civilians can have anyway.

15   Q    After Officer Sergeant Welch arrived, did you have

16        any conversations with him?

17   A    Yes.

18   Q    At any time after you arrived back at the police

19        department, were the handcuffs put back on you?

20   A    No.

21   Q    Were you restrained in any other way while you were

22        at the police department; by that I mean by chains

23        or any other locking devices?

24   A    At that moment when Sergeant Welch arrived, no.  We

25        were --- I was at the desk.  We were at the desk, a

                    Mary T. Babiarz Court Reporting Service, Inc.
                                 (845) 471-2511

MERRING                                    64

2      Just stay limp wrist, I'll do it.  So he did what he

3      had to do for the fingerprints, he did all that.

4      Once that was complete, he brought me to the

5      washroom to wash my --- ink off my hand, which I

6      did.  We came back and he compiled a packet of

7      something, and then he also had something on the

8      computer, which he sent to Albany, he said.

9  Q   He said he sent it to Albany?

10 A   I watched him do it.

11 Q   When you say he had a packet of something?

12 A   You know, papers.  Papers of what had just

13     transpired, stuff.

14 Q   Did he issue any type of citation?

15 A   At that moment, no.

16 Q   Did there come a time when he eventually issued you

17     a ticket of some kind?

18 A   Yes.  Yes.  At first he asked for bail.

19 Q   He asked you personally?

20 A   Yes.

21 Q   Let's go back.  How long were you at the police

22     department after you got out of the cell?

23 A   Total time?  At least 20 minutes.

24 Q   It's during that time that your fingerprints were

25     taken; correct?

Mary T. Babiarz Court Reporting Service, Inc.
(845) 471-2511

MERRING                                                65

1

2    A    Yes.

3    Q    And certain other information was gathered and you

4         believe it was sent to Albany?

5    A    Right, photographed, fingerprinted, he had some

6         other forms and stuff was on the computer.  Now, it

7         very well could have been the stuff that was in the

8         forms was already on the computer and he just

9         printed hard copy.

10   Q    And during that time also you had a conversation

11        regarding bail with Officer --- with Sergeant Welch?

12   A    Yes, once all that was complete.  I was sitting back

13        at the desk, my hands already washed from the ink,

14        and he had indicated the lowest bail he could set

15        for is $100, so he handed me back my cash.  I just

16        happened to have my cashed paycheck with me, and he

17        stated, I can't take it from you, because I'm on

18        video right now, so you have to hand me the $100.

19        So I took $100 out of my folded money I had and I

20        gave him $100, to which he gave me a receipt.

21   Q    After you received the receipt for the bail, what

22        happened?

23   A    Things were relatively quiet.  He stood me up, he

24        asked me to put the stuff back in my pockets.  I

25        remember at that time seeing my handgun either in

Mary T. Babiarz Court Reporting Service, Inc.
(845) 471-2511

| | | |
|---|---|---|
| 2 | A | Total time, from the moment I arrived until the |
| 3 | | moment I left? |
| 4 | Q | Yes. |
| 5 | A | It was over an hour. |
| 6 | Q | Was it two hours? |
| 7 | A | It was a full docket, but I remember us going up |
| 8 | | pretty early.  I would have to say less than two |
| 9 | | hours. |
| 10 | Q | And when you went up to the bench, what happened? |
| 11 | A | I was asked to come up, I was --- my name was called |
| 12 | | by the judge.  I went up.  Mr. Klein was right next |
| 13 | | to me, after which the charges were read by the |
| 14 | | judge, and Luke Bulville had indicated immediately |
| 15 | | that he was withdrawing the charges, the case was |
| 16 | | --- the charge for criminal possession would be |
| 17 | | withdrawn or similarly dismissed, I would be |
| 18 | | pleading to parking on pavement for the speeding |
| 19 | | ticket.  And that was agreed to by my attorney, Mr. |
| 20 | | Klein and myself. |
| 21 | Q | And did you plead guilty to parking on pavement? |
| 22 | A | I did. |
| 23 | Q | And did you pay a fine? |
| 24 | A | No.  We used the bail money that was already taken |
| 25 | | from me by Sergeant Welch to apply to that.  I do |

Mary T. Babiarz Court Reporting Service, Inc.
(845) 471-2511

MERRING                                                    87

    BY THE WITNESS:

        Thanks.

    BY MR. KLEIN:

        Thanks.


                                    X _____
                                        ERIC K. MERRING


Sworn to before me this _22nd_ day

of _____August_____, 2007


X _____

        NOTARY PUBLIC


                          LEE DAVID KLEIN
                    Notary Public, State of New York
                      Qualified in Dutchess County
                    Commission Expires Oct. 14, 20__


                Mary T. Babiarz Court Reporting Service, Inc.
                            (845) 471-2511

ORIGINAL

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK      07 CV 10381 CLB


- - - - - - - - - - - - - - - - - - - - - - - - X

ERIC K. MERRING,
                  Plaintiff,

        -against-

THE TOWN OF TUXEDO, NEW YORK, THE TOWN OF TUXEDO
POLICE DEPARTMENT, TOWN OF TUXEDO POLICE OFFICER
ANTHONY DELIA, SHIELD NUMBER 24, TOWN OF TUXEDO
POLICE SERGEANT PATRICK WELSH, SHIELD NUMBER 17,
                  Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - X
Dated:   March 7, 2008
         11:00 a.m. - 12:40 p.m.
         Poughkeepsie, New York

         Rochelle Rose, Reporter




                    DEPOSITION

                       OF

               ERIC K. MERRING




     Mary T. Babiarz Court Reporting Service, Inc.
                  (845) 471-2511

2

APPEARANCES:


          LEE DAVID KLEIN, ESQ.
          Attorney for Plaintiff
          11 Market Street, Suite 204
          Poughkeepsie, New York  12601



          HODGES, WALSH & SLATER, LLP
          Attorney for Defendants
          55 Church Street, Suite 211
          White Plains, New York  10601
          BY:   STEPHEN SLATER, ESQ.


          _____

3

IT IS HEREBY STIPULATED, by and between the attorneys for the respective parties hereto, that the sealing and filing of the witness' deposition are hereby waived.

It is further stipulated and agreed, by and between the attorneys for the respective parties hereto, that all objections except as to form of the question are reserved to the time of trial.

