| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK<br>------------------------------------------------------------------------X<br>ERIC K. MERRING,<br><br>                           Plaintiff,<br><br>   - against -<br>THE TOWN OF TUXEDO, NEW YORK, THE TOWN OF TUXEDO POLICE DEPARTMENT, TOWN OF TUXEDO POLICE OFFICER ANTHONY DELIA, SHIELD NUMBER 24,  TOWN OF TUXEDO POLICE SERGEANT PATRICK WELSH, SHIELD NUMBER 17,<br><br>                         Defendants.<br>------------------------------------------------------------------------X | ECF<br><br>CV NO.:<br>07 CV 10381 CLB<br><br>LOCAL RULE 56.1(b) COUNTER STATEMENT OF FACTS<br><br>Assigned to:<br>Hon. Charles L. Brieant,<br>United States District Judge |

   Plaintiff, ERIC K. MERRING, by his attorney, Lee David Klein, Esq., hereby sets forth his Rule 56.1(b) Counter Statement of Facts.

   In accordance with said Local Rule, each of the following paragraphs correspond in number to the numbered paragraphs of the Local Rule 56.1 Statement of Facts submitted on behalf of defendant DELIA and WELSH, dated April 15, 2008:

   7.  After MR. MERRING volunteered to OFFICER DELIA that he was carrying a handgun and a license for the handgun on his person, OFFICER DELIA asked MR. MERRING as follows:

     Question: What did he say?

     Answer: What valid reason do you have for carrying your handgun on you right now?

     Question: And did you respond to that?

> Answer: I did.
>
> Question: And what did you say?
>
> Answer: I said I have an unrestricted New York State pistol license. I don't necessarily have to have a reason to have it on me, but I happen to be going to work behind a sales counter at Davis Sports Shop.
>
> Question: Did he respond to that?
>
> Answer: Yes.
>
> Question: What did he say?
>
> Answer: That is not a valid reason.
>
> Question: Did you respond to him telling you he did not believe your reasons were valid?
>
> Answer: He repeated it.
>
> Question: Did you say anything back to him in that regard?
>
> Answer: I stated, again, that it is an unrestricted license handgun, I am allowed to have it on my person at any time. At which time he made a cell phone call.

Exhibit C, pages 25, lines 24 and 25; page 26, lines 2-20. MR. MERRING also provided to OFFICER DELIA his drivers license and registration. Exhibit C, page 26, lines 24 and 25; page 27, lines 2-4.

8. Either before or after OFFICER DELIA made a cellular telephone call, OFFICER DELIA requested that MR. MERRING produce his pistol permit, with which request MR. MERRING complied. Exhibit I, page 27, lines 5-25; page 28, lines

2-4. OFFICER DELIA's tone with respect to these initial inquiries was one of anger. Exhibit I, page 28, lines 10-25; page 29, lines 2-11.

   9. MR. MERRING was in possession of an unrestricted New York State pistol permit issued originally in Delaware County on April 12, 1988. As of December 4, 2006, this license was still valid. Exhibits K and S.

   10. and 11. MR. MERRING never applied for a license in any other county in New York State, having maintained his legal and permanent address at 343 Bob Holloway Road, Delancy, New York 13752, which is located within the geographical limits of Delaware County, for purposes of his New York State drivers license, New York State Motor Vehicle registration, and New York State pistol permit. Exhibit C, page 3, lines 13-25; page 4, line 2-3; Exhibit K.

   12. At the time of the incident that is the subject of this litigation, MR. MERRING maintained his residence in Delaware County, but did spend time staying with his girlfriend, REGINA BLECHER, who resided at the time at 504 Old Mills Road, Southfield, in the County of Orange, State of New York. Exhibit C, page 4, lines 4-23. He was employed in Sloatsburg in the County of Rockland, State of New York, in a sporting goods store named Davis Sports Shop, in the sale of firearms. Exhibit C, page 5, lines 13-21.

   13. Several minutes later, SERGEANT WELSH pulled in behind OFFICER DELIA's vehicle with his emergency lights flashing. Exhibit C, page 31, lines 8-17.

14. SERGEANT WELSH exited his police vehicle, approached OFFICER DELIA and spoke to him, and then approached MR. MERRING's vehicle. Exhibit C, page 32, lines 11-15.