It is further stipulated and agreed, by and between the attorneys for the respective parties, that they may sign this deposition before any duly qualified Notary Public.

| | | |
|---|---|---|
| 1 | | MERRING                                    4 |
| 2 | | ERIC K. MERRING, a Plaintiff herein, was first |
| 3 | | duly sworn by a Notary Public within and |
| 4 | | for the State of New York and was |
| 5 | | examined and testified as follows: |
| 6 | | |
| 7 | | _____ |
| 8 | | |
| 9 | | BY MR. SLATER: |
| 10 | Q | Would you state your name for the record. |
| 11 | A | Eric Kenneth Merring. |
| 12 | Q | Where do you reside? |
| 13 | A | 343 Bob Holloway Road, Delancey, New York |
| 14 | | 13752. |
| 15 | Q | Good morning, Mr. Merring. |
| 16 | A | Good morning. |
| 17 | Q | My name is Stephen Slater.  I represent the |
| 18 | | Defendants in this action and I will be asking |
| 19 | | you a series of questions.  If at any time you |
| 20 | | don't hear or understand any of my questions |
| 21 | | please let me know and I will rephrase the |
| 22 | | question or have it read back to you.  If you |
| 23 | | answer one of my questions I am going to |
| 24 | | assume you heard me and understood me.  Is |
| 25 | | that fair with you? |

```
1                            MERRING                    8

2               hearing.

3     A         Correct.

4     Q         Have you reviewed that 50-H transcript before

5               testifying here today?

6     A         Yes.

7     Q         When did you last review it?

8     A         Roughly three days ago.

9     Q         Did you do so in preparation for this

10              testimony?

11    A         I glanced over it, to go over it, yes.

12    Q         Did you do so to help you answer my questions?

13    A         Just to go over it.

14    Q         Did you do so to prepare for the deposition

15              today?

16    A         I suppose.

17    Q         Did you review anything else to help you

18              answer questions today?

19    A         No.

20    Q         Are you aware there is a video tape of your

21              encounter with the Tuxedo Police Department on

22              December 4, 2006?

23    A         Yes.

24    Q         Have you ever seen that video tape?

25    A         Yes.
```

```
 1                          MERRING                        9

 2     Q     How many times have you seen it?

 3     A     Once.

 4     Q     When did you see it?

 5     A     Roughly a month ago.

 6     Q     Anything other than your 50-H transcript did

 7           you review to help you to prepare to answer

 8           questions today?

 9     A     No.

10     Q     Are you currently employed?

11     A     No.

12     Q     When were you last employed?

13     A     July of last year.

14     Q     Where were you employed as of July of last

15           year?

16     A     Davis Sporting - Sport Shop (Proper Noun

17           Subject To Correction) in Sloatsburg, New

18           York.

19     Q     Is that located on Route 17?

20     A     Yes.

21     Q     What were the circumstances under which you

22           left Davis Sport Shop?

23     A     Very low pay and there was a conflict with

24           other workers.  I couldn't do it anymore.

25     Q     It was your choice to leave.
```

```
1                              MERRING                    14

2              overtime.

3       Q      All of those hours were from the employment at

4              Davis Sport Shop.

5       A      Yes.

6       Q      How much were you making there?

7       A      Twelve dollars an hour, no commission.

8       Q      What time of day or night did your first

9              encounter with the Tuxedo Police Department on

10             December 4, 2006 take place?

11      A      Approximately 9:00 a.m.

12      Q      At that time were you driving an automobile?

13      A      Yes.

14      Q      What kind of automobile?

15      A      1987 Cadillac Fleetwood Brougham.   (Proper

16             Noun Subject To Correction)

17      Q      Were you pulled over by the cops?

18      A      I was.

19      Q      Where were you going when you were pulled

20             over?

21      A      I was on my way to work.

22      Q      To Davis Sport Shop.

23      A      Correct.

24      Q      Any particular time you needed to be at work

25             that day?
```

MERRING                                    18

1

2   Q    Approximately how far did your vehicle travel

3        from when you first saw - withdrawn.  Was the

4        siren ever activated on the police car?

5   A    Not that I remember.

6   Q    Just the overhead lights.

7   A    That's all I remember.

8   Q    From the moment you saw the overhead lights

9        activated on the police car until you pulled

10       over can you estimate for me the distance that

11       you traveled?

12  A    At least a quarter of a mile to a half mile.

13  Q    Was there a shoulder to the right side of

14       Route 17 during any part of that quarter or

15       half mile?

16  A    Not wide enough for my Cadillac.

17  Q    Where in fact did you pull over?

18  A    I pulled over on Stone Ridge Road.

19  Q    Did you make a right or left-hand turn?

20  A    It's a right.

21  Q    I am going to go back in time for just a

22       moment. Before December 4, 2006 had you had

23       any interactions with the Tuxedo Police

24       Department?

25  A    Yes.

```
  1                          MERRING              25

  2     A     This is after the dismissal anyway.

  3     Q     What other interactions?

  4     A     As I remember that was the only logging I had

  5           wrote down; there was no other interactions

  6           other than that.

  7     Q     Do I understand from your last answer you kept

  8           a log or a journal or a writing with respect

  9           to some of these interactions?

 10     A     I always do.

 11     Q     Did you review that log or that journal before

 12           testifying today?

 13     A     No.

 14     Q     Just so the question is clear, I am going back

 15           to December 4, 2006. The vehicle pulled you

 16           over; you turn onto the side street you

 17           described.  You brought your vehicle to a

 18           stop; correct?

 19     A     Yes.

 20     Q     What happened next - by the way - I am hoping

 21           your testimony will be from your memory of the

 22           events. Did reviewing the video tape of the

 23           event change your recollection of what

 24           happened?

 25     A     In some regard, yes.  Mostly it was just a
```

```
 1                           MERRING                    26

 2              validation of what my mind remembered at the

 3              time. The perspective changed obviously.  I am

 4              not where the camera is looking.  From that

 5              regard it's different.

 6       Q      The camera that recorded the events of you

 7              being pulled over and subsequently being

 8              arrested was from the police vehicle; correct?

 9       A      Correct.

10       Q      Was it a dashboard mounted camera?

11       A      I assume.

12       Q      What happened after you were pulled over that

13              day?

14       A      Roughly a minute or two I assume elapsed and

15              the officer comes to the door in an angry

16              manner, very angry manner, and wants to know -

17              wants my driver's license, insurance cards and

18              registration for the vehicle.

19       Q      Do you know what officer this is?

20       A      At the time I didn't; I know now it was

21              Officer Delia.

22       Q      Is it your testimony the first time Officer

23              Delia walked up to your vehicle that morning

24              he was angry?

25       A      He was angry.
```

MERRING                                              27

| | | |
|---|---|---|
| 2 | Q | Thank you; continue with your answer. He asked |
| 3 | | for your license, registration and insurance. |
| 4 | A | Correct.  Very soon after I possibly may have |
| 5 | | given him my - I got my wallet out at that |
| 6 | | point.  Very soon after I specifically, |
| 7 | | intentionally, volunteered the fact that I had |
| 8 | | my licensed handgun on my right hip and at |
| 9 | | that point everything changed. |
| 10 | Q | How did everything change? |
| 11 | A | It was focused purely on the handgun. |
| 12 | Q | Do you have a handgun on your person today? |
| 13 | A | No. |
| 14 | Q | You still have a license to have a handgun as |
| 15 | | of today. |
| 16 | A | Yes. |
| 17 | Q | Any restrictions on that license? |
| 18 | A | None. |
| 19 | Q | What happened after you told Officer Delia you |
| 20 | | had a gun on your right hip? |
| 21 | A | His words were what valid reason do you have |
| 22 | | to have a gun on you and I said I had a full |
| 23 | | unrestricted license to carry my handgun. I |
| 24 | | don't specifically need a reason to have it |
| 25 | | with me but I happen to be on my way to work |

```
 1                              MERRING                    29

 2              license, pistol license and very soon after he

 3              probably asked that question again - what

 4              valid reason do you have for having the

 5              handgun on you which I answered the same.

 6              I really didn't understand the line of

 7              questions and he made a cell phone call.

 8      Q       In your presence or outside your presence?

 9      A       In my presence, at the driver's door.

10      Q       He is at your driver's door.  Was your window

11              open at that point in time?

12      A       Yes.

13      Q       Did you hear what he said on the phone?

14      A       No.

15      Q       Do you know as you sit here today who he

16              called?

17      A       The inference was he called another police

18              officer; a minute or two later another police

19              car came over with emergency lights.

20      Q       Do you know the second police officer to

21              arrive?

22      A       I didn't know then but I know now.

23      Q       Who was that?

24      A       Sergeant Welsh.

25      Q       Did you hear any of the conversation Officer
```

|   |   | MERRING | 32 |
|---|---|---|---|

1

2   A   Yes.

3   Q   The next interaction you had with Officer

4       Delia of the Tuxedo Police Department included

5       Sergeant Welsh; is that correct?

6   A   Yes.

7   Q   From the time Officer Delia got back into his

8       car to the very next time you spoke to any

9       officer, Officer Welsh was on the scene;

10      correct?