15. SERGEANT WELSH spoke first to MR. MERRING, and the following exchange took place:

>Question: Who spoke first, you or SERGEANT WELSH?
>
>Answer: SERGEANT WELSH.
>
>Question: What did he say initially?
>
>Answer: What valid reason do you have for having your handgun on you right now?
>
>Question: And I assume you responded?
>
>Answer: Same as I did to OFFICER DELIA. I have an unrestricted pistol license in New York State and don't have to have a specific reason for carrying as some licensors do, restricted to hunting, camping, fishing, hiking, informal target shooting.
>
>Question: And how did SERGEANT WELSH respond to that?
>
>Answer: I believe he asked again. I believe he asked the same question again.
>
>Question: Did you give him the same response?
>
>Answer: Same response.
>
>Question: What was SERGEANT WELSH's tone in this initial conversation?
>
>Answer: Agitated.
>
>....

> Question: After your initial conversation with SERGEANT WELSH, what happened?
>
> Answer: He did not ask anything about the initial stop, my drivers license or anything else. It was strictly about my handgun, back and forth several times, and then he ultimately, after I would say between five (5) and ten (10) minutes roughly, he asked me to step out of the vehicle, and he opened the door.
>
> Question: Was there any discussions apart from --- I mean --- withdrawn. The two (2) of you were there at your door for five (5) or ten (10) minutes before he asked you to get out of your car? Were there any other conversations other than the conversation of him inquiring as to the handgun with you?
>
> Answer: Where is the handgun? You know, it is on my right hip. I had to explain that to OFFICER DELIA. His line of questioning was strictly, strictly channeled into, do you have a license why did you have the handgun on.
>
> Question: It was limited to that?
>
> Answer: He may have asked, you know, where you going, you know, what --- you know, and at that time --- (interrupted).

Exhibit C, page 32, lines 16-25; page 33, lines 2-25; page 34, lines 2-20. In other words, SERGEANT WELSH inquired only about the pistol permit and nothing else and harassed MR. MERRING, holder of a valid New York pistol permit. Such questioning constituted an interrogation. SERGEANT WELSH, after such interrogation, directed MR. MERRING to get out of his car. Exhibit C, page 34, lines 24 and 25; Exhibit Q.

16.    MR. MERRING testified at his 50-h hearing that as he opened the car door to exit his vehicle, SERGEANT WELSH pulled the door open, and that as he stepped out, SERGEANT WELSH grabbed his arm and assisted MR. MERRING physically out of the car. Exhibit C, page 34, line 25; page 35, lines 2-21.

17. Defense Exhibit E is a DVD made from a video camera mounted to the dashboard of OFFICER DELIA's patrol car, which filmed this encounter, reflecting that MR. MERRING exited his vehicle without any physical contact by SERGEANT WELSH. Exhibit E.

18. MR. MERRING viewed the videotape in February, 2008, after the video had been supplied to plaintiff's counsel at a preliminary conference held with the Court on January 25, 2008, and prior to MR. MERRING's deposition on March 7, 2008. Annexed Affidavit of ERIC K. MERRING, sworn to the 7th day of July, 2008, at page 2, paragraph 7.

19. As a result thereof, MR. MERRING, through counsel, served and filed: (1) an Amended Notice to Claim (Exhibit O, page 3); (2) an Amended Complaint with Jury Demand (Exhibit P, paragraph 22); and (3) a Supplemental ERRATA Affidavit pertaining to his 50-h hearing testimony, sworn to March 31, 2008 (Exhibit Q). MR. MERRING had been so upset at the encounters with OFFICER DELIA, and SERGEANT WELSH, that initially he believed that SERGEANT WELSH had assisted him physically out of his car by pulling on his arm, then realized after viewing the video that he exited his car without such physical interaction by SERGEANT WELSH. Annexed Affidavit of MR. MERRING, at page 2, paragraph 7.

20. Upon MR. MERRING exiting his vehicle, SERGEANT WELSH directed MR. MERRING to raise his arms, with which direction MR. MERRING complied. SERGEANT WELSH proceeded to conduct a search of MR. MERRING's person. Exhibit E; Exhibit C, page 35, lines 23-25; page 36, lines 2-13.

21. While MR. MERRING was standing next to his car with his hands raised, facing SERGEANT WELSH, SERGEANT WELSH located MR. MERRING's licensed pistol in a holster on MR. MERRING's right hip, and SERGEANT WELSH removed it from its holster. Exhibit E; Exhibit C, page 36, lines 4 and 5; lines 14-16.