11  A   Correct.

12  Q   Did you see Sergeant Welsh arrive; did you see

13      him pull up to the scene?

14  A   I vaguely remember looking in my rear view

15      mirror and I remember seeing another police

16      car come around, right behind.

17  Q   Sergeant Welsh arrived in a marked police

18      vehicle.

19  A   Yes.

20  Q   Were there lights activated?

21  A   Yes.

22  Q   Any siren that you heard?

23  A   No.

24  Q   What happened next?

25  A   I remember looking in my rear view mirror; I

MERRING                                    33

1

2          remember Sergeant Welsh going to the driver's

3          door of Officer Delia's vehicle and maybe ten

4          or twenty seconds of conversation if that and

5          Sergeant Welsh came to my door and asked the

6          exact same question, what valid reason do you

7          have for having your handgun on you at this

8          time.

9     Q    And your answer...

10    A    I gave the same answer I gave to Officer

11         Delia.

12    Q    What happened next?

13    A    I remember he repeated it at least twice,

14         Sergeant Welsh. I remember it - me taken

15         a-back because I didn't have this line of

16         questioning from any other police officer at

17         any time.  I remember feeling that why am I

18         being questioned; I am licensed.  I remember

19         Sergeant Welsh being very angry even when he

20         came to the door, very agitated, and probably

21         in the sequence of a few times of him asking

22         why I had my handgun with me and required me

23         to step out of the vehicle.

24    Q    Did you get out of the vehicle?

25    A    I did.

1                              MERRING                        34

2       Q      Did you do so by yourself or with assistance?

3       A      I exited the vehicle by myself under my own

4              power.

5       Q      Was there any physical contact between

6              yourself and any member of the Tuxedo Police

7              Department as you got out of the vehicle?

8       A      As I remember by the time I was almost erect,

9              maybe three quarters erect, I was told to put

10             my hands up by Sergeant Welsh.  He had put his

11             hands - motioned me to turn around.  I was

12             facing my car at that point with my hands up

13             and seconds later my hands were on the roof of

14             my car.

15      Q      My question to you is as you were getting out

16             of your vehicle was there any physical contact

17             between yourself and any member of the Tuxedo

18             Police Department?

19      A      Not until I was erect; not until I was fully

20             standing and upright.

21      Q      You got out of your vehicle on your own power

22             without anyone from the police department

23             touching you; is that accurate?