22. MR. MERRING was, pursuant to his valid New York State pistol permit, carrying on his person a model 1911 45 caliber semi-automatic pistol, manufactured by Kimber. Exhibit C, page 57, lines 5-12. It was not loaded, as there was no bullet in the chamber ready to be fired, although it contained a loaded magazine. MR. MERRING so advised SERGEANT WELSH. Exhibit C, page 36, lines 16-18. SERGEANT WELSH placed the handgun on the trunk of MR. MERRING's car. Exhibit E; Exhibit C, page 37, lines 15-16.

23. and 24. MR. MERRING was carrying a total of three (3) magazines, one (1) magazine in the handgun, and two (2) magazines on his belt. Each magazine holding eight (8) rounds, for a total of twenty-four (24) rounds. Exhibit C, page 56, lines 23-25; page 57, lines 2-4.

25. Prior to removing MR. MERRING's pistol from its holster, SERGEANT WELSH searched MR. MERRING's person. See Exhibit E. SERGEANT WELSH seized a folding knife, manufactured by a company called Spyderco. Exhibit I, page 84, lines 7-18. This knife was not illegal, as it is not operated by gravity or centrifugal force. Exhibit C, page 38, lines 9-25; page 39, lines 2-25; page 40, lines 2-23; Exhibit E. MR. MERRING used it to open boxes at his place of employment, a sporting goods store. Exhibit C, page 39, lines 2-4.

26. The knife is approximately three and one-half to four (3.5" to 4") inches in closed formation, and the blade is approximately three and one-half to four (3.5" to 4") inches long. Exhibit C, page 38, lines 19-24.

27. SERGEANT WELSH, with MR. MERRING facing him with his hands in the air, tried to open the knife by shaking it and by using gravity, but could not open it that way. Exhibit C, page 37, lines 19-23; page 39, lines 5-25; page 40, lines 2-23; Exhibit E.

28. The video of the incident shows SERGEANT WELSH handling the knife, attempting to shake it, and ultimately opening it. SERGEANT WELSH manipulated the blade with his finger or fingers so as to open the blade with a flip of his hand. See Exhibit E.

29. Counsel refers to selected portions of the unsigned transcript of MR. MERRING stemming from his deposition on March 7, 2008. According to the transcript provided, MR. MERRING maintained that SERGEANT WELSH must have opened the knife using some force on the blade to open it, maintained that the knife could not just be flicked open, but that some force with a finger or thumb to break the tension of the spring mechanism was required in order to open the knife. Exhibit D, pages 42-44. Such testimony did not constitute a "change in testimony" from MR. MERRING's previous testimony at his 50-h hearing, held on June 6, 2007, at which MR. MERRING recollected the events of December 4, 2006, without the benefit of having his recollection refreshed by the viewing the video. Exhibit C, pages 38-41; Exhibit E.

30. After opening the knife, SERGEANT WELSH placed the knife on the trunk of MR. MERRING's automobile, with MR. MERRING facing him. Then SERGEANT WELSH seized MR. MERRING's pistol from its holster, directed him to turn around and put his hands behind his back, took him into custody and placed him in handcuffs, and advised him he was under arrest for carrying a gravity knife. Exhibit C, page 37, lines 20-25; page 38, line 2; Exhibit E.

31. MR. MERRING inquired what he was being charged with. SERGEANT WELSH responded, reciting certain numbers, and told MR. MERRING that it was a charge of criminal possession of a weapon in the fourth degree. Exhibit C, page 38, lines 3-8. SERGEANT WELSH had advised MR. MERRING that it was an illegal knife while he was trying to open the knife. Exhibit C, page 41, lines 21-24.

32. MR. MERRING was handcuffed behind his back. SERGEANT WELSH grabbed the handcuff chain, pushing MR. MERRING toward OFFICER DELIA's police car. Exhibit C, page 42, lines 16-21; Exhibit A, paragraph 22; Exhibit E.

33. SERGEANT WELSH and OFFICER DELIA searched MR. MERRING's automobile and seized a wooden stick from under the front passenger's seat. Exhibit C, page 44, lines 6-25; page 45, lines 2-16; Exhibit E. The OFFICERs went through everything in MR. MERRING's car for about fifteen (15) or twenty (20) minutes. Exhibit I, page 48, lines 2-22. SERGEANT WELSH returned to OFFICER DELIA's car with the stick, threw it in the front seat of OFFICER DELIA's police car, and told MR. MERRING that he was being charged with having the stick. Exhibit C, page 45, lines 22-24.

34. Photographs of the knife and the stick were annexed as part of defendants' discovery pursuant to Rule 26 of the Federal Rules of Civil Procedure, dated January 8, 2008.  Exhibit K.