24      A      Yes.

25      Q      Do you remember verifying a Notice of Claim in

```
 1                        MERRING                    35

 2            this case - do you know what a Notice of Claim

 3            is?

 4    A       Explain.

 5    Q       Sure.

 6            BY MR. SLATER:

 7                      Please mark this.

 8

 9            (NOTICE OF CLAIM RECEIVED AND MARKED

10                  DEFENDANT'S EXHIBIT A

11                   FOR IDENTIFICATION)

12

13            BY MR. SLATER:

14    Q       I show you what today has been marked

15            Defendant's Exhibit A for Identification.

16            Please take a look at it and let me know if

17            you recognize that document.

18    A       Yes, I do.

19    Q       What do you recognize the document to be?

20    A       In essence it is a synopsis of what happened

21            on December 4, 2006 and subsequent

22            information.

23    Q       Directing your attention to the very last page

24            of the document which is a verification page

25            as it says at the top.  Does a copy of your
```

```
1                            MERRING                    36

2              signature appear on the page?

3        A     Yes.

4        Q     Did you verify the truth and accuracy of this

5              Notice of Claim before you signed that

6              document?

7        A     I believe I did.

8        Q     Is this a fair and accurate copy of the Notice

9              of Claim you filed?  Although I certainly

10             acknowledge there are some notes made around

11             the document.

12       A     Other than some stray notes and handwriting.

13       Q     Is that the form you verified as true and

14             accurate?

15       A     It looks accurate; I didn't read every word

16             but it looks accurate.

17       Q     The second to the last page indicates it is

18             dated February 8, 2007.

19       A     Correct.

20       Q     Had you seen the video tape of this incident

21             by the time you verified the document?

22       A     No.

23       Q     At the time you verified this document you

24             hadn't seen any video tape of this incident;

25             is that correct?
```

```
 1                          MERRING                  37

 2    A      That is correct.

 3    Q      I am going to read a portion from paragraph -

 4           page - page three of the document - paragraph

 5           5 A and I am going to ask you if I actually

 6           read it correctly, and I will show you the

 7           back of it. The Sergeant directed the Claimant

 8           to step out of his vehicle.  The Claimant

 9           asked why.  The Sergeant physically took the

10           Claimant out of the car and told him to put

11           his hands up.  That's the end of the quote.

12    A      Okay.

13    Q      Did I accurately read that off the Notice of

14           Claim?

15    A      You accurately read that from the Notice of

16           Claim.

17    Q      Is that true?

18    A      At the time that's what I remember.

19    Q      Is it true now?

20    A      It's not a hundred percent accurate. It hasn't

21           changed anything. I was taken out of the car.

22    Q      Sir, my question to you is - is what I just

23           read accurate?  Did the Sergeant physically

24           take you out of the car?

25    A      He physically told me step out of the car.  I
```

```
 1                          MERRING                      38
 2              under my own power opened the door and
 3              proceeded to step out of the car under my own
 4              power.
 5        Q     He told you to get out of the car; correct?
 6        A     Correct.
 7        Q     Did he physically take you out of the car?
 8        A     He did not physically grab me by the throat if
 9              that's what you are inferring.
10        Q     I am not inferring anything; I am asking you a
11              question. Did the Sergeant physically take you
12              out of the car?
13        A     Not until - there was no physical contact
14              until I was probably three quarters of the way
15              erect out of the car.
16        Q     A moment ago you just told me that there was
17              no physical contact between yourself and the
18              officer until you had fully stood up.
19        A     I said three quarters, almost erect; correct.
20        Q     I will ask the question one more time. Is it
21              true that the Sergeant physically took you out
22              of the car?
23        A     That is not accurate, not accurate.
24        Q     When was the last time you looked at this
25              Notice of Claim?
```

```
1                              MERRING                    42

2      A     Roughly six years, yes.

3      Q     Did you carry it on your person daily?

4      A     Yes.

5      Q     You were familiar with its operation.

6      A     Absolutely.

7      Q     Is the knife - does it operate such that it

8            can open with a flick of the wrist?

9      A     No.

10     Q     Have you seen the video from the officer's

11           camera?

12     A     The dash-cam (Subject to Correction) I did

13           see, yes.

14     Q     Did you make any note of whether the officer

15           opened the knife at the scene when you were

16           pulled over that day?

17     A     I remember he opened it.  I remember even at

18           the time without looking at the video.

19     Q     My question to you is as a result of you

20           reviewing the video, when you viewed the

21           video, do you remember how it was that the

22           officer opened that knife?

23     A     I don't remember exactly but he must have put

24           some force on the blade to open it.

25     Q     Did he do so with one hand or more than one
```

```
 1                          MERRING                    43
 2          hand?
 3    A     According to the video it seemed like he used
 4          one, the right hand as I remember.
 5    Q     According to the video did the officer open
 6          the blade by flicking it open with his wrist?
 7    A     It's impossible.  You can't just flick it
 8          open.  You have to put force with this finger
 9          or thumb to break the tension of the spring
10          mechanism or the locking mechanism and then
11          you can flip it open.  It's impossible to open
12          other than that.  That's the only way it can
13          be opened.
14    Q     When you viewed the video tape did you see the
15          officer flip the knife open with a flick of
16          his wrist?
17    A     It was grainy --- (Interrupted)
18          BY MR. KLEIN:
19                    Off the record.
20
21               (OFF THE RECORD DISCUSSION)
22
23    A     What I remember seeing in the video is the
24          officer manipulating the knife with his hand
25          and in a motion with his wrist.  It's very
```

```
1                              MERRING                    44

2                grainy at that moment.  You cannot see digits

3                on the blade itself.

4                BY MR. SLATER:

5        Q       You mean fingers when you say digits.

6        A       Correct.

7        Q       Do you have a recollection of seeing the

8                officer flick his wrist and the blade open in

9                the knife?  Just yes or no.

10       A       Yes, to an extent.

11       Q       What if anything did Sergeant Welsh say to you

12               after he took the knife from you and opened

13               it?

14       A       You are in position of an illegal knife, it's

15               a gravity knife.  Put your hands behind your

16               back; you are under arrest.

17       Q       Did you comply with that order?

18       A       Yes.

19       Q       Was the knife open at the scene when you were

20               arrested; was the blade open?

21       A       Are we talking from the video or what I

22               recollect at the exact time?

23       Q       Whatever you know now.  Was the blade open?

24       A       It was open at one point, yes.

25       Q       Were you still standing by your vehicle at the
```

```
1                          MERRING                        46

2       Q       Did the store sell knives?

3       A       They did.

4       Q       Was that knife seized from you on December 4,

5               2006?

6       A       Yes.

7       Q       Have you received it back?

8       A       No.

9       Q       Was anything else seized from you or your

10              vehicle that day?

11      A       There was a stick that was found in the front

12              passenger - underneath the front seat area.

13      Q       The driver's seat or the passenger's seat?

14      A       Passenger's seat.

15      Q       The front seat of the Cadillac, is it a bench

16              seat or a bucket seat?

17      A       Two individual moving seats.

18      Q       Your understanding is the stick you are

19              describing was under the passenger seat.

20      A       Correct.

21      Q       When you say a stick, tell me what you mean by

22              a stick.

23      A       Wooden, unfinished stick.

24      Q       Is that like a stick you take off a tree or a

25              limb or a twig?
```

```
 1                          MERRING                    47
 2      A     There was no bark on it; a stick roughly 18/20
 3            inches in length and maybe an inch in
 4            diameter.
 5      Q     Like a stick you find on a lawn or something?
 6      A     It was made of wood; it was there for hitting
 7            my tires.  I didn't even know it was there.
 8      Q     Did you use it for another purpose other than
 9            for hitting your tires?
10      A     No.
11      Q     What purpose would it serve by hitting the
12            tires with a stick?
13      A     To see if it needs to be inflated.
14      Q     Did you own a tire pressure gauge?
15      A     Not at that time, no; not that I remember
16            anyway.
17      Q     Did you have a tire pressure gauge in your
18            glove compartment or anywhere else in your
19            vehicle?
20      A     I don't remember having one on me at the time.
21      Q     Can you remember any use you made of that
22            stick another than to hit your tires?
23      A     No, none.
24      Q     How often would you use the stick to hit your
25            tires?
```

```
1                              MERRING                    57

2                in that position?

3       A        Correct.

4       Q        Is it your understanding from your knowledge

5                of guns that the weapon can't be operated or

6                fired in that position?

7       A        It cannot be fired in that position.

8       Q        So, he locked it in an open position.

9       A        Yes.

10      Q        And took the magazine out.

11      A        Yes.

12      Q        Did you have a permit to carry that gun?

13      A        A license to carry it, yes.

14      Q        What county issued that license?

15      A        Delaware County.

16      Q        Approximately when was that license issued?

17      A        April 1988.

18      Q        Was the license issued for that particular

19               handgun?

20      A        I didn't have that handgun at the time.

21      Q        The license was issued with respect to another

22               weapon; is that correct?

23      A        At the time I didn't have a handgun.  I got

24               the license first; I didn't own a handgun for

25               a little while; I was in college.
```

```
 1                              MERRING                     59

 2      A      I sold a couple since then.  As I remember it

 3             was roughly 15.

 4      Q      Were they all attendant to one license with

 5             other coupons?

 6      A      One license; all of my handguns on that

 7             license.

 8      Q      By virtue of purchase orders or coupons;

 9             correct?

10      A      Right.

11      Q      Had you notified Delaware County that you were

12             spending considerable periods of time in

13             Orange County?

14      A      No.

15      Q      Did you ever tell Delaware County before

16             December 4, 2006 that you had moved to Orange

17             County?

18      A      I didn't physically move, but no.

19      Q      Going back to the Notice of Claim marked

20             Defendant's Exhibit A for Identification,

21             would you just read paragraph one into the

22             record for me, please?

23      A      Number one or --- (Interrupted)

24      Q      Number one where your left finger is.

25      A      Post office address of the Claimant is 504 Old
```

```
 1                          MERRING                      60

 2              Mill Road, Southfield, New York 10965.

 3      Q       You are the Claimant; correct?

 4      A       Yes.

 5      Q       When you signed and verified this form you

 6              swore that your address was the Southfield

 7              address; is that correct?

 8      A       No, I said the post office address meaning

 9              where I received mail.

10      Q       Did you ever notify Delaware County that's

11              where you were receiving mail?

12      A       No.

13      Q       Is there a reason why you were receiving mail

14              in Orange County as opposed to Delaware

15              County?

16      A       It was easier for me.

17      Q       Is it because you spend more time in Orange

18              County?

19      A       I spend a lot more time with my father.

20      Q       Is it fair to say you spend more time in

21              Orange and Rockland County than in Delaware

22              County?

23      A       Depending on the time.  At that time or at any

24              time subsequent to December 4th?

25      Q       When you verified this on February 7, 2007 did
```

```
1                          MERRING                          77

2       Q        My question to you, sir, is was it your father

3                who arrived instead of your girlfriend?

4       A        Correct.

5                BY MR. SLATER:

6                       Thank you; no further questions.

7                   Thanks for your time.

8                       X_____
                              ERIC K. MERRING
9

10      Subscribed and sworn to

11      before me this _____ day

12      of _____, 2008

13

14      X_____
              Notary Public
15

16

17                      DEFENDANT'S EXHIBITS

18
        LETTER                   ITEM                   PAGE
19
        A                Notice of Claim                 35
20
        B & C            Photographs                      49
21

22

23

24

25
```

EXHIBIT "E" IS a
DVD. A COPY Was
SenT To the Court
along with a COPY
to Plaintiff's attorney.