35. While MR. MERRING was sitting in OFFICER DELIA's patrol car, SERGEANT WELSH came to the car, opened the rear door of the car, and inquired of MR. MERRING: "So what is your valid reason for having a gun on?"  Exhibit I, page 46, lines 20-25.  MR. MERRING responded: "This is a free country.  This is a free state.  I have an unrestricted license to carry a handgun, I don't need to have a reason to have my handgun with me."  Then SERGEANT WELSH said: "So what you're telling me is you really don't have a valid reason," and then he slammed the door.  Exhibit I, page 47, line 2-16.  MR. MERRING was then transported by OFFICER DELIA in his patrol car to the TOWN OF TUXEDO POLICE DEPARTMENT headquarters.  Exhibit C, page 50, lines 3-20.

36. During the time that OFFICER DELIA was transporting MR. MERRING to the TOWN OF TUXEDO POLICE DEPARTMENT headquarters, MR. MERRING inquired what he was being charged with, and OFFICER DELIA responded, in sum and substance, that it was criminal possession of a knife.  Exhibit C, page 50, lines 13-25.

37. During the transport, OFFICER DELIA advised MR. MERRING that he had MR. MERRING's pistol permit with him.  MR. MERRING advised that it was real.  OFFICER DELIA responded that he was going to call the issuing Sheriff to confirm

that. MR. MERRING was amenable to such call for such purpose. Exhibit C, page 50, line 25; page 51, lines 2-4.

38. MR. MERRING was at the TOWN OF TUXEDO POLICE DEPARTMENT headquarters for approximately an hour and a half in total. Exhibit C, page 52, lines 7-12.

39. MR. MERRING was in handcuffs up until the point he was permitted to make telephone calls. Exhibit C, page 56, lines 4-8. MR. MERRING was permitted to make a telephone call to contact his family or a friend. He made two (2) phone calls, with no answers, and on the third phone call, he reached his girlfriend. He then tried calling his father, and there was no answer, so he called his girlfriend again, and he told her that he had been arrested for carrying a pocket knife. Exhibit C, page 52, lines 15-22. His girlfriend became upset. He requested that she call his father and to contact an attorney. Exhibit C, page 52, lines 21-23; line 25; Exhibit I, page 53, lines 2-3. MR. MERRING was angry because he felt that he had been arrested for no valid or legal reason. Exhibit I, page 53, lines 9-13.

40. MR. MERRING was seated at a desk with OFFICER DELIA, after which SERGEANT WELSH arrived. Exhibit C, page 56, lines 20-22; page 57, lines 24-25. SERGEANT WELSH brought over a book regarding New York State Penal Law, and asked MR. MERRING to read a paragraph, which MR. MERRING read to himself. After he finished reading it, MR. MERRING told SERGEANT WELSH that the paragraph did not pertain to him. SERGEANT WELSH punched the book and stated as follows: "Yes,

it fucking does; I've been doing this for eleven (11) years now, eight (8) of those years as a sergeant." The following conversation ensued:

> Question: Did you respond to that?
>
> Answer: I was silent. At that point I thought I was going to be physically harmed.
>
> Question: What was it that made you think you were going to be physically harmed?
>
> Answer: His demeanor, his tone, his physical aggression by punching the book, his cursing.

Exhibit I, page 58, lines 12-25; page 59, lines 2-8. MR. MERRING was at the desk of SERGEANT WELSH for approximately fifteen (15) or twenty (20) minutes. Exhibit I, page 59, line 19. Then SERGEANT WELSH directed MR. MERRING to stand up, he removed MR. MERRING's gun belt with holster and magazine pouch, emptied MR. MERRING's pockets, and then escorted him to a jail cell in the police station. Exhibit I, page 59, lines 24 and 25; page 60, lines 2-8. MR. MERRING asked him if it was absolutely necessary, to which SERGEANT WELSH replied: "Yes, my chief is in, now get in." Exhibit I, page 60, lines 19-24. MR. MERRING entered a dark jail cell with a stainless steel bed and a stainless steel toilet and bench area. Exhibit I, page 61, lines 2-16. SERGEANT WELSH continued to question MR. MERRING regarding the procedures for obtaining a pistol or a pistol license. SERGEANT WELSH advised MR. MERRING as follows: "Well, I don't like the fact that you have a gun and that you're with the NRA." Exhibit I, page 61, lines 19-25; page 62, lines 2-14. MR. MERRING responded by saying to SERGEANT WELSH: "Well, you have a gun." SERGEANT