PENGAD 800-631-6989
DEFENDANT'S
EXHIBIT



Dbt f !8;'18.dw.21492.DMC!!!!!Epdvn f ou2!!!!!!Gjrhe!22!27!!3118!!!!!Qbhf !45!pg45

# CERTIFICATE OF DISPOSITION

STATE OF NEW YORK
ORANGE COUNTY

TUXEDO TOWN COURT
CRIMINAL PART

PEOPLE OF THE STATE OF NEW YORK

VS.

ERIC K. MERRING; Defendant

CASE NO: 06120065

Date of Birth:     12/03/1969
Date of Arrest:    12/04/2006
Disposition Date:  01/26/2007

JC501 no: 31980927L
NYSID no: 6057113Q

| Section Charged | Section Disposed | Ticket No & Description | Disposition | Fine | Civil-Fee | Surchg |
|---|---|---|---|---|---|---|
| PL 265.01 | PL 265.01 | APPEARANCE CRIM POS WEAP-4 | Dismissed | 0.00 | 0.00 | 0.00 |
| VTL 1180 0B | VTL 1201 0A | MDT200533K STOP/PARK VIOL | FINE | 100.00 | 0.00 | 0.00 |

Upon a proper request for an official statement of disposition,
I certify that the above named defendant having appeared before
this court was charged as shown above.  Each of the charges was
disposed of as indicated.

Dated: The 5th day of February 2007

_____
COURT CLERK

NOTE: A copy of the request will be filed with this certificate
in the case records.

CAUTION: This information must not be divulged if the case is
sealed or where the defendant has been adjudicated a youthful
offender.

Copies: ___ Court, ___ Defendant, ___ Agency, ___ DA

**VIA FIRST CLASS MAIL**

STATE OF NEW YORK             )
                                                    SS.:)
COUNTY OF WESTCHESTER    )


    Kim J. Lambertus, being duly sworn, deposes and says:

    I am employed by the law firm of HODGES, WALSH & SLATER, LLP, counsel

for Defendant in the above action and I am over the age of 18 years and I am not a

party to this action.  On April 15, 2008 I served a true copy of the annexed **NOTICE OF**

**MOTION, AFFIRMATION IN SUPPORT, LOCAL RULE 56.1 STATEMENT OF FACTS**

**and MEMORANDUM OF LAW** in the following manner: by mailing same in a sealed

envelope, with postage prepaid thereon, in a post office or official depository of the U.S.

Postal Service within the State of New York addressed to the last known address of all

attorneys in this action as indicated below:


TO:   Mr. Lee David Klein, Esq.
       Attorney for Plaintiff
       11 Market St.
       Poughkeepsie, N.Y.  12601

_____
              Kim J. Lambertus

Sworn to before me this
15th Day of April, 2008

_____
   Notary Public

JOHN J. WALSH
Notary Public, State of New York
No. 4827450
Qualified in Orange County
Commission Expires May 31, 20_10_

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
=========================================X
ERIC K. MERRING,                                           07 CV 10381 CLB

                        Plaintiffs,

        - against –

THE TOWN OF TUXEDO, NEW YORK, THE TOWN
OF TUXEDO POLICE DEPARTMENT, TOWN OF
TUXEDO POLICE OFFICER ANTHONY DELIA,
SHIELD NUMBER 24, TOWN OF TUXEDO POLICE
SERGEANT PATRICK WELSH, SHIELD NUMBER 17,

                        Defendants.
=========================================X

**NOTICE OF MOTION**
**AFFIRMATION IN SUPPORT**
**LOCAL RULE 56.1 STATEMENT OF FACTS**
**MEMORANDUM OF LAW**

HODGES, WALSH & SLATER LLP
Attorneys for Defendants
55 Church Street, Suite 211
White Plains, New York  10601
(914) 385-6000

UNITED STATE DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------X
ERIC K. MERRING,

                              Plaintiff,                          Docket No.:
                                                                  **07 civ 10381 (CLB)**

      - against –
                                                                  NOTICE OF MOTION
THE TOWN OF TUXEDO, NEW YORK, THE TOWN OF
TUXEDO POLICE DEPARTMENT, TOWN OF TUXEDO
POLICE OFFICER ANTHONY DELIA, SHIELD NUMBER          RETURN DATE:
24, TOWN OF TUXEDO POLICE SERGEANT PATRICK
WELSH, SHIELD NUMBER 17,                             MAY 16, 2008

                              Defendants.
--------------------------------------------------------------------------X

      **PLEASE TAKE NOTICE**, that upon the annexed Affirmation of John J. Walsh, Esq.,

and upon all pleadings and proceedings had heretofore herein, the undersigned will move this

Court on May 16, 2008 at 9:00 a.m., or as soon thereafter as movant will be heard, before the

Hon. Charles L. Brieant at the United States District Court, 300 Quarropas Street, White Plains,

New York, for an order pursuant to Fed. R. Civ. P. 56 (c) granting defendants, TOWN OF

TUXEDO POLICE OFFICER ANTHONY DELIA, SHIELD NUMBER 24, and TOWN OF

TUXEDO POLICE SERGEANT PATRICK WELSH, SHIELD NUMBER 17, (hereinafter

"Defendants"), judgment on the affirmative defense of qualified immunity dismissing plaintiff's

Complaint against these defendants, together with such further and other relief as the Court may

deem just and fair under the circumstances herein.

Dated: White Plains, New York
       April 15, 2008

                              Yours, etc.,
                              Hodges, Walsh & Slater, LLP

                              John J. Walsh, Esq. (JW4092)

Attorneys for Defendants
55 Church Street, Suite 211
White Plains, New York 10601
Tel: (914) 385-6000
Fax: (914) 385-6060
E-mail: jwalsh@hwslaw.com

TO:    Lee David Klein, Esq.
       Attorney for Plaintiff
       11 Market Street, Suite 204
       Poughkeepsie, New York 12601
       (845) 454-9200

UNITED STATE DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
ERIC K. MERRING,

                       Plaintiff,                            Docket No.:
                                                       **07 civ 10381 (CLB)**

   - against –
                                                       **AFFIRMATION IN**

THE TOWN OF TUXEDO, NEW YORK, THE TOWN OF        **SUPPORT**
TUXEDO POLICE DEPARTMENT, TOWN OF TUXEDO
POLICE OFFICER ANTHONY DELIA, SHIELD NUMBER
24, TOWN OF TUXEDO POLICE SERGEANT PATRICK
WELSH, SHIELD NUMBER 17,

                        Defendants.
------------------------------------------------------------------------X

      John J. Walsh, being an attorney duly admitted to practice law before the United States

District Court, Southern District of New York, affirms the following under the penalties of

perjury:

      1.    I am a member of the law firm of HODGES, WALSH & SLATER, LLP,

attorneys for the defendants, THE TOWN OF TUXEDO, NEW YORK, THE TOWN OF

TUXEDO POLICE DEPARTMENT, TOWN OF TUXEDO POLICE OFFICER ANTHONY

DELIA, SHIELD NUMBER 24, and TOWN OF TUXEDO POLICE SERGEANT PATRICK

WELSH, SHIELD NUMBER 17, and am familiar with the facts and pleadings herein from my

review of the file maintained by our office.