WELSH responded: "Yes, and I'm a good shot," in an authoritative and intimidating way. Exhibit I, page 62, lines 20-25; page 63, lines 2-4.  MR. MERRING was in the jail cell for approximately twenty (20) minutes or a half an hour.  Exhibit I, page 63, line 6.  MR. MERRING was then brought out of the jail cell, and his arrest was processed and he was fingerprinted and photographed.  Exhibit I, page 63, lines 19-25.  SERGEANT WELSH ultimately issued a ticket, but did ask for bail.  Exhibit I, page 64, lines 16-18.  MR. MERRING was required to provide $100.00 cash bail directly to SERGEANT WELSH. Exhibit C, page 65, lines 12-20.  At that point, MR. MERRING was permitted to put his belongings back in his pockets.  Exhibit I, page 65, lines 23-24.  MR. MERRING was then permitted to pick up and put on his gun belt.  It was only then that OFFICER DELIA told him that he was pulled over for going 69 mph in a 55 mph zone.  Exhibit I, page 66, lines 2-8.  MR. MERRING said he did not know he was speeding, and OFFICER DELIA began to yell, became very demeaning and told MR. MERRING to get out of his office. Exhibit I, page 66, lines 9-18.  MR. MERRING was then escorted by SERGEANT WELSH to exit the police station.  Exhibit I, page 67.  SERGEANT WELSH returned MR. MERRING's pistol to him and instructed him to load it outside of the police station. MR. MERRING did not load it when he got outside. Exhibit I, page 68, lines 17-24.  MR. MERRING subsequently had to pay over $100.00 to retrieve his impounded vehicle. Exhibit I, page 69, lines 21-25; page 70, lines 2-25; Exhibit S.  MR. MERRING subsequently returned to work at his place of employment.  Exhibit I, page 71, lines 16-21.

41. MR. MERRING was charged with one (1) count of criminal possession of a weapon in the fourth degree, New York State Penal Law Section 265.01, a Class A misdemeanor, in an Information that alleged that he was in possession of a gravity knife and a billy club. Exhibit T. He was also charged with one (1) count of "speed over 55 zone" (72 mph) in violation of New York State Vehicle and Traffic Law, Section 1180(b), a traffic infraction. Exhibit U. MR. MERRING was required to retain legal counsel, at a cost of $4,000.00. Exhibit I, page 81.

42. and 43. On January 25, 2007, in the Town of Tuxedo Justice Court before the Hon. Hume Styer, the charge of criminal possession of a weapon in the fourth degree, New York State Penal Law Section 265.01, was dismissed in its entirety upon application of the PEOPLE, in the person of Luke Bovill, Esq., Assistant District Attorney, Orange County District Attorneys' Office. Exhibit C, page 75, lines 11-22; Exhibit G. MR. MERRING pleaded guilty to the charge of parking on the pavement, Vehicle and Traffic Law Section 1201(a), in satisfaction of the speeding charge, and was sentenced to a fine of $100.00, which was paid at Court utilizing the money posted for bail. Exhibit C, page 75, lines 17-25; Exhibit G.

**ADDITIONAL STATEMENT OF FACTS ON BEHALF OF THE PLAINTIFF:**

44. OFFICER DELIA and/or SERGEANT WELSH contacted the Delaware County Sheriff, reporting MR. MERRING's arrest and charge of criminal possession of a weapon in the Fourth Degree. This resulted in an "Order Suspending

Licensing," dated January 10, 2007, issued by the Hon. Carl F. Becker, Delaware County Court Judge, by which MR. MERRING's pistol permit was suspended.  Exhibit V.

45. Subsequent to the dismissal of the criminal charge against MR. MERRING, his pistol permit was reinstated by Order of the Hon. Carl F. Becker, dated February 27, 2007.  Exhibit W.

46. Upon information and belief, OFFICER DELIA and/or SERGEANT WELSH, after the filing of the Complaint in this action, contacted either the New York State Department of Social Services and/or Orange County Department of Social Services, and filed an anonymous complaint that MR. MERRING was endangering his children by having a "cache of weapons" "readily accessible" to his children.  Exhibit K.  An investigation ensued, and the allegations were determined to be unfounded.  Exhibits X and Y.


Dated: Poughkeepsie, New York
      July 7, 2008                      RESPECTFULLY SUBMITTED,


                                      Lee David Klein, Esq. (LDK 2270)
                                      Attorney for Plaintiff
                                      11 Market Street, Suite 204
                                      Poughkeepsie, NY 12601
                                      845-454-9200