      2.    This Affirmation is submitted in support of the defendants', TOWN OF

TUXEDO POLICE OFFICER ANTHONY DELIA, SHIELD NUMBER 24, and TOWN OF

TUXEDO POLICE SERGEANT PATRICK WELSH, SHIELD NUMBER 17, motion for

judgment pursuant to Fed. R. Civ. P. 56 (c) on the affirmative defense of qualified immunity.

3.     The plaintiff, ERIC K. MERRING, commenced this action by service of a Complaint With Jury Demand, annexed hereto as **EXHIBIT A**, alleging a violation of federal and state constitutional rights and seeking compensatory and punitive damages.  However, it is difficult to parse out which federal and/or state constitutional rights the plaintiff alleges were violated.  We are assuming the plaintiff alleges the following violations in his complaint: unlawful search and seizure of the plaintiff's person and vehicle (Exhibit A, pars. 63 and 70); violation of his right to be free from unlawful detention and false arrest (Exhibit A, pars.70 and 81; and malicious prosecution (Exhibit A, par. 81).

4.     Defendants, TOWN OF TUXEDO POLICE OFFICER ANTHONY DELIA, SHIELD NUMBER 24, and TOWN OF TUXEDO POLICE SERGEANT PATRICK WELSH, SHIELD NUMBER 17, joined by an Answer, annexed hereto as **EXHIBIT B**, and set forth the affirmative defense of qualified immunity.  (Exhibit B, par. 32).

5.     Plaintiff, ERIC K. MERRING, was presented for a 50-H hearing on June 6, 2007 and for deposition testimony on March 7, 2008. A copy of the referenced portions of the deposition transcripts are annexed hereto as **EXHIBITS C and D**.

6.     A video from the dash mounted camera of Officer Delia's patrol car of the December 4, 2006 incident at issue is attached hereto as **EXHIBIT E**.

7.     Photos of the gravity knife and the bill club are attached hereto as **EXHIBIT F.**

8.     Pursuant to Local Rule 56.1, the Court is respectfully referred to defendants' Statement of Facts.

9.     The Court is also respectfully referred to defendants' Memorandum of Law for the application of the facts on the well-established legal foundations for an affirmative defense of qualified immunity.

WHEREFORE, it is respectfully requested that the defendants', TOWN OF TUXEDO POLICE OFFICER ANTHONY DELIA, SHIELD NUMBER 24, and TOWN OF TUXEDO POLICE SERGEANT PATRICK WELSH, SHIELD NUMBER 17, motion for judgment, pursuant to Rule 56(c), on the affirmative defense of qualified immunity be granted in its entirety and plaintiff's Complaint dismissed with prejudice, together with such further and other relief as this Court may deem just.

Dated: White Plains, New York
         April 15, 2008

                          Respectfully submitted,
                          HODGES WALSH & SLATER, LLP


                          John J. Walsh, Esq. (JW4092)

UNITED STATE DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
ERIC K. MERRING,

                           Plaintiff,                    Docket No.:
                                                         **07 civ 10381 (CLB)**

        - against –
                                                         **LOCAL RULE 56.1**
THE TOWN OF TUXEDO, NEW YORK, THE TOWN OF              **STATEMENT OF**
TUXEDO POLICE DEPARTMENT, TOWN OF TUXEDO               **FACTS**
POLICE OFFICER ANTHONY DELIA, SHIELD NUMBER
24, TOWN OF TUXEDO POLICE SERGEANT PATRICK
WELSH, SHIELD NUMBER 17,

                           Defendants.
------------------------------------------------------------------------X

        Defendants, TOWN OF TUXEDO POLICE OFFICER ANTHONY DELIA, SHIELD

NUMBER 24, and TOWN OF TUXEDO POLICE SERGEANT PATRICK WELSH, SHIELD

NUMBER 17, by their attorneys, HODGES, WALSH & SLATER, LLP hereby sets forth their

Rule 56.1 Statement of Facts.

        This motion for qualified immunity is made in accordance with the Scheduling Orders

issued by this Court on January 25, 2008 and March 18, 2008.  Under the Court's January 25,

2008 Order, plaintiff's version of the facts is assumed true for the purposes of the qualified

immunity motion.

        1.      On December 4, 2006, around 9:00 a.m., plaintiff was driving his motor vehicle

southbound on Route 17, in the Town of Tuxedo, en route to Davis Sport Shop in Sloatsburg,

New York, where he was employed.  (Exhibit A, par. 20; Exhibit C, p. 21, 8-9; Exhibit D, pp.14-

15).

2.      Town of Tuxedo Police Officer Anthony Delia, in a marked vehicle, undertook a vehicle and traffic stop of the plaintiff.  (Exhibit A, par. 20; Exhibit C, p. 21, 19-21; Exhibit D, p. 14, 17-19).

3.      Plaintiff pulled his vehicle over on to a side street, Stone Ridge Road, in the Town of Tuxedo.  (Exhibit A, par.20; Exhibit C, p.23, 14-21; Exhibit D, p.18, 17-18).

4.      Officer Delia exited his vehicle and approached the plaintiff and told the plaintiff he was speeding.  (Exhibit C, p.25, 6-13)  Per the plaintiff:

Q: And when he got to your window, who spoke, you or the officer first?
A: He did.
Q: And what did he initially say?
A: I don't know the exact words, but it was --- not verbatim --- you were speeding, I need to see your driver's license, registration, and insurance cards.

5.      The plaintiff provided Officer Delia with his driver's license, registration and insurance cards.  (Exhibit A, par. 20; Exhibit C, p.25, 16; Exhibit D, p.27, 2-6).

6.      Plaintiff then informed Officer Delia that he was carrying a licensed handgun. (Exhibit A, par. 20; Exhibit C, p.27, 6-8; Exhibit D, p.25, 17-18).

7.      After Officer Delia became aware of the plaintiff's handgun, he made a cellular telephone call to Sergeant Welsh.  (Exhibit C, p. 26, 20-25; Exhibit D, p. 29)

8.      Officer Delia then asked for plaintiff's pistol permit.  (Exhibit C, p. 27, 5-7).

9.      Plaintiff's pistol permit was issued by Delaware County in April 1988.  (Exhibit C, p.14, 16-21, p.15, 7-9; Exhibit D, p.57, 12-17).

10.     Plaintiff never applied for a license in any other county in New York.  (Exhibit C, p.18, 2-6).

11.     Plaintiff never notified Delaware County that he had moved.  (Exhibit D, p.59, 11-18).

12.    At the time of the incident, the plaintiff was sleeping and collecting his mail at his girlfriend's apartment, located at 504 Old Mills Road, Southfields, New York, in Orange County (Exhibit C, p.4, 7-17; Exhibit D, pp.59-60), and working in Sloatsburg, New York, in Rockland County. (Exhibit C, p.5, 13-16; Exhibit D, p.9, 14-18).

13.    A few minutes later, Sergeant Welsh pulled his police vehicle behind plaintiff's vehicle. (Exhibit A, par. 20; Exhibit C, p.31, 8-11; Exhibit D, p.32, 12-25).

14.    Sergeant Welsh exited the police vehicle and approached plaintiff's vehicle. (Exhibit A, par. 21; Exhibit C, pp.32-33).

15.    After questioning the plaintiff about his gun, Sergeant Welsh directed plaintiff to step out of his vehicle. (Exhibit A, par. 22; Exhibit C, p.34, 21-25; Exhibit D, p.33, 22-25).

16.    Plaintiff testified in his 50-h Hearing that as he was exiting his vehicle, Sergeant Welsh pulled him the rest of the way out. (Exhibit A, par. 22, Exhibit C, p.35, 2-6).

17.    However, Officer Delia's patrol car had a video camera mounted to the dashboard, which filmed the December 4, 2006 incident, and which showed otherwise. (Exhibit D, p.26, 4-11; Exhibit E).

18.    Plaintiff viewed the video tape approximately a month prior to his deposition on March 7, 2008. (Exhibit D, pp.8-9).

19.    In his March 7, 2008 deposition, plaintiff changed his testimony to say that Sergeant Welsh did not pull him out of his vehicle. (Exhibit D, pp.34-38).

20.    After plaintiff exited his vehicle, Sergeant Welsh told the plaintiff to put his hands up. (Exhibit A, par. 22; Exhibit C, p.36, 6-10).

21.    Sergeant Welsh removed the handgun from its holster. (Exhibit A, par. 22; Exhibit C, p.36, 6-10).

22.    Plaintiff carried on his person a loaded Kimber, semi-automatic handgun. (Exhibit C, p.57, 5-12).

23.    Plaintiff was also carrying on his person three magazines: one magazine in the gun and two magazines on his belt. (Exhibit C, p.56, 23-25).

24.    Plaintiff was carrying a total of 24 rounds or eight rounds in each magazine. (Exhibit C, pp.56-57)

25.    Sergeant Welsh then began to pat down the plaintiff and found an illegal, gravity knife in his pants pocket. (Exhibit C, pp.37, 18-23, p.41, 21-24; Exhibit D, p.44, 14-16).

26.    The knife was approximately three-and-a-half to four inches long. (Exhibit C, p.38, 22-24).

27.    Plaintiff, at his 50-h Hearing, testified that Sergeant Welsh attempted to open the knife by gravity force but he could not open it. (Exhibit C, p.39, 2-8).

28.    However, the video of the incident shows Sergeant Welsh opening the knife by gravity force. (Exhibit E).

29.    During his March 7, 2008 deposition, the plaintiff again changed his testimony to say that Sergeant Welsh was able to open the knife. (Exhibit D, pp. 42-43).

30.    Sergeant Welsh then directed plaintiff to put his hands behind his back and advised him that he was under arrest. (Exhibit C, p.37, 20-23).

31.    Plaintiff inquired as to why he was under arrest, and Sergeant Welsh advised him that he was in possession of a gravity knife, which is illegal in the State of New York. (Exhibit A, par. 22; Exhibit C, p.38, 3-8, p. 41, 21-24; Exhibit D, p. 44, 14-16).

32.    The plaintiff was then placed in handcuffs behind his back and placed in the back of Officer Delia's police vehicle. (Exhibit A, par. 22; Exhibit C, p.42).

33.    Sergeant Welsh and Officer Delia then conducted a search of the plaintiff's motor vehicle and found a billy club under the front passenger's seat. (Exhibit A, par. 23; Exhibit C, pp.44-45; Exhibit D, pp. 46-47).

34.    Photos were taken of the gravity knife and billy club.  (Exhibit F).

35.    Officer Delia escorted the plaintiff back to the Town of Tuxedo Police Department Headquarters.  (Exhibit C, p.50, 2-13)

36.    During the ride to the Town of Tuxedo Police Department Headquarters Officer Delia advised the plaintiff that he was being charged with criminal possession of a knife. (Exhibit C, p.50, 13-25).

37.    Officer Delia also indicated he was going to call the sheriff to confirm that the pistol license was valid.  (Exhibit C, pp.50-51).

38.    The plaintiff was at the Tuxedo Police Department for about an hour-and-a-half. (Exhibit C, p.52, 7-12).

39.    Plaintiff was allowed to make phone calls.  (Exhibit C, p.52, 13-19).

40.    Eventually bail was set for $100.  (Exhibit C, p.65, 14-15).

41.    Plaintiff was charged with speeding and criminal possession of a weapon, a gravity knife and a billy club.  (Exhibit C, p.64, 16-18; See **EXHIBIT G**).

42.    Plaintiff eventually pled guilty to a stop/park violation.  (Exhibit C, p.75, 11-22; Exhibit F).

43.    The bail money plaintiff previously paid was applied to the $100.00 fine for the stop/park violation. (See Exhibit F).

Dated:  White Plains, New York
         April 15, 2008

Respectfully submitted,
HODGES WALSH & SLATER, LLP

_____
John J. Walsh, Esq. (JW4092)

UNITED STATE DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
ERIC K. MERRING,

                              Plaintiff,                          Docket No.:
                                                                  **07 civ 10381 (CLB)**

      - against –

THE TOWN OF TUXEDO, NEW YORK, THE TOWN OF
TUXEDO POLICE DEPARTMENT, TOWN OF TUXEDO
POLICE OFFICER ANTHONY DELIA, SHIELD NUMBER
24, TOWN OF TUXEDO POLICE SERGEANT PATRICK
WELSH, SHIELD NUMBER 17,

                              Defendants.
------------------------------------------------------------------------X


# MEMORANDUM OF LAW


**Submitted on behalf of the Defendants**
**POLICE OFFICER ANTHONY DELIA and SERGEANT PATRICK WELSH**
**By their attorneys**

**HODGES WALSH & SLATER, LLP**
**55 Church Street, Suite 211**
**White Plains, New York 10601**

**Preliminary Statement**

Assuming plaintiff has pled a cognizable claim, qualified immunity shields government officials performing discretionary functions from liability under 42 U.S.C. § 1983 for civil damages insofar as (1) their conduct does not violate clearly established constitutional rights, or (2) it was objectively reasonable for them to believe their acts did not violate those rights. Weyant v. Okst, 101 F.3d 845, 857 (2d Cir. 1996).

In his complaint, plaintiff, ERIC K. MERRING, alleges violations of his federal and state constitutional rights.    However, it is difficult to parse out which federal and/or state constitutional rights the plaintiff alleges were violated.  We are assuming the plaintiff alleges the following violations in his complaint: unlawful search and seizure of the plaintiff's person and vehicle (Exhibit A, pars. 63 and 70); violation of his right to be free from unlawful detention and false arrest (Exhibit A, pars.70 and 81); and malicious prosecution (Exhibit A, par. 81).

Based upon the facts and circumstances known to Police Officer Delia and Sergeant Welsh, it was objectively reasonable for Officer Delia to undertake a vehicle traffic stop; for Officer Delia and Sergeant Welsh to inquire as to the reason why the plaintiff was carrying on his person a semi-automatic handgun; for Sergeant Welsh to pat down the plaintiff's person for other weapons; for the officers to place the plaintiff under arrest after finding a gravity knife on the plaintiff's person; for the officers to subsequently search the plaintiff's car incident to the arrest; and for the plaintiff to detained for a short period of time at the police station.

**DEFENDANTS ARE ENTITLED**
**TO A QUALIFIED IMMUNITY DEFENSE**
**ON PLAINTIFF'S CLAIMS OF UNLAWFUL SEARCH AND SEIZURE**

Claims for unlawful search and seizure are analyzed under federal law.  "Whether a search and seizure is constitutional under the circumstances of a particular case, however, is

determined by applying federal law." *United States v. Scopo*, 19 F.3d 777 (2d Cir.1994). See also *United States v. Pforzheimer*, 826 F.2d 200 (2d Cir.1987) (even when a state crime was investigated solely by state officers, a federal court must apply federal law to evaluate search and seizure issues.)

Determining whether a search and/or seizure is reasonable "depends on all of the circumstances surrounding the search or seizure and the nature of the search or seizure itself," and the permissibility of the search is "judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests." *Skinner v. Railway Labor Execs. Ass'n,* 489 U.S. 602, 616, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989) (quoting *Schmerber v. California,* 384 U.S. 757, 767-68, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). (internal quotation marks and citations omitted).

Here, on December 4, 2006, around 9 a.m., Police Officer Anthony Delia undertook a valid vehicle traffic stop of Plaintiff for speeding on Route 17 in Tuxedo, New York. Plaintiff pulled his vehicle onto a side street, Stone Ridge Road. Officer Delia asked the plaintiff for his license, registration and insurance cards. Plaintiff, then, informed Officer Delia that he was carrying a handgun. Officer Delia asked for the handgun permit and called Sergeant Welsh for backup. Sergeant Welsh arrived a few minutes later and asked the plaintiff to step out of the car.

Passengers and drivers, once lawfully stopped, have no Fourth Amendment interest in not being ordered out of the stopped vehicle. *Pennsylvania v. Mimms*, 434 U.S. 106, 98 S.Ct. 330, (1977).

Officers believing a driver has committed a traffic violation have probable cause to stop the driver and conduct a limited search of the person for discovery of weapons. See *Whren v.*

*United States*, 517 U.S. 806, 116 S.Ct. 1769 (1996); See also *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868 (1968).

In this case, Officer Delia had conducted a lawful traffic stop of the plaintiff for speeding. Plaintiff informed Officer Delia and Sergeant Welsh that he was carrying a handgun. Plaintiff's handgun was licensed in Delaware County, and Sergeant Welsh and Officer Delia could not verify whether the handgun permit was valid. After the plaintiff exited his vehicle, Sergeant Welsh removed the handgun from the plaintiff's person, patted down the plaintiff and found an illegal knife in his pants pocket.

Sergeant Welsh arrested the plaintiff for criminal possession of a weapon in the fourth degree. The plaintiff was handcuffed and placed in the back seat of Officer Delia's patrol car.

The Supreme Court has held "that a lawful custodial arrest creates a situation justifying the contemporaneous warrantless search of the arrestee and of the immediately surrounding area. Not only may the police search the passenger compartment of the car in such circumstances, they may also examine the contents of any containers found in the passenger compartment." *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860 (1981) citing *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034 (1969).

In *Chambers v. Maroney*, the Supreme Court further held that "[f]or constitutional purposes, we see no difference between on the one hand seizing and holding the car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment." *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975 (1970).

The Supreme Court further held that "[t]he scope of a warrantless search of an automobile thus is … defined by the object of the search and the places in which there is

probable cause to believe that it may be found." *United States v. Ross*, 456 U.S. 798, 824, 102 S.Ct. 2157, 2172 (1982).

Here, incidental to the plaintiff's arrest for criminal possession of a weapon, Officer Delia and Sergeant Welsh searched the compartment of plaintiff's car for additional illegal weapons. They found a billy club or night stick, the possession of which is also illegal in the State of New York. Upon finding another illegal weapon in the plaintiff's car, Officer Delia and Sergeant Welsh had probable cause to search the entirety of the plaintiff's car, including any containers and the trunk, for additional illegal weapons.

Based upon the facts and circumstances known to Sergeant Welsh and Officer Delia, it is respectfully submitted that it was objectively reasonable for them to request the plaintiff to exit the car after being informed he was carrying a handgun.

. It was objectively reasonable for Sergeant Welsh to remove the handgun from the plaintiff instead of allowing the plaintiff to hand him a loaded gun.

It was objectively reasonable for the officers to search the plaintiff's person for other weapons.

It was also objectively reasonable for them to search the plaintiff's car for weapons after finding a gravity knife in the plaintiff's pocket.

As such, it is respectfully submitted that the search of plaintiff's person and automobile was objectively reasonable in its entirety.

## DEFENDANTS ARE ENTITLED
## TO A QUALIFIED IMMUNITY DEFENSE
## ON PLAINTIFF'S CLAIM OF FALSE ARREST

Under New York law, the elements of a false arrest claim are: (1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did

not consent to the confinement, and (4) the confinement was not otherwise privileged. Singer v. Fulton County Sheriff, 63 F.3d 110 (2d Cir. 1995).

Assuming for the purpose of this motion that plaintiff has properly pled his claim, "[t]he existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest whether that action is brought under state law or § 1983." Weyant, 101 F.3d 845, 852 (quotation omitted); Singer v. Fulton County Sheriff, 63 F.3d 110 (2d Cir. 1995)("There can be no federal civil rights claim for false arrest where the arresting officer had probable cause."); Jaegly v. Couch, 439 F.3d 149, 154 (2d Cir. 2006).

The probable cause inquiry is objective rather than subjective. Devenpeck v. Alford, 543 U.S. 146, 152-3 (2004).

Probable cause to arrest exists when the officers, based upon the facts available to the officer at the time, have reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime. Jenkins v. City of New York, 478 F.3d 76, 85 (2d Cir. 2007); Lowth v. Town of Cheektowoga, 82 F.3d 563, 569 (2d Cir. 1996).

As the Supreme Court held in *Devenpeck*, a claim for false arrest turns only on whether probable cause existed to arrest a defendant, and it is not relevant whether probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of arrest. Stated differently, when faced with a claim for false arrest, the Court's focus is on the validity of the arrest, and not on the validity of each charge. *Jaegly*, 439 F.3d at 154.

Examining the totality of the circumstances, it is respectfully submitted that probable cause existed to arrest plaintiff for speeding and criminal possession of a weapon in the fourth

degree.

New York Vehicle and Traffic Law (VTL) § 1180(a) provides that [n]o person shall drive a vehicle at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing.  VTL § 155 states that "[f]or purposes of arrest without a warrant, pursuant to article one hundred forty of the criminal procedure law, a traffic infraction shall be deemed an offense."  New York Criminal Procedure Law § 140.10((1)(a) provides that a police officer may arrest a person for any offense when he has reasonable cause to believe that such person has committed such offense in his presence.

The New York statute for criminal possession of a weapon in the fourth degree provides:

> A person is guilty of criminal possession of a weapon in the fourth degree when he possesses any firearm, electronic dart gun, electronic stun gun, gravity knife, switchblade knife, pilum ballistic knife, metal knuckle knife, cane sword, billy, blackjack, bludgeon, metal knuckles, chuka stick, sand bag, sandclub, wrist-brace type slingshot or slungshot, shirken or "Kung Fu star"

NY Penal Law §265.01(1).

As discussed above, the Supreme Court has held that when an officer believes a driver has committed a traffic violation, that officer then has probable cause to stop the driver and conduct a limited search of the person for discovery of weapons.  See *Whren v. United States*, 517 U.S. 806, 116 S.Ct. 1769 (1996); See also *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868 (1968).

Here, the police conducted a lawful traffic stop of the plaintiff for speeding on Route 17.  Upon being informed that the plaintiff was carrying a handgun, Sergeant Welsh asked the plaintiff to exit the vehicle so he could remove the handgun from the plaintiff's person.  It is absolutely reasonable for a police officer to remove a handgun from a person instead of having that person hand the gun directly to the officer.